UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., KENTRELL PARKER, FARRELL SAMPIER, REGINALD GEORGE, JOHN TONUBBEE, OTTO BARRERA, CLYDE CARTER, CEDRIC EVANS, EDWARD GIOVANNI, RICKY D. DAVIS, LIONEL TOLBERT, and RUFUS WHITE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BURL CAIN, Warden of the Louisiana State Penitentiary, in his official capacity; STEPHANIE LAMARTINIERE, Assistant Warden for Health Services, in her official capacity; JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity; and THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, <br><br> Defendants. | CIVIL ACTION NO. 15-318 <br><br> JUDGE: BAJ <br><br> MAGISTRATE: RLB |

## MEMORANDUM IN SUPPORT OF RULE 37 MOTION
## TO COMPEL PRODUCTION, AMEND DEADLINES, AND AWARD SANCTIONS

Three months ago, this Court ordered the parties to agree on deadlines for production of electronically stored information that had been requested six months earlier, in September 2015. The parties negotiated an agreement in which Plaintiffs agreed to reduce the number of documents they were seeking drastically. In return, Defendants agreed to produce most of the remaining documents, including the documents of the most important custodians, in time for

1

Plaintiffs to review many of the documents in advance of the deadline for amending the complaint on June 10. Under this schedule, Defendants were required to "produce 50,000 documents by May 2, 2016, 50,000 more documents by June 1, 2016, and the remaining documents by June 15, 2016." Doc. No. 40 at 2. Defendants "reserve[d] the right to seek an extension" if it appeared they would not be able to meet the June 15 date. *Id.*

Two of the deadlines set out in the status report have passed—and Defendants have met neither of them. Instead, Defendants have waited until after business hours on the day of the deadline, or the following day, to inform Plaintiffs that they were tens of thousands of documents behind schedule. The first time they did so, they assured Plaintiffs that they could catch up within a week and would remain on track to meet the remaining deadlines. On the evening of June 1, however, Defendants informed Plaintiffs that they would produce barely half of the promised documents and "may not be able to finish the production until mid to late July, 2016." Ex. A (J. Cody email to J. Dubner (June 1, 2016)). They offered no timetable even for the remaining documents they were supposed to produce that day.

Plaintiffs promptly responded that they could not agree to another extension requested at the very deadline itself, and that Defendants needed to move the Court if they wished to extend the deadlines, as previously agreed and urged by this Court. Defendants informed Plaintiffs this morning that they have no intention of requesting relief from the Court with respect to the pertinent deadlines, despite their failure to comply with the June 1 deadline and their plan to miss the June 15 deadline, but instead plan to move the Court to relieve them of their duty to produce altogether.

This willful refusal to comply with deadlines or even move the Court for an extension prejudices Plaintiffs in numerous ways. It interferes with their ability to draft the amended

2

complaint, determine whom to depose and prepare for those depositions, and prepare for their imminent class certification motion. It requires Plaintiffs to change their staffing plans to accommodate the late production. It jeopardizes the trial schedule that this Court informed the parties would not be moved and increases Plaintiffs' expenses. Defendants make no attempt to argue that circumstances have changed since the review began, much less since they assured Plaintiffs at the beginning of May that they could meet the June deadlines. Instead, Defendants have pointed only vaguely to the supposed burdensomeness of the review—a grossly inadequate justification given the modest size of the review, the clawback agreement Plaintiffs provided to Defendants, Defendants' refusal to resolve issues proactively, and their long history of shifting and unreliable representations in this case.

Accordingly, Plaintiffs respectfully request that the Court (a) order Defendants to complete production by June 22, (b) extend Plaintiffs' deadline to file the amended complaint, and (c) award sanctions against Defendants to compensate Plaintiffs for the costs of making this motion.

## Procedural Background

On September 1, 2015, Plaintiffs served their First Set of Requests for Production ("First RFP") pursuant to Rule 34 of the Federal Rules of Civil Procedure. On September 30, 2015—the day before Defendants' responses to the First RFP were due—Defendants requested a 30-day extension, which Plaintiffs granted upon confirming that they would receive "substantial production at that time rather than objections." Ex. B (Email thread between J. Cody & J. Dubner

(Oct. 1, 2015)). On November 2, Defendants produced several boxes of documents while objecting to every single request in the First RFP but one. Ex. C (Resp. to Pls.' First RFP.).[1]

Plaintiffs promptly arranged a telephonic meet & confer to discuss Defendants' production and objections. During that call, held on November 12, 2015, Plaintiffs inquired about electronically stored information ("ESI") and were informed that Defendants had not undertaken any ESI searches. Plaintiffs stated that they would propose search terms, which they provided on December 4, 2015. Defendants responded that they were reviewing the list and would address it with their IT department. They then said nothing more on the subject for a month and a half, until Plaintiffs requested another meet & confer during which Defendants indicated that they had not collected any documents and had not carried out any searches to determine how burdensome the search terms were—but objected to Plaintiffs' proposed search terms nonetheless. They claimed that it would take 6-8 weeks for their IT department to even harvest the documents and apply a more limited set of search terms, leaving aside any review.

Plaintiffs offered to ease the burden on Defendants by reducing the number of custodians and following established procedures for determining which search terms were unduly burdensome.[2] Given the purported limitations of Defendants' IT department, Plaintiffs proposed that Defendants look into retaining a vendor, which Defendants agreed to do. Yet six weeks later,

---

[1] The one request to which Defendants did not object called for "All DOCUMENTS related to the performance of MEDICAL functions, including medication distribution . . . by security guards or other non-MEDICAL STAFF." Ex. C at 23. Defendants claimed that they "have no such documents in their custody or control." *Id.* at 24. This turned out to be incorrect.

[2] Mindful of the well-documented shortcomings of determining which search terms will be burdensome without testing their hit counts, *see, e.g.*, *Moore v. Publicis Groupe*, 287 F.R.D. 182, 190-91 (S.D.N.Y. 2012), adopted, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) ("In too many cases, . . . the way lawyers choose keywords is the equivalent of the child's game of 'Go Fish.'"), Plaintiffs requested that Defendants provide hit counts rather than simply remove terms arbitrarily.

4

Defendants had not even requested approval from the Department of Corrections (a defendant in this case) or the Attorney General (which represents Defendants in this case, *see, e.g.*, Doc. No. 13 at 1 & 5).

Once Plaintiffs scheduled a conference with the Court to discuss the issue in March, Defendants' supposed difficulty harvesting the documents and applying search terms without a vendor disappeared. With the specter of judicial oversight looming over them, Defendants acknowledged that they could produce hit counts in less than two weeks, contrary to their previous estimate of six to eight weeks. The parties thus proposed a schedule to the Court, which the Court entered, resetting deadlines for amending the complaint and moving for class certification, premised on the parties agreeing upon a "deadline for completion of ESI production" or filing motions. *See* Doc. No. 38 at 2.

Guided by the hit counts, the parties negotiated an agreed-upon set of search terms that reduced the number of documents to be reviewed by more than 80%, so that Defendants had to review just 115,000 documents—roughly 500,000 less than Plaintiffs' initial request, and just 60,000 more than Defendants' initial proposal. Doc. No. 40 at 1-2. This produced a document pool close in size to that originally requested by Defendants, but without the arbitrariness of Defendants' original terms. To further reduce the burden on Defendants, Plaintiffs agreed to a clawback agreement giving Defendants broad authority to recall any privileged documents they mistakenly produced, and obligating Plaintiffs to notify Defendants of apparently privileged documents they discovered in the production. *See* Ex. D (May 3, 2016 Clawback Agreement). Moreover, Plaintiffs agreed that Defendants need not conduct a responsiveness review to further reduce Defendants' burden and accelerate the production, placing on themselves the burden of wading through the unresponsive documents necessarily captured by search terms.

Accordingly, the parties jointly agreed upon a production schedule implementing the Court's revised scheduling order. Defendants would produce 50,000 documents by May 2, 50,000 more by June 1, and the remaining documents by June 15. Doc. No. 40 at 2.

After this agreement, Defendants informed Plaintiffs that their process of harvesting the documents had destroyed some of the metadata associated with the ESI, making it impossible to determine the custodian of each document and thus difficult to implement the parties' agreement to prioritize the production by custodian. Plaintiffs proposed various workarounds, with Defendants eventually deciding to finally retain an e-discovery vendor. Accordingly, Defendants did not begin their review until approximately 10 days into April. Doc. No. 41 at 2.

Just before midnight on May 2, the deadline for production of the first 50,000 documents, Defendants' paralegal informed Plaintiffs that they were in the process of uploading the documents but that the upload had not completed. The following morning, Defendants informed Plaintiffs for the first time that they would be unable to produce the 50,000 documents that they represented to the Court and Plaintiffs they would produce by May 2. They stated that they had reviewed approximately 27,754 emails to date, but that they believed that based on their current pace and the number of people assigned to the review that they would be able to provide the remaining 22,246 documents the following week and remain on schedule for the June 1 and June 15 deadlines. Ex. E (J. Dubner email to J. Hilburn (May 3, 2016)). With this understanding, Plaintiffs agreed to accept the delayed May 2 production and advised the Court that they had no "issue with the current status of electronic discovery that requires judicial attention." Doc. No. 41 at 2. Defendants then produced the remaining 20,000 documents one week later.

Over the next month, Defendants never suggested that they were experiencing any problems with the production or that they anticipated any difficulties meeting the schedule

6

provided to the Court in the April 1 and May 6 status reports. Doc. No. 40 at 2; Doc. No. 41 at 2. Instead, they waited until the evening of June 1—the date on which they were supposed to provide the next tranche of documents—to inform Plaintiffs that they were "only able to produce approximately 25,500 files," claiming that the production was "extremely cumbersome" and that it might not be finished until "mid to late July, 2016." Ex. A. Defendants offered no estimate of when they would even provide the remaining documents due on June 1.

The following day, Plaintiffs responded that they could not agree to Defendants' unilateral, last-minute changes to the schedule. *See* Ex. F (J. Dubner email to J. Cody (June 2, 2016)). They explained that they could not agree to an extension of the schedule that pushed completion back an additional month, with depositions, expert reports, and class certification briefing all imminent. They noted that if Defendants required an extension, they could request one from the Court. They gave Defendants until Monday, June 6 to produce the 50,000 records that had been due on June 1, and offered to discuss the issue with Defendants.

Not having heard a response to their June 2 email or received any additional documents, Plaintiffs requested a meet & confer with Defendants on the evening of Monday, June 6. Shortly before midnight, Defendants produced approximately 7285 additional documents, but did not respond regarding when Plaintiffs would receive the remaining overdue documents, nor whether they would be able to comply with the June 15 deadline or move the Court.

Defendants agreed to confer on the subject on the morning of Wednesday, June 8. During that meet & confer, Defendants informed Plaintiffs that they did not know when they would complete either the June 1 production or the June 15 production, and would not agree to any deadlines prior to mid-July. They said they were amenable to moving the deadline for the amended complaint to two weeks following the conclusion of the production, but could offer no

solution that would allow for the completion of production and review prior to depositions. The parties agreed that resolution by the Court appeared necessary.

## Legal Standard

A party seeking an extension is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

Where a party "fails to respond fully to discovery requests made pursuant as to Rules 33 and 34 in the time allowed by the Federal Rules of Civil Procedures, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37." *Janko v. Fresh Mkt., Inc.*, No. 13-cv-648, 2015 WL 4656694, at *3 (M.D. La. Aug. 5, 2015). An "incomplete disclosure . . . must be treated as a failure to disclose." *Id.* (quoting Fed. R. Civ. P. 37(a)). Sanctions for "failures to obey discovery orders" may include "reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983)). While severe sanctions such as striking pleadings or dismissing a case require a finding of bad faith or willful misconduct, "[l]esser sanctions do not require a finding of willfulness." *Id.*

## Argument

### I. Defendants Have Failed to Comply with Rule 34.

There can be no serious dispute that Defendants have failed to comply with Rule 34. Defendants have yet to complete production in response to requests served September 1, 2015, more than nine months ago. Plaintiffs have continuously sought to work with Defendants to

facilitate this production, but "[a]fter multiple attempts to obtain this information from [Defendants], and multiple unfulfilled promises to produce the outstanding discovery," *Nguyen v. La. State Bd. of Cosmetology*, No. 14-cv-80, 2016 WL 67253, at *1 n.1 (M.D. La. Jan. 5, 2016), it is clear that a motion is the only way to ensure Defendants will finally produce the required documents on the schedule to which they committed.

This nine-month delay is due in significant part to Defendants' practice of waiting until the very deadline for responses or until Plaintiffs pressed them for answers to even intimate that there were problems that would delay production. Defendants asked for an extension on the eve of the original deadline for responses, despite surely knowing they required the extra time long before then. They did not raise any issues with Plaintiffs' search terms until Plaintiffs requested a follow-up meet & confer to determine the status of production. They did not even seek internal approval of their vendor until Plaintiffs proposed a status conference with the Court, six weeks after Defendants said they would obtain a vendor. And now, twice, they have waited until the day their productions were due or the following morning to inform Plaintiffs that they would not meet the agreed-upon deadlines. In all of these instances, Defendants necessarily knew that they had not made sufficient progress, yet waited until any action by Plaintiffs would be too late to receive timely production.[3]

---

[3] Similarly, Defendants have repeatedly made representations that Plaintiffs later learned were incorrect, such as the misstatements discussed above about the length of time harvesting and searching the documents would take. For example, Defendants informed Plaintiffs during a meet & confer that there were no lists of patients with chronic conditions; during a Rule 34 site visit, Plaintiffs' experts learned that Defendants maintained "chronic care tracking logs" providing exactly that information. Similarly, Defendants claimed that it was impossible to produce the logs of E-Ceptionist, a program containing records of treatment, without manually calling up every single record; after Plaintiffs repeatedly requested additional information and asked to confer with Defendants' IT professionals directly, Defendants discovered that they could output the entire E-Ceptionist record in four spreadsheets.

9

Defendants' most recent failure to meet the deadlines is their most egregious. Just one month ago, Defendants explicitly assured Plaintiffs that they were on schedule to meet the June 1 and June 15 deadlines. Ex. E. Defendants have not even attempted to identify any unforeseen circumstances affecting their ability to meet that schedule, nor did they make any attempt to advise Plaintiffs ahead of time that they might blow through the deadline. During this morning's meet & confer, Defendants went so far as to attribute their failure to meet the deadlines to Plaintiffs not telling them that their staffing of the ESI review is inadequate—despite Defendants themselves assuring Plaintiffs their staffing was adequate. Once again, they have utterly failed to meet their obligations or to work cooperatively with Plaintiffs to deal with problems when they first became apparent to Defendants.

Nor have Defendants *ever* asked the Court to extend their deadlines for production. They have utterly failed to obey the Court's command to "notify the court as soon as possible" when "issues arise during the discovery phase that could impact the other proposed deadlines." Doc. 24 at 1 n.1. Instead, they have simply extended the deadlines by fiat, taking the extensions they want by simply not meeting their commitments. Defendants have already obtained what they wanted: it is likely impossible for them to meet the June 15 deadline. But given the number of documents remaining, completion by June 22 appears entirely possible. By contrast, their vague, unilateral demand that they be given until "mid to late July" (if not later) is manifestly inappropriate. Ex. A. It would make it impossible for Plaintiffs to finish reviewing the documents prior to depositions and leave little time before Plaintiffs' class certification motion and expert reports are due.

Accordingly, Plaintiffs respectfully request that the Court compel completion of production by June 22.

## II. The Appropriate Remedies Include Extending the Deadline to File the Amended Complaint and Awarding Costs to Plaintiffs.

Defendants' dilatory tactics have prejudiced Plaintiffs in numerous ways. Plaintiffs must review ESI to conscientiously identify deponents, prepare for depositions, provide documents requested by their experts, and draft their class certification motion. Most immediately, Plaintiffs' amended complaint is due June 10. As Plaintiffs explicitly stated to Defendants while negotiating the schedule, Plaintiffs needed to review a substantial production of ESI to ensure that nothing in the documents materially contradicted the allegations in the complaint. Defendants understood that these schedules—particularly the June 1 deadline that they have already missed—were linked.  Even after Plaintiffs granted Defendants a five-day extension, Defendants are still 15,000 documents short of where they were supposed to be on June 1; even if they were to produce them today, Plaintiffs plainly would not be able to review any meaningful number of them by June 10.

Accordingly, good cause exists for the Court to extend Plaintiffs' time to file the amended complaint.[4] Plaintiffs propose two weeks from the completion of Defendants' production. This will provide a proper incentive for Defendants to complete the entire production without causing them any prejudice, as they face no other deadlines until the September 6, 2016

---

[4] Plaintiffs recognize that the Court is receiving this motion just two days before the deadline to file the amended complaint. This is wholly due to Defendants' refusal to discuss the issue in a timely fashion after Plaintiffs indicated that they could not consent to Defendants' unilateral extension. Plaintiffs informed Defendants of their position on Thursday, June 2, and gave them until Monday, June 6 to return to the schedule, and encouraged Defendants to contact them to discuss the matter. Ex. B. Defendants gave no indication of their intent on Monday, leading Plaintiffs to request a meet & confer as soon as possible. Defendants refused to meet & confer on Tuesday, June 7, and (only after three emails from Plaintiffs) agreed to a meet & confer on the morning of Wednesday, June 8. Ex. G (Email thread between J. Dubner & J. Cody (June 7, 2016)).  As soon as Plaintiffs' Rule 37(a)(1) obligations of conferring were satisfied, they filed this motion with the Court.

discovery motion deadline. Defendants indicated on Wednesday morning's meet & confer that they were amenable to resetting the deadline for the amended complaint to be two weeks after the completion of production, although Defendants' unwillingness to complete production by the end of June prevented agreement.

Second, Defendants should pay Plaintiffs' expenses in filing this motion to compel, as well as the expenses incurred from the delay of their review of the documents. Throughout this litigation, Plaintiffs have been forced to spend time hounding Defendants to inform them of the status of production or comply with their obligations—time that would have been allocated to the many other necessities of litigation. At last, they should be compelled to pay some of the costs of that tactic. Courts routinely sanction parties in similar circumstances. *See, e.g.*, *Enriquez v. Turner Indus., LLC*, No. 13-cv-55, 2013 WL 3786377, at *1 (M.D. La. July 18, 2013) (awarding sanctions where discovery was served January 28, party should have provided complete responses by the first week of June, and production was incomplete as of July 18).

In addition to the costs of filing this motion, Plaintiffs will incur additional costs to review these documents due to Defendants' delinquency. Plaintiffs had scheduled assistance from law student interns and other personnel to review the documents in June. If production is pushed back into July, this staffing will no longer be available and Plaintiffs will need to reallocate resources away from other matters or hire contract attorneys to assist in the review. Accordingly, if Defendants are unable to complete production in June, they should be forced to cover these increased costs necessitated by their untimeliness. In addition to relieving Plaintiffs of costs of Defendants' making, this will provide incentive for Defendants to finish the review in a timely fashion.

In their communications with Plaintiffs, Defendants have offered no credible defense for their delays. They have pointed only to the alleged burdensomeness of the review—but the review is modest by any standard. Defendants need only review the documents for privilege—and the majority of the custodians are medical personnel who have little if any interaction with legal counsel. Many documents can be reviewed in seconds, especially because Plaintiffs provided Defendants a liberal clawback agreement allowing them to retract any improperly produced documents and obligating Plaintiffs to identify privileged documents *sua sponte*. Moreover, Plaintiffs have relieved Defendants from their obligation to review the documents for responsiveness, a process that would have prevented Plaintiffs from having to sift through unresponsive documents caught by the search terms but that Plaintiffs have agreed to forego in order to ease Defendants' purported burden.[5] Defendants had more than two months to conduct this review, ample time for such a modest and routine task.[6] Nor have they suggested *any* unanticipated events that interfered with completion of the review. They have tried to justify the delays by referring to obligations in other matters, but as Justice Scalia said of another state's untimeliness, "counsel's overextended caseload is not 'good cause shown,' unless it is the result of events unforeseen and uncontrollable by other counsel and client. That is not so here." *Mississippi v. Turner*, 498 U.S. 1306, 1306 (Scalia, Circuit Justice 1991).[7] Accordingly, they

---

[5] Plaintiffs' preliminary review of the ESI materials produced to date has found that the significant majority of materials Defendants have produced so far are relevant to this litigation.

[6] Indeed, Defendants showed after missing the May 2 deadline that the pace needed to finish the review was viable, producing more than 20,000 documents in one week. Had Defendants adhered to that pace, they would have finished the entire review by the beginning of June.

[7] *See also, e.g.*, *Constantino v. City of Atl. City*, No. 13-cv-6667, 2015 WL 1609693, at *12-13 (D.N.J. Apr. 10, 2015) ("The Court has no sympathy for Atlantic City's argument that it does not have to produce relevant discovery because it is burdened by the fact that it has too many citizen police complaints and § 1983 lawsuits. In a serious lawsuit challenging the [Atlantic City Police

13

have no cause to avoid sanctions or complain about the schedule to which they repeatedly agreed.

## Conclusion

For the foregoing reasons, Defendants should be compelled to complete their production on June 22 with Plaintiffs' amended complaint due two weeks thereafter, and Plaintiffs should be awarded sanctions for the costs incurred as a result of Defendants' delays.

Dated: June 8, 2016               /s/ Jeffrey B. Dubner_____

Attorneys for Plaintiffs

Mercedes Montagnes, La. Bar No. 33287
(Lead Counsel)
Elizabeth Compa, La. Bar No. 35004
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA  70113
Telephone:  (504) 529-5955
Facsimile:  (504) 558-0378
mmontagnes@thejusticecenter.org
bcompa@thejusticecenter.org

Jeffrey B. Dubner (*pro hac vice*)
Daniel Small (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jdubner@cohenmilstein.com

Miranda Tait, La. Bar No. 28898
Advocacy Center
600 Jefferson Street, Suite 812
Lafayette, LA  70501
Telephone: (337) 237-7380
Facsimile: (337) 237-0486
mtait@advocacyla.org

---

Dept.] and its [Internal Affairs] process, it is ironic that Atlantic City argues it should not have to produce more discovery because it has too many citizen complaints and IA files.").

Candice C. Sirmon, La. Bar No. 30728
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, LA 70156
Telephone: (504) 522-0628
Facsimile: (504) 613-6511
csirmon@laaclu.org

CERTIFICATE OF SERVICE

I do hereby certify that on June 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/EF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Mercedes Montagnes
MERCEDES MONTAGNES, LSBA #33287
Attorney at Law
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955
Lead Counsel