UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., KENTRELL PARKER, FARRELL SAMPIER, REGINALD GEORGE, JOHN TONUBBEE, OTTO BARRERA, CLYDE CARTER, CEDRIC EVANS, EDWARD GIOVANNI, RICKY D. DAVIS, LIONEL TOLBERT, and RUFUS WHITE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BURL CAIN, Warden of the Louisiana State Penitentiary, in his official capacity; STEPHANIE LAMARTINIERE, Assistant Warden for Health Services, in her official capacity; JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity; and THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,<br><br>Defendants. | CIVIL ACTION NO. 15-318<br><br>JUDGE: BAJ<br><br>MAGISTRATE: RLB |

## STATEMENT OF UNDISPUTED FACTS FOR MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' ADA CLAIM

### The Plaintiffs

1. Plaintiffs filed this action on May 20, 2015 seeking injunctive relief for violations of constitutionally and statutorily protected rights. (Rec. Doc. 1) Plaintiffs filed the Amended Complaint on June 10, 2016 (Rec. Doc. 44) and the Second Amended Complaint on July 25, 2016. (Rec. Doc. 71).

2. ADA Subclass members are inmates at the Louisiana State Penitentiary at Angola ("LSP" or "Angola") with disabilities.

3. Numerous inmates suffer from disabilities, Ex. B ("Barr Depo.") 12:18—19, including several named plaintiffs. Many have physical or sensory disabilities such that, in order to have access to LSP's programs, such programs must be offered in facilities that have accessibility features. These named plaintiffs include the following:

4. Alton Adams lost a leg to amputation due to peripheral artery disease and requires a wheelchair for mobility. At various times, he has resided in the medical dormitory Ash 2. Because of inadequate handicap-accessible ramps, he rarely went further than a ledge about eight feet from Ash 2. On August 23, 2016, he "flipped backward out of [his] wheelchair." In an ARP, he informed Defendants that he "would not have received these injuries if they had the handicap ramp right." Ex. I ("Adams Depo.") 8:10-13, 25:9-16, 42:3-43:11; Ex. J ("Adams ARP").

5. Otto Barrera has difficulty chewing and swallowing, and has gauze in his mouth 24 hours a day that impedes speaking, due to the incomplete reconstruction of his jaw after a gunshot wound. Ex. K ("Barrera Depo.") 6:19-22, 26:16-18.

6. Alton Batiste has no vision in his left eye and little vision in his right eye. Ex. L ("Batiste Depo.") 7:10-12, 10:4-7, 19:15-16.

7. Ian Cazenave requires a wheelchair for mobility. He is housed in Ash 2, which is crowded and has insufficient urinals, toilets, and showers given the size of the handicapped population. Ex. M ("Cazenave Depo.") 24:24, 25:15-16, 30:20-31:10.

8. Clyde Carter has several torn ligaments in his knee that give him difficulty with steps, top bunks, and uneven ground. He frequently uses a cane for mobility assistance. LSP medical personnel have noted that he has "problems [with] uneven surfaces," which has been the subject of exhausted grievances. Ex. N ("Carter Depo.") 10:11-16, 14:16-15:9; Ex. O ("Carter ARP") at 8.

9. Ricky Davis has difficulty sitting or standing for prolonged periods due to back injuries, and walks with the a*Id.*of a cane. In order to receive treatment at the Treatment Center, he needs to endure painful multi-hour waits where he must sit or stand for prolonged periods. He filed an ARP regarding improper transportation in non-handicapped-accessible vans. Ex. P ("Davis Depo.") 17:25-19:5, 21:3-7, 23:18-25; Ex. Q ("Davis ARP").

10. Reginald George requires a wheelchair for mobility. He has been housed in Camp C, whose cells are not designed for wheelchairs. Even when in general population or when housed at the Treatment Center, he "might have to go a mile and a half in a wheelchair" to get around. Ex. R ("George Depo.") 17:9-15; 24:7-23.

11. Kentrell Parker has quadriplegia and resides in the nursing unit. He filed an ARP alleging, among other things, that "the treatment center is not suitabl[y] staffed or equipped to accommodate quadriplegic patients such as himself." Ex. S ("Parker Depo.") 6:24-25, 8:20-22; Ex. T ("Parker ARP").

12. Lionel Tolbert requires a wheelchair for mobility. He has trouble accessing some areas of the prison, such as getting through the visiting shed door. Ex. U ("Tolbert Depo.") 8:25-9:6, 21:20-22:6, 26:24-27.

**The Defendants**

13. Defendant Darrel Vannoy (whose predecessor in interest is Warden Burl Cain) is the Warden of Angola and an employee of the Louisiana Department of Public Safety and Corrections ("DOC"). He has the legal duty to protect the rights of inmates at Angola. Both he and his predecessor, Burl Cain, have been, at all relevant times, acting under color of State law. Rec. Doc. 71 ¶ 12; Rec. Doc. 99 ¶12.

14. Defendant Tracy Falgout (whose predecessor in interest is Stephanie Lamartiniere) is the Assistant Warden for Health Services at Angola and an employee of the DOC.[1] The Assistant Warden has control over the medical care at Angola and makes staffing, budgetary, and administrative decisions. Like Defendant Vannoy, he has a legal duty to care for inmates at Angola's hospital and to protect their rights. Rec. Doc. 71 ¶ 13; Rec. Doc. 99 ¶13.

15. Defendant James M. LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections. He is responsible for the functioning and control of all programs within the Department. He formulates rules and regulations and makes policy determinations regarding, inter alia, management, personnel, and total operations. By law, he is responsible for protecting the rights of all persons held in DOC custody. At all relevant times, he has been acting under color of state law. Rec. Doc. 71 ¶ 14; Rec. Doc. 99 ¶14.

16. Defendant Louisiana Department of Public Safety and Corrections ("DOC") oversees the custody and care of offenders in Louisiana. At all relevant times, the DOC has operated Angola, a public entity with programs and services. The DOC is a recipient of federal funds. Rec. Doc. 71 ¶ 20; Rec. Doc. 99 ¶ 20; La. Rev. Stat. 36:401(B)(4).

**Programs Provided at LSP**

17. Plaintiffs' architectural expert, Mark Mazz, concludes after a review of LSP facilities described below, that LSP and the programs contained therein are not accessible to inmates with disabilities, and do not comply with Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Ex. F at 11.

---

[1] After the Second Amended Complaint was filed, Mr. Falgout replaced Ms. Lamartiniere as the Assistant Warden for Health Services. "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)).

18. Defendants' architectural expert, Brian Nolan, concurs with the Mazz report. Nolan Report, p. 2. LSP is on a very large, flat piece of land. The terrain does not prevent the incorporation of accessible features. None of the features of Angola would be structurally impracticable to modify to make accessible. Ex. F at 7.

These architectural and programmatic barriers include *inter alia*:

### Programs Provided at the Treatment Center Nursing Unit 2

19. There are approximately 34 beds in this acute infirmary. Ex. F at 29 ⁋126-127

20. The door opening is four inches too narrow for wheelchair access and there is not sufficient wheelchair maneuvering space. *Id.* at 29 ⁋128 & 130

21. Neither the water fountain nor the mail slot are low enough to be accessed by a wheelchair. *Id.* at 29-30 ⁋129 & 131.

22. The Nursing Unit 2 bathroom is also inaccessible in several ways including insufficient and incorrectly placed grab bars; there is no seat for the bathtub; and the shower controls are not accessible from the shower seat (which is also deficient). *Id.* at 30 ⁋ 133-150.

23. In the lockdown cell #7, the lavatory has "no accessible features" among other issues. Ex. F at 32 ⁋152-160.

### Programs Provided at the Treatment Center Nursing Unit 1

24. There are approximately 29 beds in this acute infirmary. Ex. F at 33 ⁋161

25. The door opening is four inches too narrow for wheelchair access. *Id.* at 33 ⁋162

26. The Nursing Unit 1 bathroom is also inaccessible in several ways including insufficient and incorrectly placed grab bars; there is no seat for the bathtub; and the shower controls are not accessible from the shower seat (which is also deficient). *Id.* at 34 ⁋ 165-182.

### Programs at Ash 2 Dormitory and Surrounding Facilities

27. Ash 2 is one of two medical dormitories used to house inmates with disabilities at LSP. In an informal inventory, Mr. Mazz identified 12 individuals in wheelchairs and 2 others using mobility devices. Ex.F at 20 ¶ 27.

28. Despite having more than four telephones available for inmate use, Ash 2 does not have a TTY device that would enable inmates who are deaf to communicate telephonically, or a shelf that would enable the installation of a portable TTY. *Id.* at 20 ¶ 28 & 30.

29. Despite having an exterior bank of four or more telephones available for inmate use, Ash 2 does not have a wheelchair-accessible telephone. *Id.* at 20 ¶ 29.

30. In order to reach the health clinic, inmates living in Ash 2, and many other areas of the prison, must traverse a covered walkway and use a ramp to enter the clinic.

31. The ramp has no edge protection or handrails. *Id.* at 19 ¶ 14-15.

32. The "pill call window" near Ash 2 is at 38.75" from the floor, too high for an individual in a wheelchair to reach. *Id.* at 19 ¶ 18.

33. A single drinking fountain near the Ash pill call window is mounted 43" above the floor, and therefore too high for a wheelchair user to use. *Id.* at 19 ¶ 17.

34. A ramp leading from a covered walkway near Ash to a recreation yard has inadequate handrail extensions. *Id.* at 19 ¶ 20-21.

35. Ash 2 contains a station for use of J-Pay.[2] A stool affixed to the nearby wall makes the station inaccessible to individuals in wheelchairs. *Id.* at 20 ¶ 31.

36. Table seating in the common area, 5% of which should be accessible in accordance with the ADA, does not have adequate clear floor space to accommodate wheelchairs. *Id.* at 20 ¶ 32.

---

[2] J-Pay machines are the main mechanism inmates use to communicate with their families over phone and internet, and make purchases for the limited amount of entertainment options available for inmates.

6

37. The entrance ramp to the Ash 2 bathroom is 3 inches high and sloped at 17.3%. ADA Standards permit a maximum slope of a 3-inch ramp to be 12.5%. *Id.* at 21 ¶ 34.

38. Pipes under the wheelchair-accessible lavatory are not insulated. *Id.* at 21 ¶ 35.

39. The rim of the urinal is 24 inches above the floor, too high to be accessible to individuals in wheelchairs. *Id.* at 21 ¶ 35.

40. There is no toilet or toilet stall in the Ash 2 bathroom that complies with applicable ADA standards. The space between the grab bar and the side wall is too large; the grab bar is too close—only 44 inches—from the rear wall; the toilet centerline is too close to the side wall; the clear floor space at the toilet is too narrow. *Id.* at 21 ¶ 40.

41. The shower area in the Ash 2 bathroom also fails to meet applicable ADA Standards. There is no shower large enough according to the guidelines for roll-in (wheelchair-accessible) showers; the showerhead is too high for use by someone in a wheelchair, and LSP has not provided a hand-held showerhead; the controls are located on the same wall as the seat for the roll-in shower; the seat in the roll-in shower is too deep; and there are no grab bars on the side wall opposite the seat. *Id.* at 21-22 ¶ 43-47.

42. The bench in the dressing area of the Ash 2 bathroom is too narrow, does not have continuous back support, and does not have sufficient adjacent clear floor space. *Id.* at 21 ¶ 42.

### Programs at Cypress 2 Dormitory and Surrounding Facilities

43. Cypress 2 is one of two medical dormitories used to house inmates with disabilities at LSP. In an informal inventory, Mr. Mazz identified 3 individuals in wheelchairs and a blind inmate. Ex. F at 22 ¶ 48.

44. Despite having more than four telephones available for inmate use, Cypress 2 does not have a TTY device that would enable inmates who are deaf to communicate telephonically, or a shelf that would enable the installation of a portable TTY. *Id.* at 22 ¶ 50.

45. Despite having an exterior bank of four or more telephones available for inmate use, Cypress 2 does not have a wheelchair-accessible telephone. *Id.* at 22 ¶ 51.

46. The bathroom in Cypress 2 are not accessible with because current ramps have too great a slope. *Id.* at 23 ¶ 57.

47. A single drinking fountain in the Cypress 2 dorm is mounted 43" above the floor, and therefore too high for a wheelchair user to use. *Id.* at 22 ¶49.

48. Cypress 2 contains a station for use of J-Pay with insufficient clear floor space. *Id.* at 22 ¶ 53

49. Table seating in the common area, 5% of which should be accessible in accordance with the ADA, does not have adequate clear floor space to accommodate wheelchairs. *Id.* at 23 ¶ 55

50. There is no toilet in Cypress 2 bathroom that complies with applicable ADA standards. The urinal is too high; the grab bars are not correctly placed; the clear floor space at the toilet is too narrow. *Id.* at 23 ¶58-64

51. The shower area in the Cypress 2 bathroom also fails to meet applicable ADA Standards. There is no shower large enough according to the guidelines for roll-in (wheelchair-accessible) showers; the shower controls require twisting; LSP has not provided a hand-held showerhead; and there are no grab bars on the side wall opposite the seat. *Id.* at 24 ¶ 67-72.

52. The bench in the dressing area of the Cypress 2 bathroom is too narrow and does not have sufficient adjacent clear floor space. *Id.* at 24 ¶ 66

### Programs Provided at the Treatment Unit

53. The sign-in counter, the pill room counters, and the drinking fountain are too high off the ground to be accessed by a wheelchair. Ex F at 27 ¶102-103.

54. The showers on the Protective tiers are also not accessible. They lack sufficient maneuvering space and turning space, there are not sufficient grab bars, and the shower faucets are not accessibly placed, among other things. *Id.* at 27 ¶106-11

55. On the mental health tier, the cell door opening is too narrow, the food slot is too high, the lavatory has no accessible features, and the shower heads are not accessible. *Id.* at 28 ¶114-123

56. None of the timeout cells are accessible. *Id.* at 29 ¶125.

### Programs Provided in Other Areas of the Prison

57. Mr. Mazz found violations at several other locations around the prison which are fully enumerated in his report which are undisputed and incorporated herein. Ex. F.

They include:

58. The route to access the transportation is not accessible. Ex. F at 18 ¶10.

59. "Many visitors in wheelchairs lack the use of a toilet room in that the toilets, lavatories, mirrors, and dispensers are inaccessible." *Id.* at 10 ¶ 7.

60. In the visiting area, inmates in wheelchairs lack an accessible toilet room in that the door is too narrow, the space around the door is too constricted to open the door, and the lavatory and toilet have no accessible features. *Id.* at 10 ¶ 8.

### General Areas of Programmatic and Architectural Barriers

61. "The accessible route between dormitories and other facilities have many wide gaps that are not covered that can cause the caster wheels on wheel chairs to snag and spill an inmate onto the floor." Ex. F at 9 ¶ 1.

62. "The accessible route between dormitories and other facilities have several abrupt changes in level which can trip inmates who have trouble lifting their feet and can snag a caster wheel on a wheelchair." *Id.*at 10 ¶ 2.

63. "Drinking fountains are not paired. Consequently, either the drinking fountain is too high for an inmate in a wheelchair or too low for an inmate who is unable to bend over." *Id.* at 10 ¶ 3.

64. "The undersides of objects such as counters are too high and project too far from the wall for inmates with vision impairments to detect with their canes." *Id.* at 10 ¶ 4.

65. "The paved accessible routes to the recreation yards stop well before the recreation areas, preventing inmates in wheelchairs from independently using the facilities." *Id.* at 10 ¶ 6.

66. "Many ramps lack accessible handrails making it more difficult for an inmate with balance or stamina issues to use the ramps without falling." *Id.* at 10 ¶ 10.

67. "Some ramps are too steep for many inmates in wheelchairs to use independently." *Id.* at 10 ¶ 11.

68. In several medical dormitory bathrooms and nursing unit bathrooms, ramps at the entrance are too steep for many inmates in wheelchairs to use. Urinals are too high to use from a wheelchair. Mirrors are too high for inmates in wheelchairs. Lavatories are unusable for many inmates in wheelchairs because they lack any accessible features, lack adequate knee and toe space underneath, or lack pipe insulation to protect against abrasive edges. *Id.* at 10 ¶ 15.

### Other Relevant Undisputed Facts

69. Defendant employee Warden Darrel Vannoy stated in his deposition that "Well on the physical plant, Angola has a lot of work to do on a physical plant to be ADA, to meet the ADA requirements." Ex. I (Tr. of Vannoy Depo) 71:18-21.

70. Defendant's expert, Brian Nolan, was "retained to review the violation findings and photographs in the September 29, 2016 report by Mark J. Mazz, AIA." Ex. A (Nolan Report) at 1.

71. His conclusion was brief: "In summation, I can substantiate the items recorded in the above referenced Mazz report as being violations of the 1991 and 2010 ADA Standards for Accessible Design." *Id.* at 2.

        Respectfully submitted:

        /s/ Mercedes Montagnes
        Mercedes Montagnes, La. Bar No. 33287
        The Promise of Justice Initiative
        636 Baronne Street
        New Orleans, LA 70113
        Telephone: (504) 529-5955
        Facsimile: (504) 558-0378
        Email: mmontagnes@thejusticecenter.org

        Daniel A. Small (pro hac vice)
        Jeffrey B. Dubner (pro hac vice)
        Cohen Milstein Sellers & Toll PLLC
        1100 New York Avenue NW
        Washington, DC 20005
        Telephone: (202) 408-4600
        Facsimile: (202) 408-4699
        Email: dsmall@cohenmilstein.com
        Email: jdubner@cohenmilstein.com

        Bruce Hamilton, La. Bar No. 33170
        ACLU Foundation of Louisiana
        P.O. Box 56157
        New Orleans, Louisiana 70156
        Telephone: (504) 522-0628
        Facsimile: (888) 534-2996
        Email: bhamilton@laaclu.org

        Miranda Tait, La. Bar No. 28898
        Derek Warden, La. Bar No. 37348
        Advocacy Center
        600 Jefferson Street, Suite 812
        Lafayette, LA 70501
        Telephone: (337) 237-7380
        Facsimile: (337) 237-0486
        Email: mtait@advocacyla.org

        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 6, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

              /s/ Mercedes Montagnes
              Mercedes Montagnes