**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JOSEPH LEWIS, JR., ET AL. | CIVIL ACTION |
| VERSUS | 15-318-SDD-RLB |
| BURL CAIN, ET AL. | |

**RULING**

Before the Court is the Plaintiffs' *Motion to Exclude Testimony of David Thomas.*[1] The motion is opposed.[2] For the reasons herein, the motion shall be GRANTED.

**I.   BACKGROUND**

Plaintiffs are inmates at Louisiana State Penitentiary ("Angola") who bring this action on their own behalf and, putatively "on behalf of a class of prisoners who the named Plaintiffs claim are now, or will in the future be, subjected to the medical care policies and practices of [Angola]."[3] Plaintiffs allege that the inmate medical care at Angola violates the Eighth Amendment of the U.S. Constitution and the ADA.[4] Plaintiffs seek declaratory and injunctive relief.

**II.   ISSUE PRESENTED**

Central to the Eighth Amendment claim is the medical standard of care owed to prisoners by the confining authority. On this issue, Defendants seek to offer the expert opinion and testimony of Dr. David L. Thomas[5], who was engaged by the Defendants to

---

[1] Rec. Doc. 192.
[2] Rec. Doc. 205.
[3] Rec. Doc. 1, ¶ 149.
[4] Rec. Doc. 1.
[5] M.D., J.D., Ed.D. Rec. Doc. 192-2.

1

"provide opinions regarding the care provided by the Louisiana State Penitentiary at Angola."[6]

In his report, Dr. Thomas provides the following opinions[7]:

1. "that [i]ncarceration [f]acilities are unique environments in which to practice medicine" that exist "primarily for the custody and control of detainees and inmates, and only secondarily, [to provide] medical care."[8]

2. "it is not unusual for medical routines and procedures [in an incarcerated setting] to have to be delayed or truncated because of security concerns."[9]

3. "that the operations of the medical and security services [at Angola] comport with those of other prisons and are within the standard of care."[10]

4. that "with regard to each of the Plaintiffs' complaints, care and treatment should be evaluated individually to determine validity of the complaint from the perspective of an expert and to determine if there is a nexus through the complaints and the treatment to warrant certification as a Class," and that "Plaintiffs have no central nexus of commonality that would warrant a class action."[11]

---

[6] Rec. Doc. 192-2, pp. 4-5.
[7] Rec. Doc. 192-2. Dr. Thomas enumerates opinions in 7 numbered paragraphs, but the opinions expressed in paragraphs 1, 5 and 11 are duplicative.
[8] Rec. Doc. 192-2, p. 17, ¶ 6. This opinion is repeated in paragraphs 5 and 11 of his report.
[9] Rec. Doc. 192-2, p. 17, ¶ 7.
[10] Rec. Doc. 192-2, p. 17, ¶ 8.
[11] Rec. Doc. 192-2, pp. 22-23, ¶9, and pp. 72-73.

5. Having identified "items that could probably be improved", he opined that "intervention from the state medical director rather than a judicial process is the appropriate way to bring about those changes."[12]

(Henceforth, for ease and clarity, Dr. Thomas's opinions will sometimes be referenced by the numerical designations set forth above.)

## III. LAW AND ANALYSIS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Rule 702 states,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The proponent of expert testimony ... has the burden of showing that the testimony is reliable"[13] and must establish the admissibility requirements "by a preponderance of the evidence."[14] Both scientific and nonscientific expert testimony is subject to the framework set out by the Supreme Court in *Daubert v. Merrell Dow Pharms.*[15] which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant."[16]

Dovetailing the admissibility requirements of FRE 702, Rule 26 of the Federal Rules of Civil Procedure requires that an expert report contain "(i) a complete statement

---

[12] Rec. Doc. 192-2, p. 72.
[13] *U.S. v. Hicks,* 389 F.3d 514, 525 (5th Cir.2004).
[14] *U.S. v. Fullwood,* 342 F.3d 409, 412 (5th Cir.2003).
[15] 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed. 2d 469 (1993).
[16] *Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir.2004); see *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed. 2d 238 (1999).

of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed.R.Civ.P. 26(a)(2)(B).

"An expert may base an opinion on facts or data that the expert has been made aware of or personally observed."[17] "Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions."[18] When an expert "fail[s] to provide sufficiently detailed information regarding the bases of [the expert's] opinion" the opinion testimony should be excluded.[19]

### A. Standard of Care Opinions (Opinion Numbers 1 & 2)

Plaintiffs move to exclude Dr. Thomas' opinions and testimony regarding the standard of care principally on the argument that "there is an adequate 'fit' between the data and the opinion proffered."[20] Plaintiffs argue that, because Dr. Thomas cannot identify and has no contemporaneous record of the "over 100 inmates" whom he interviewed and whom he contends "related positive experiences and satisfaction with the health care services they are receiving,"[21] the Defendants cannot carry their evidentiary burden of showing that "the testimony is based on sufficient facts or data"[22] or that "the expert has reliably applied the principles and methods to the facts of the case."[23] Plaintiffs likewise argue that, because Dr. Thomas is unable to articulate or

---

[17] Fed. R. Evid. 703.
[18] See *Salgado by Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998); *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996); *Kuzmech v. Werner Ladder Co.*, No. 3:10-cv-266-VLB, 2012 WL 6093898, at *9 (D.Conn., Dec. 7, 2012).
[19] *Koppell v. New York State Bd. of Elections,* 97 F.Supp.2d 477, 481 (S.D.N.Y.2000); *Kuzmech v. Werner Ladder Co.*, No. 3:10-cv-266-VLB, 2012 WL 6093898, at *9 (D.Conn., Dec. 7, 2012).
[20] Citing, *Moore v. Ashland Chem.,* 151 F.3d 269, 275 (5th Cir.1998).
[21] Rec. Doc. 192-2, p. 16.
[22] Fed. R. Evid. 702(b).
[23] *Id.*

4

recollect the "policies, procedures, directives, and guidelines," that in part informed his opinions, the Defendants cannot meet their evidentiary burden to satisfy the threshold for admissibility of expert testimony.

Plaintiffs argue that, absent the ability to identify the factual information which informed the expert's opinions, the Court's *Daubert* gatekeeping function is thwarted and the Court is rendered unable to "evaluate whether there is an adequate 'fit' between the data and the opinion proffered."[24]

Defendants counter that, because this matter is "scheduled for a bench trial, [and] [a]lthough *Daubert* also applies in bench trials, the concern that the fact-finder will be misled there carries little weight."[25] Defendants further argue that "questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration."[26] Defendants distinguish the case of *Moore v Ashland Chem.*[27] cited by the Plaintiffs and, instead, cite to *Carroll v. Morgan*[28] as instructive. Finally, the Defendants implore the Court to consider Dr. Thomas' "opinion regarding the quality of health care . . . in the context of his vast experience."[29]

Dr. Thomas' report and deposition identifies the following bases as informing his opinions in this case:

---

[24] Note 13, *supra*.
[25] Rec. Doc. 205, p. 2, citing cases from the Northern District of California.
[26] Rec. Doc. 205, p. *3 citing, Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir.2004) (emphasis original).
[27] 151 F.3d 269 (5th Cir. 1998).
[28] 17 F.3d 787, 790 (5th Cir. 1994).
[29] Rec. Doc. 205, p. 5.

- A one day site visit wherein he made observations, interviewed staff and "personally spoke to over 100 inmates"[30];

- Review of "medical records of named Plaintiffs and other inmates identified and relied upon by Plaintiffs' experts"[31];

- Review of the "Complaint and other pleadings; depositions of Plaintiffs, Defendants, and others taken in the litigation"[32]; and

- Review of "the policies, procedures, guidelines directives and/or guidelines concerning the delivery of medical care at LSP."[33]

While conceding that Dr. Thomas relied on interviews "with staff and inmates" and on "policies, procedures, guidelines directives and/or guidelines,"[34] the Defendants do not address the gravamen of the Plaintiffs' argument, namely; who did he interview and what policies etc. did he rely on?

Dr. Thomas states that "[he] personally spoke to over 100 inmates [and that] [a]ll inmates interviewed related positive experiences and satisfaction with the health care services they are receiving, except one [and that] [t]heir responses corresponded with the impression given of the excellent quality of health care that is being provided at this facility."[35] In fact, Dr. Thomas' expert report consists extensively of his observations. His observations along with his interviews of over 100 unidentified inmates led him to the conclusion and opinion that Angola is delivering an "excellent quality health care".

---

[30] Rec. Doc. 192-2, pp. 5, 16; 192-3.
[31] *Id.* p. 17.
[32] *Id.*
[33] *Id.* See also, Rec. Doc. 205, p. 3.
[34] Rec. Doc. 205, p. 3.
[35] Rec. Doc. 192-2, p. 16.

6

Dr. Thomas also relies, in part, upon unspecified "policies, procedures, guidelines directives and/or guidelines" to conclude that "the operations of the medical and security services [at Angola] comport with those of other prisons and are within the standard of care."

The Defendants, as the proponent of Dr. Thomas' expert opinion, bear the burden of demonstrating admissibility. Plaintiffs argue that Defendants simply have no way to show "the testimony is based on sufficient facts or data" and "the expert has reliably applied [reliable] principles and methods to the facts of the case." Fed. R. Evid. 702(b) & (d). Plaintiffs argue that without, at least, the identity of the inmates interviewed and the identity of the specific "[p]olicies, procedures, directives, and/or guidelines concerning the delivery of medical care at LSP"[36] that he used to formulate his conclusion that Angola delivers an "excellent quality of health care,"[37] his opinion is untestable by the opponent and the Court is powerless to perform its gatekeeping function.

Plaintiffs argue that Dr. Thomas' opinions are mere *ipse dixit.* By way of example, Plaintiffs' point to Dr. Thomas' observation that:

> Chronic care patients are seen Monday-Friday with patients being seen from every 2-3 months or 6-12 months depending on the control and severity of their chronic condition. A large portion of the offenders are currently being followed in chronic care clinic for various or multiple diagnoses. Periodic physical exams are completed annually on offenders over the age of 50. "[c]hronic care patients are seen . . . every 2-3 months or 6-12 months depending on the control and severity of their chronic condition."[38]

Dr. Thomas' report discloses utterly no verifiable or testable basis for this conclusion of fact, which is foundational to his ultimate opinions on the quality of care.

---

[36] Rec. Doc. 192-2, p. 17.
[37] Rec. Doc. 192-2, p. 16.
[38] Rec. Doc. 192-2, p. 13.

7

Underscoring the critical importance of identifying and recording the source information relied upon to formulate his expert opinions, Dr. Thomas testified that he was unable to "recall any of the details of the chronic care" from the unidentified charts he reviewed.[39]

The Court agrees with the Plaintiffs, "if it is impossible for the Court to learn what data the expert relied on, it is impossible for the Court to evaluate whether there is an adequate 'fit' between the data and the opinion proffered."[40]

While the case of *Moore v. Ashland Chem.*,[41] is distinguishable on its facts, the analysis is instructive. An expert's opinion must be "based upon sufficient facts or data."[42] In other words, there must be a "fit between the data and the opinion proffered".[43] The case of *Carroll v. Morgan*[44], cited by Defendants, does not alter or change the analysis.

Defendants' argument that questions relating to the bases and sources of Dr. Thomas' opinion go to the weight to be assigned his opinion rather than its *admissibility* is unpersuasive. The adversarial system requires that the opponents have the opportunity to challenge the reliability of the opinion. Without, at least, minimal identifying information as to the sources of the empirical and investigative information relied upon, the adversarial process is frustrated and the Court's gatekeeping function thwarted.

Finally, the Court is unpersuaded by the Defendants' argument that because this matter is set for a bench trial the risk of misleading or confusing the finder of fact is of lesser concern. The integrity of the judicial process, and considerations of judicial economy, dictate that this virtually untestable opinion testimony be excluded.

---

[39] Rec. Doc. 192-3, p 134
[40] Rec. Doc. 192, *citing, Moore v. Ashland Chem.*, 151 F.3d 269, 276 (5th Cir. 1998)
[41] *Id.*
[42] Fed. R. Evid. 702(b).
[43] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[44] 17 F.3d 787, 790 (5th Cir.1994).

**B. Security Opinions (Opinion Number 3)**

Dr. Thomas opines "security services [at Angola] comport with those of other prisons and are within the standard of care."[45] He is not qualified by education, skill, training, or experience to opine on security services. His opinion regarding security services is excluded.

**C. Legal Opinions (Opinion Numbers 4 & 5)**

Dr. Thomas' proposed legal opinions shall also be excluded. Dr. Thomas opines that "[t]he Plaintiffs have no central nexus of commonality that would warrant a class action"[46] and that "with regard to each of the Plaintiffs' complaints, care and treatment should be evaluated individually to determine validity of the complaint from the perspective of an expert and to determine if there is a nexus through the complaints and the treatment to warrant certification as a Class."[47]

The questions of class certification, and the component Rule 23 inquiries, such as commonality, are within the exclusive province of the Court. "[I]t is well-established in the Fifth Circuit that Rule 704 does not permit an expert to render conclusions of law."[48]

For the same reasons, Dr. Thomas' opinions that any "improvement[s] that LSP should bring about is best brought about by incremental administrative action, not a judicial action or mandate"[49] are excluded. Opinions regarding the propriety of the use of judicial process are wholly inappropriate. This case presents questions arising under the United States Constitution and Federal law. This Court, and not Dr. Thomas, nor any

---

[45] Rec. Doc. 192-2, p. 17, ¶8.
[46] Rec. Doc. 192-2, p. 70.
[47] *Id.*
[48] *U.S. v. Clark*, No. 09-cr-114, 2010 WL 2710569, at *2 (E.D. Tex. July 7, 2010).
[49] Rec. Doc. 192-2, p. 73. Dr. Thomas opines that "[a]n intervention from the state medical director rather than a judicial process is the appropriate way to bring about those changes." *Id.* p. 73.

9

administrative agency or tribunal, is endowed with the constitutional mandate to interpret and apply the United States Constitution and Federal law. Dr. Thomas' opinions regarding the propriety and or advisability of this Court's exercise of jurisdiction over questions of Constitutional and Federal law are excluded.

## IV. CONCLUSION

For the reasons outlined above, the Plaintiffs' *Motion to Exclude Testimony of David Thomas*[50] is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 29, 2017.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[50] Rec. Doc. 192.