UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH LEWIS, JR., ET AL.                                CIVIL ACTION

VERSUS                                                   15-318-SDD-RLB

BURL CAIN, ET AL.

## RULING

Before the Court is the Defendants' *Motion for Clarification of and Relief From Ruling on Motion to Exclude Testimony of David Thomas*.[1] The motion is opposed.[2] The Defendants filed a Reply.[3] The Court has reconsidered its earlier *Ruling*[4] and for the reasons set forth below, vacates its *Ruling* in part.

### I. HISTORY AND BACKGROUND

This is a putative class action brought by inmates at Louisiana State Penitentiary ("Angola"). Plaintiffs allege, *inter alia*, that the medical care delivered at Angola is medically deficient.[5] Plaintiffs allege that:[6]

- Defendants routinely delay evaluation, treatment, and access to specialty care;

- Defendants routinely deny medically necessary treatment;

---

[1] Rec. Doc. 326.
[2] Rec. Doc. 338.
[3] Rec. Doc. 341-3.
[4] Rec. Doc. 322.
[5] Plaintiffs also claim violations of the American's with Disabilities Act ("ADA"). However, the proposed opinion testimony of Dr. David Thomas, at issue herein, is germane to the medical delivery and standard of care claim.
[6] Rec. Doc. 1.
42398

- Defendants fail to provide and manage medication in accordance with prescriptions and medically appropriate treatment courses;
- Defendants fail to maintain adequate medical records to ensure adequate treatment and follow-up care;
- Defendants create barriers or discourage access to care through the use of a "Malingering rule"; and
- Defendants' medical staffing falls below the acceptable standard of care.

On the question of the standard of medical care delivered at Angola, Defendants designated David L. Thomas, MD to provide opinion testimony.[7] Plaintiffs moved to exclude Dr. Thomas' opinion testimony.[8] The Court granted the Plaintiffs' *Daubert*[9] Motion and excluded Dr. Thomas' opinion testimony.[10] Defendants seek clarification of and/or relief from of the Court's *Ruling* or, alternatively, move the Court to grant an extension of deadlines to enable Defendants to retain a substitute expert. Specifically, Defendants seek clarification of the Court's order regarding Dr. Thomas' standard of care opinions and whether the Court's order excludes Dr. Thomas' testimony in its entirety or is limited to his opinions which are foundationally derived from unidentified staff and inmates interviewed and the unspecified policies and directives reviewed.[11]

## II.   THE COURT'S *RULING*

Inasmuch as there remains confusion about the scope and intent of the Court's *Ruling*, the Court herein clarifies and provides supplemental reasons.

---

[7] *See* Dr. Thomas' Report, Rec. Doc. 192-2.
[8] Rec. Doc. 192.
[9] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)(hereinafter "*Daubert*").
[10] Rec. Doc. 322.
[11] Rec. Doc. 326-1, pp. 2-3.
42398

Dr. Thomas "was asked to provide opinions regarding the care provided by the Louisiana State Penitentiary at Angola."[12] As to the delivery of medical care, Thomas concludes "the medical care at Angola is within the standard of care for correctional medicine."[13] The majority of Dr. Thomas' report is comprised of conclusions or statements of fact upon which he bases his ultimate standard of care opinion.

### III. LAW AND ANALYSIS

Under *Daubert* and Federal Rule of Evidence 702, a district court has broad discretion to determine whether a body of evidence relied on by an expert is sufficient to support that expert's opinion. Rule 702 requires courts to examine the reliability of an expert's sources. In this case, the principal sources of Dr. Thomas' opinions and conclusions are a one-day site visit to LSP where Dr. Thomas made observations, spoke to over 100 unidentified inmates, interviewed staff (many of whom are unidentified), reviewed medical records of the named Plaintiffs, reviewed other identified charts and records, and reviewed unspecified policies, procedures, guidelines and directives concerning the delivery of medical care at LSP. This Court found that, without identification of the inmates interviewed and specification of the specific policies, directives and guidelines relied upon to formulate his ultimate opinion that LSP delivers "an excellent quality of healthcare," Thomas' opinions and conclusions are untestable by the opponent and render the Court powerless to perform its gatekeeping function.[14]

"The overarching goal of *Daubert*'s gate-keeping requirement ... is 'to ensure the reliability and relevancy of expert testimony.'"[15] Dr. Thomas' report reveals that he draws

---

[12] Thomas Report, Rec. Doc. 192-2, pp. 4-5.
[13] *Id.* p. 72.
[14] Rec. Doc. 322, p. 7.
[15] *Black v. Food Lion*, 171 F.3d 308, 311 (5th Cir. 1999)(quoting *Khumo Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 1176 (1999)).
42398

upon his experience and knowledge in the field of "correctional medicine" to reach his conclusions. In other words, his proposed opinion testimony is "experience-based". As recognized by the Supreme Court, "there are many kinds of experts and expertise, [and] the *Daubert* inquiry is always fact-specific."[16] The Court's gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[17]

### A. Reliability

Throughout his report, Dr. Thomas relies on fact, without identifying the source of the fact or providing any foundational support for the fact. These facts then form the bases of his conclusion as to the quality of care. In its *Ruling*, the Court pointed out one such example.[18] Other instances of unsupported factual bases for his ultimate opinion include, *inter alia:*

- Thomas concludes that the Medical Director "has a good working knowledge of the medical inmates" which he attributes to the fact that "inpatients and outpatients knew him by sight."[19]

- Thomas opines that "the levels and functions of the EMT's are consistent with good medical usage."[20] He concludes this by observing that "[t]here are well trained paramedics who are trained and capable of administering medications" and "basic [EMT's] who have had advanced

---

[16] *Id.* (citing *Khumo*, 119 S.Ct. at 1176).
[17] *Id.* (citing *Kumho*, 119 S.Ct. at 1176).
[18] *See* Rec. Doc. 322, p. 7(addressing Dr. Thomas' statement regarding chronic care delivery found at page 16 of his report (Rec. Doc. 192-2)).
[19] Rec. Doc. 192-2 at p. 6.
[20] *Id.* at p. 7.
42398

- on-the-job- training as well as some formal training and . . . limited scope of practice."[21] Dr. Thomas provides no foundation or reference to the facts which underpin his opinion. When asked in his deposition if he reviewed any EMT training materials, he could not recall.[22]

- Thomas opines that LSP medical staff was "knowledgeable, cooperative and willing to share information,"[23] yet he fails to identify any source for this conclusion. What staff did he interview or observe?

- Thomas states that he specifically questioned unidentified[24] inmate orderlies and inmates they care for and concludes that "it is clear orderlies are limited to aiding [inmate patients] in activities of daily living."[25] This supports his opinion that the opposing expert's criticism of the use of inmate orderlies falls below the standard of care is unfounded. Again, without identifying the inmate orderlies and inmate patients he "specifically questioned," the foundational basis for Thomas' opinion is untestable and unverifiable.

- In support of his opinion that "the operations of the medical and security services of [LSP] comport with those of other prisons and are within the standard of care,"[26] Thomas examined "Healthcare Outcomes" and observes that "there were approximately 3100 specialty consults

---

[21] *Id.*
[22] Rec. Doc. 192-3, p. 78:
    Q:    Staying on the staff for now, the medical staff, whether it's physicians, nurses, EMTs, were there any training materials that you reviewed for them?
    A:    I don't recall.
[23] Rec. Doc. No. 192-2 at p. 16.
[24] Rec. Doc. 192-3 at p. 120.
[25] Rec. Doc. No. 192-2 at p. 22.
[26] *Id.* at p. 19.
42398

ordered in the past 12 months with almost 2000 of them completed."[27]

In his deposition, when asked what 'healthcare outcomes" he reviewed, he stated that he reviewed "specialty consults" and "deaths."[28] In evaluating whether the documented delays in obtaining specialty consults had negative health consequences he testified that he received "assurances" from two to three people at LSP.[29] In addition to assurances from 2-3 unidentified persons, he reviewed charts of 3 or 4 unidentified inmate patients who were referred for follow up specialty consultation.[30]

**B. Defendants' Arguments for Relief or Alternatively for Partial Admission of Dr. Thomas' Opinions**

The Defendants argue that Dr. Thomas provides some opinions "supported by testable identifiable data"[31] which should be admitted. The Court addresses below the specific opinions which Defendants contend are reliable and thus admissible.

1. Opinions regarding the named Plaintiffs

Defendants argue that:

[O]pinions regarding Plaintiffs are not addressed in the order granting Plaintiffs' motion. It is Defendants' belief that these opinions were not intended to be excluded by the Court's order, as such opinions are not based upon Dr. Thomas' interviews of unnamed inmates or his review of the policies, procedures, guidelines, and directives. The opinions regarding Plaintiffs are based on specific, identifiable records, which were also reviewed by Plaintiffs' experts, and thus, these opinions are able to be tested.[32]

---

[27] *Id.*
[28] Rec. Doc. 192-3, p. 51, line 9.
[29] *Id.* at pp. 53-54.
[30] *Id.* at pp. 55-57.
[31] Rec. Doc. 326-1 at p. 7.
[32] *Id.* at p. 3.
42398

As to the named Plaintiffs, Thomas indicates that he is providing an "expert evaluation" of "the major alleged problems of each of the Plaintiffs, their care and treatment, and whether in the opinion of this expert it meets both the Constitutional requirement of access to care; a professional medical opinion; and having that opinion carried out with no barriers; as well as Standard of Care requirements for the treatment of incarcerated persons."[33] Thomas reviews the history of each named Plaintiff's medical complaints, but in most cases, he fails to state any opinion as to the whether the applicable standard of care (which is never defined or elucidated by Thomas) was observed. The following recaps his analysis as to each named Plaintiff:

> Alton Adams – No opinion as to standard of care. As to access to care he states that the patient "is pretty much seen on demand."[34]
>
> Alton Batiste – Opines that the patient "did not seek care in a timely fashion"[35] and opines that there are no "real issues with his medical care."[36]
>
> Otto Barrera – Opines that "[h]e is under adequate care."[37]
>
> Clyde Carter – No opinion regarding the standard of care. As to the collection of co-pays (an access to care issue) he opines: "This is the standard in Florida, the Federal Prison system and many others."[38] He further opines that "[s]ick call requests result in a triage in all institutions and do not necessarily guarantee access to a physician level service."[39]

---

[33] Rec. Doc. No. 192-2 at p. 23.
[34] *Id.* at p. 25.
[35] *Id.*
[36] *Id.* at p. 26.
[37] *Id.* at p. 28.
[38] *Id.* at p. 30.
[39] *Id.*

42398

Ian Cazenave - No opinion regarding standard of care, barriers, or access to care.

Ricky Davis - No opinion regarding standard of care, barriers, or access to care.

Cedric Evans - No opinion regarding standard of care, barriers, or access to care. Thomas opines that it is "not uncommon for a non-union of a bony fracture to have a wait-and-see approach."[40]

Reginald George - No opinion regarding standard of care, barriers, or access to care.

Kentrell Parker – Thomas opines "his care has been timely and appropriate."[41]

Lionel Parks - No opinion regarding standard of care, barriers, or access to care.

Farrell Sampier – Thomas opines that his "care has been well within good medical and correctional medical practice."[42]

Lionel Tolbert – Thomas opines "acceptable medical care, evaluation, treatment and access."[43]

John Tonubee - No opinion regarding standard of care, barriers, or access to care.

Edward Washington – Thomas opines his "medical care is appropriate, timely and within the good practice of medicine."[44]

---

[40] *Id.* at p. 35.
[41] *Id.* at p. 38.
[42] *Id.* at p. 40.
[43] *Id.* at p. 41.
[44] *Id.* at p. 45.

42398

Rufus White – Thomas opines his "medical care has been good and within the accepted standard of care for correctional medicine."[45]

Edward Giovanni – Thomas opines that his "medical care is quit consistent with the standard of care for correctional medicine."[46]

Joseph Lewis – Thomas notes that "Plaintiffs' experts use this patient to claim that the sick call mechanism at LSP is inadequate and leads to delays,"[47] and, while he opines that this "is erroneous," he provides no opinion regarding standard of care, barriers, or access to care.[48]

Shannon Hurd – Thomas opines that his "medical care seems quite appropriate."[49]

Of the 18 named Plaintiffs, Dr. Thomas provides no opinions as to whether the care delivered meets the applicable standard of care as to 9 of them. By his own account, he was retained as a standard of care expert, yet he fails to opine as to the standard of care delivered to half the named Plaintiffs whose records he reviewed. Nonetheless, Dr. Thomas is qualified by experience and education to opine as to the level of care provided the named Plaintiffs and whether, in his view, the care provided the named Plaintiffs comports with the applicable standard of care.

> 2. Opinion regarding the Impact of Security Measures upon Correctional Medicine Practice

Thomas opines: "It is not unusual for medical routines and procedures [in a correctional setting] to have to be delayed or truncated because of security concerns."[50]

---

[45] *Id.* at p. 46.
[46] *Id.* at p. 47.
[47] *Id.*
[48] *Id.* at pp. 49-50.
[49] *Id.* at p. 50.
[50] *Id.* at p. 19.

42398

He explains in his deposition that security events such as lock downs may cause medical services and procedures to be "terminated, rescheduled [or] unable to [be] perform[ed]."[51] He opines that, inasmuch as delayed care or procedures are rescheduled, there is no meaningful impact on the standard of care. Delays in the delivery of services are one component factor in the overall quality of care. While Dr. Thomas is qualified by experience to testify about the practical considerations of the corrections environment and its effect on healthcare delivery, this is a common sense observation that an untrained layperson "would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[52] While the observation that security events may delay or "truncate" the delivery of medical care is common sense and, thus, not particularly helpful to the trier of fact, the Court will allow it.

3. Opinion regarding the Adequacy of DOC/LSP Policies and Directives

Defendants argue that "DOC policies and LSP directives are a definable and limited set of documents" and thus his failure to specifically enumerate them is not fatal to his report and opinion.[53] Dr. Thomas' deposition testimony belies this argument:

> Q: And then in terms of the policies, procedures, directives and guidelines, do you have any recollection of what specifically you reviewed in those categories?
> A: No
> Q: Can you identify any of the policies or procedures that you reviewed?
> A: No.[54]

---

[51] Rec. Doc. 192-3 at p. 16, lines 9-10.
[52] *Vogler v. Blackmore*, 352 F.3d 150, 155-56 n 5 (5th Cir. 2003) (quoting Advisory Note to Fed.R.Evid. 702).
[53] Rec. Doc. 326-1, pp. 7-8.
[54] Rec. Doc. 192-3 at p. 7, lines 17-24.
42398

It may be that the Parties have determined and can agree upon those policies and directives that are germane to the delivery of medical care at Angola. Defendants argue that "the adequacy of the DOC policies and LSP directives relating to medical care is at the very heart of this litigation," yet Thomas cites not a single policy or directive as the bases for his conclusion that "the care at LSP is well within the standard of care for a correctional institution."[55] Nonetheless, because this matter is set for a bench trial, the Court can perform its gatekeeping function by ruling on objections at the time of the testimony. Dr. Thomas will be permitted to testify concerning policies and directives that are germane to the issues, subject to and with reservation of all objections.

4. Opinion regarding Staffing Levels and Credentials of LSP Physicians

Responding to the opinions of the Plaintiffs' expert, Dr. Thomas opines that unrestricted licensure of physicians is "neither the law nor the practice throughout correctional healthcare."[56] "Federal courts have consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence, instead merely telling the trier of fact what result to reach."[57] However, Dr. Thomas may testify regarding routine practice within the correctional healthcare field, subject to and with reservation of objections.

5. Opinion regarding the Utilization of Licensed Practical Nursing Staff

Dr. Thomas opines that using LPNs interchangeably with RNs does not violate the "standard of practice in a correctional facility."[58] Dr. Thomas is qualified by experience and education to give this opinion.

---

[55] *Supra* note 46.
[56] Rec. Doc. 192-2, p. 20.
[57] *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, 2011 WL 2746301, at *1 (N.D.Miss. 2011)(citing *Estate of Sowell v. United States,* 198 F.3d 169, 171–72 (5th Cir.1999)).
[58] Rec. Doc. 192-2 at p.22.
42398

6. <u>Opinion regarding the Utilization of EMTs</u>

Dr. Thomas observes that, on Sunday through Thursday, "EMT's go to all housing units to triage sick calls"[59] and that "patients determined to need more care will be referred to a physician provider or referred to the facility health unit."[60] Dr. Thomas opines that "[a]ccess to care is available by sick call request"[61] and that "review of the dates and times of sick call requests and comparing them to times and dates seen there is no unusual or unacceptable delay between request and action."[62]

When asked in his deposition about the sick call requests reviewed, Thomas could not identify the charts reviewed or the sick call requests he observed. He testified:

> Q: So what did you review to determine whether the EMTs were carrying out their duties competently?
> A: Well, first of all I witnessed them. And then I reviewed sick call requests and watched them work, watched them interact with patients, reviewed chart documentation. I don't recall what else.
> Q: Okay. And do you remember what charts or sick call requests you reviewed in particular?
> A No.[63]

Thomas also reviewed EMT protocols but could not identify the protocols he reviewed.[64] Again, Thomas could not and did not supply the facts or data upon which his conclusions and opinions rest. However, since the Court is the trier of fact and jury confusion is not a concern, the Court will defer ruling on reliability and admissibility to the time of trial. All objections are reserved.

---

[59] *Id.* at p. 12.
[60] *Id.*
[61] *Id.* at p. 66.
[62] *Id.*
[63] Rec. Doc. No. 192-3, p. 86, lines 3-11.
[64] Rec. Doc. 192-3 at p. 99.
42398

7. <u>Opinion regarding the Utilization of Correctional Officers for Pill Call</u>

Dr. Thomas opined that "[i]n almost all prison systems . . . where as a matter of routine correctional officers distribute medications to inmates."[65] Citing to his expert opinion previously given, he concludes that this practice "is within the standard of care for correctional health care."[66] The distribution of medicine by corrections officers is only one of many factors in Dr. Thomas' ultimate opinion that LSP delivers medical care in accordance with the standard of care for correctional medicine. Dr. Thomas is qualified by experience and education to provide an opinion regarding whether pill call delivery through corrections officers meets the applicable standard of care.

8. <u>Opinion regarding the Utilization of Inmate Orderlies</u>

For the reasons set forth above, objections to admissibility and the reliability of the foundation for this opinion are referred to the time of the hearing or trial.

9. <u>Opinion regarding the Operational Aspect of Medical Services at LSP</u>

For the reasons set forth above, objections to admissibility and the reliability of the foundation for this opinion are referred to the time of the hearing or trial.

A careful review of his report and deposition leads the Court to view Dr. Thomas' opinions as largely unsupported assertions, mere *ipse dixit.* "If an opinion is fundamentally unsupported, then it offers no expert assistance to the [trier of fact]. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Federal Rule of Evidence 403."[67] However, since this matter is set for a bench

---

[65] Rec. Doc. No. 192-2 at p. 60.
[66] *Id.* at p. 61.
[67] *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)(quoting, *Barrel of Fun, Inc. v. State Farm Fire & Casualty Co.,* 739 F.2d 1028, 1035 (5th Cir.1984)("evidence admissible under Rule 703 must satisfy Rule 403 which excludes evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'")).
42398

trial,[68] the Court is the trier of fact and jury confusion is not a consideration. In the context of a bench trial, vigorous and skillful cross examination serves as an adequate safe guard against shaky opinion testimony.[69]

While the Court has serious concerns about the reliability of the foundations for Dr. Thomas' opinions, the adversarial process provides an adequate means to test the reliability and relevance of the opinions within the confines of a bench trial. The Court's gatekeeping function can be performed at the class certification hearing and at the trial of this matter. Since jury confusion is not a concern, the Court will permit Dr. Thomas to testify. The challenges to reliability, relevance, and admissibility are deferred to trial.

The Courts prior *Ruling* [70] having been reconsidered, and for the reasons herein assigned, it is hereby vacated in part. The Plaintiff's *Motion in Limine*[71] is hereby GRANTED in part and DENIED in part. The Plaintiffs *Motion in Limine* to exclude the opinion testimony of Dr. Thomas pertaining to the standard of medical care is DENIED, and the Court's prior *Ruling* granting the motion to exclude standard of care testimony is VACATED. The Plaintiffs *Motion in Limine* is GRANTED in part, and Dr. Thomas shall be excluded from offering legal opinions and opinions regarding security. All objections to the admissibility of opinion testimony of Dr. David Thomas are reserved to the time of his testimony at the Class Certification hearing and/or trial. The Defendants' request for reconsideration and request for leave to amend Dr. Thomas' expert report to cure deficiencies are DENIED as moot.

---

[68] *See* Rec. Doc. 115, Order on Defendants withdrawal of Jury demand.
[69] *Daubert,* 509 U.S. at 596 (citation omitted).
[70] Rec. Doc. No. 322.
[71] Rec. Doc. No. 192.
42398

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Defendants' *Motion for Clarification of and Relief From Ruling on Motion to Exclude Testimony of David Thomas*[72] is GRANTED;

**IT IS FURTHER ORDERED** that the Courts prior *Ruling*[73] is vacated in part. Plaintiffs *Motion in Limine*[74] to exclude Dr. David Thomas' opinion testimony as relating to legal and security issues is GRANTED; the motion to exclude standard of care opinion testimony is DENIED, and all objections to admissibility are reserved.

**IT IS FURTHER ORDERED** that the Defendants' request to vacate and amend the *Scheduling Order* and for leave to name a substitute expert is DENIED, as moot.

Signed in Baton Rouge, Louisiana on <u>October 23, 2017</u>.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[72] Rec. Doc. No. 326.
[73] Rec. Doc. No. 322.
[74] Rec. Doc. No. 192.
42398