## SETTLEMENT AGREEMENT BETWEEN

## THE UNITED STATES OF AMERICA

## AND

## LOUISIANA STATE PENITENTIARY, LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

## UNDER THE AMERICANS WITH DISABILITIES ACT

## DJ # 204-32M-55

I. **BACKGROUND**

    A. The United States initiated this matter as a compliance review of the Louisiana State Penitentiary ("LSP"), Louisiana Department of Public Safety and Corrections, under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, ("Title II"), and the United States Department of Justice's implementing regulation, 28 C.F.R. Part 35.

    B. Because the Louisiana Department of Public Safety and Corrections receives Federal financial assistance from the United States Department of Justice, the review was also conducted under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Department of Justice's implementing regulation, 28 C.F.R. Part 42, Subpart G.

    C. On May 9 - 14, 2010, representatives from the United States Department of Justice Civil Rights Division toured LSP with a consultant in the field of architecture.

II. **JURISDICTION**

    A. The ADA applies to LSP because it is a "public entity" as defined by Title II. 42 U.S.C. § 12131(1).

    B. The United States is authorized under 28 C.F.R. Part 35, Subpart F, to determine LSP's compliance with Title II of the ADA and the Department of Justice's Title II implementing regulation, to issue findings, and, where appropriate, to negotiate and secure voluntary compliance agreements. Furthermore, the Attorney General is authorized, under 42 U.S.C. § 12133, to bring a civil action enforcing Title II of the ADA.

    C. The United States is authorized under 28 C.F.R. Part 42, Subpart G, to determine LSP's compliance with Section 504, to issue findings, and, where appropriate, to negotiate and secure voluntary compliance agreements. Furthermore, the

1

Lewis v. Cain - Def's Production 4 - 000004592

JX-CCH-000398

Attorney General is authorized, under 29 U.S.C. § 794 and 28 C.F.R. §§ 42.530 and 42.108-110, to suspend or terminate financial assistance to the Louisiana Department of Public Safety and Corrections provided by the Department of Justice should the United States fail to secure voluntary compliance pursuant to Subpart G or should the United States bring a civil suit to enforce the rights of the United States under applicable law.

D.   The parties to the Agreement are the United States of America and the Louisiana State Penitentiary, Louisiana Department of Public Safety and Corrections.

E.   Based on this compliance review of LSP's programs, services, activities, and facilities, the United States has concluded that LSP contains architectural and programmatic barriers to access for persons with disabilities and that qualified individuals with disabilities are, by reason of such disabilities, excluded from participation in or are denied the benefits of many of LSP's programs, services, or activities or are subjected to discrimination in violation of Title II of the ADA and Section 504. The programmatic barriers include: the failure to provide accessible transportation to transport inmates with disabilities to the medical infirmary and other areas, as needed; limited access to jobs for inmates with mobility disabilities; the failure to adopt and implement an inmate grievance procedure; and, the failure to designate an ADA Coordinator. The agreed upon remedial actions, identified in Section IV below, are intended to remedy those violations.

F.   The parties agree that it is in their best interests, and the United States believes that it is in the public interest, to resolve this dispute without engaging in protracted litigation. The parties have therefore voluntarily entered into this Agreement.

G.   In consideration of, and consistent with, the terms of this Agreement, the Attorney General agrees to refrain from filing a civil suit in this matter, except as provided in the section entitled "Implementation and Enforcement."

III.   **DEFINITIONS**

A.   The term "LSP" shall refer to LSP, Louisiana Department of Public Safety and Corrections, and its employees, agents, or contractors, who are wholly or partially responsible for the custody and care of inmates confined at LSP.

B.   The term "inmate with a disability" shall refer to any inmate who meets the definition of "disability" as set forth in the ADA. 42 U.S.C. § 12102.

C.   The term "new construction" shall mean each facility or part of a facility constructed by, on behalf of, or for the use of LSP where the construction commenced after January 26, 1992. 28 C.F.R. § 35.151(a).

D.   The term "alterations" means a change to LSP's facilities that affects or could

2

affect the usability of the facility or any part thereof where the alteration was commenced after January 26, 1992.  28 C.F.R. § 35.151(b).

E.  The "effective date of this Agreement" is the date of the last signature agreeing and consenting to this Agreement.

## IV. **REMEDIAL ACTIONS**

A.  Architectural Issues

1.  Within three (3) years of the effective date of this Agreement, LSP shall complete the modifications to LSP as specified in Attachment A, using the 2010 Standards for Accessible Design, 28 C.F.R. § 35.104 ("2010 Standards").  LSP will retain an Independent Licensed Architect ("ILA") as set forth in Section VII, to monitor compliance with the provisions of Attachment A and any other alteration, addition, or modification made by LSP during the term of this Agreement.

2.  In the event that LSP has already undertaken an alteration, addition, or other modification to any element identified in Attachment A since the onsite review of  May 9 - 14, 2010 and prior to the effective date of this Agreement, LSP will submit, within six (6) months of the effective date of this Agreement, a written report to the ILA and the United States summarizing the actions taken and providing evidence establishing each individual element's compliance with the applicable architectural standard as permitted by 28 C.F.R. § 35.151(c) and its Appendix, copied below:

| Date of Construction or Alteration | Applicable Standards |
| --- | --- |
| Before September 15, 2010 | 1991 ADA Standards or UFAS |
| On or after September 15, 2010, and before March 15, 2012 | 1991 ADA Standards, UFAS, or 2010 ADA Standards |
| On or after March 15, 2012 | 2010 ADA Standards |

3.  Within six (6) months of the effective date of this Agreement, LSP shall identify all LSP buildings, including areas and elements within buildings, constructed or altered on or after March 15, 2012, and shall develop a plan to provide the number of accessible cells required under the ADA.  New construction of, and alterations to, correctional facilities shall comply with the 2010 Standards except that correctional facilities shall provide accessible mobility features complying with § 807.2 of the 2010 Standards for a minimum of 3% accessible cells (but no fewer than one) of the total number of cells in a facility.  Cells with mobility features shall be provided in each classification level.  28 C.F.R. § 35.151(k).

3

Lewis v. Cain - Def's Production 4 - 000004594

B. Services, Programs, and Activities

1. To provide access to programs, services, and activities for inmates with disabilities, LSP, consistent with its custodial role, shall:

   a. Within ninety (90) days of the effective date of the agreement, LSP will ensure that inmates with disabilities are provided benefits, aids, or services that are provided to other inmates. This includes, but is not limited to, work (and the creation of alternative jobs for inmates with disabilities who cannot perform physical labor), education, and recreation. LSP will also provide accessible transportation for inmates with mobility disabilities to attend its education programs. 28 C.F.R §§ 35.149, 35.150.

   b. Within thirty (30) days of the effective date of the agreement, LSP will ensure that wheelchairs and other adaptive equipment used by inmates with disabilities are routinely cleaned, repaired, maintained, and generally kept in a safe, operable condition. In addition, LSP must provide appropriate devices, such as canes, trapeze bars, prostheses, orthopedic shoes, braces, air mattresses, and other medically necessary equipment, as required to meet the needs of inmates with disabilities. 28 C.F.R. §§ 35.130, 35.130(b)(7).

   c. Within one (1) year of the effective date of the agreement, LSP will ensure that LSP has an adequate number of wheelchair accessible vehicles for the transportation of inmates with mobility disabilities to meet their needs. LSP will also adopt procedures to ensure the safe transportation of inmates with disabilities, including inmates who use wheelchairs, and train staff on these procedures, including the use of appropriate equipment to secure and stabilize wheelchairs during transit. 28 C.F.R. § 35.130.

V. **DISABILITIES COORDINATOR AND GRIEVANCE PROCEDURE**

A. Within thirty (30) days of the effective date of this agreement, LSP shall designate and maintain a Disabilities Coordinator with responsibilities for LSP. The Disabilities Coordinator shall report to the LSP Warden and LSP shall provide the Disabilities Coordinator with sufficient authority and resources to perform the tasks required by this Agreement, including coordinating requests for accommodations from inmates with disabilities. 28 C.F.R. § 35.107. The Disabilities Coordinator shall maintain records of requests for auxiliary aids and services and the auxiliary aids and services provided with or without a specific inmate request. The Disabilities Coordinator shall also resolve inmate ADA complaints and maintain records regarding the disposition of each complaint.

B. LSP shall adopt and implement a written grievance procedure for resolving inmate ADA complaints. 28 C.F.R. § 35.107. Within forty-five (45) days of the

4

effective date of this Agreement, LSP will submit to the United States for review and approval its draft ADA Grievance Procedure for resolving inmate ADA complaints. 28 C.F.R. § 35.107(b). The United States shall review the draft Grievance Procedure and provide comments to LSP. LSP shall incorporate the United States' comments and submit the revised procedure to the Department for review and approval within ten (10) days of receipt of the United States' comments. Within ten (10) days of the Department's approval, LSP shall adopt and implement the approved Grievance Procedure.

## VI.    POSTING POLICIES AND PROCEDURES

A. Within twenty (20) days of the United States' approval of the Grievance Procedure, LSP shall post in all housing areas, intake, and medical units, a notice to inmates announcing adoption and implementation of the Grievance Procedure and describing its requirements. LSP shall amend the Inmate Handbook to describe the Grievance Procedure.

## VII.    INDEPENDENT LICENSED ARCHITECT

A. Within three (3) months of the effective date of this Agreement, LSP will retain an Independent Licensed Architect ("ILA") knowledgeable about the architectural accessibility requirements of the ADA and Section 504. This ILA, paid by LSP without regard to outcome, must be pre-approved by the United States. The ILA must act independently to certify whether remediation of the violations identified in Attachment A and any other alterations, additions, or modifications made by LSP during the term of this Agreement comply with the applicable accessibility standards pursuant to 28 C.F.R. § 35.151(c) and the Appendix to 28 C.F.R. § 35.151(c).

B. The ILA will conduct semi-annual inspections of LSP's facilities in order to ensure compliance with Section IV.A. of this Agreement. The ILA will impartially prepare written reports with photographs identifying that the violation has been remediated and will use the certification form at Attachment B. The ILA will be considered a neutral inspector for purposes of issuing certifications of compliance and will be reasonably available to the United States to discuss findings in the reports, photographs, and certifications.

C. The United States may also, in its discretion, provide technical assistance to the ILA throughout the term of this Agreement. Upon request by the Department, LSP will provide prior notice to the United States of inspections by the ILA to allow representatives of the United States to be present.

D. LSP will submit ILA certifications along with its reporting requirements as set forth in this Agreement.

## VIII.    MONITORING AND REPORTING REQUIREMENTS

5

A. Within six (6) months of the effective date of this Agreement, LSP will provide the United States with a written status report, including any supporting documentation, delineating all steps taken during the reporting period to comply with each substantive provision of this Agreement. Thereafter, for the duration of this Agreement, LSP will send a status report every six (6) months to:

> Disability Rights Section
> Civil Rights Division
> U.S. Department of Justice
> 1425 New York Ave., NW
> Washington, DC 20005
> [DJ # 204-32M-55]

B. The United States shall have full and complete access to LSP, its records, inmate records, and inmates, with advance written notice. The Department shall have the right to conduct confidential interviews with inmates.

IX. **IMPLEMENTATION AND ENFORCEMENT**

A. This Agreement shall remain in effect for three (3) years from the effective date of the Agreement.

B. LSP shall ensure that all relevant current and future staff, including contractors, understand and implement the terms of this Agreement.

C. This Agreement is binding on all successors, assignees, employees, agents (including contractors) and all those working for or on behalf of LSP.

D. LSP shall implement all reforms necessary to effectuate the terms of this Agreement and shall revise any policy, procedure, or practice, as necessary, to effectuate the terms of this Agreement.

E. LSP agrees that it shall not retaliate against any person that filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding relating to this Agreement.

F. LSP shall maintain sufficient records to document its compliance with all of the requirements of this Agreement. During the period of this Agreement, LSP shall maintain any and all records required by or developed under this Agreement.

G. It is a violation of this Agreement for LSP to fail to comply in a timely manner with any of the requirements of this Agreement.

H. Failure by the United States to enforce any provision of this Agreement is not a waiver of the United States' right to enforce any provision of this Agreement.

6

I.  If LSP fails to implement the terms of this Agreement, the United States reserves the right to institute a civil action to enforce this Agreement and the ADA and obtain remedies for the violations. Each party will bear the costs of any attorney fees associated with this matter.

J.  This Agreement (including its Attachments) is the entire agreement between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party will be enforceable. This Agreement does not remedy any other potential violations of the ADA or other federal law. This Agreement does not relieve LSP of its continuing obligation to comply with all aspects of the ADA and Section 504.

K.  Each of the parties to this Agreement shall bear its own costs and expenses associated with, or arising from, its performance of obligations under this Agreement.

L.  The parties may jointly agree, in writing, to modify the terms of this Agreement.

M.  No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action or proceeding. Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class member under this Agreement. This Agreement is not intended to expand the right of any person or entity who seeks relief against LSP or the Louisiana Department of Public Safety and Corrections, its officials or employees. This Agreement may not be used as evidence of liability in any proceeding.

N.  The person signing for LSP represents that he is authorized to bind LSP to this Agreement.

7

**AGREED AND CONSENTED TO:**

**For Louisiana State Penitentiary**

_____

BURL CAIN
Warden, Louisiana State Penitentiary
17544 Tunica Trace
Angola, Louisiana 70712

Dated:_____

**For the United States:**

J. WALTER GREEN
United States Attorney
Russell B. Long Federal Courthouse
U.S. Attorney's Office
777 Florida Street, Suite 208
Baton Rouge, LA 70801

VANITA GUPTA
Principal Deputy Assistant Attorney
General
EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division
REBECCA B. BOND, Chief
SHEILA M. FORAN
Special Legal Counsel
JANA ERICKSON, Deputy Chief
MELLIE H. NELSON, Supervisory
Trial Attorney

_____

DOV LUTZKER
Trial Attorney
Disability Rights Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington D.C. 20530
(202) 514-5746

Dated:_____

8

# ATTACHMENT A

Lewis v. Cain - Def's Production 4 - 000004601

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| | | **CAMP C** | | |
| | | **Entry Building** | | |
| 1 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | **Visiting Shed** | | |
| 2 | 226.1, 902 | The tables are not accessible to persons who use wheelchairs. | Provide a sufficient number of accessible tables so that 5% (but no fewer than one) are available for use by people with mobility disabilities. Each accessible table must be on an accessible route, must have knee space at the table at least 27 inches high, 30 inches wide, and 17 inches deep, and must have a table top between 28 inches and 34 inches above the floor. | 6 months |
| 3 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 4 | 206.5, 404, 904.2 | The Shakedown Booth/K9 Narcotics Detector is not accessible to persons who use wheelchairs. | Provide an accessible booth such that all of the elements, including door, door hardware, clear floor space and arrangement comply with the Standards. | 12 months |
| 5 | 227.3, 904.4 | The service counter in the lobby is 42 inches above the floor. | Provide a counter such that a portion is at least 36 inches wide and no more than 36 inches above the finished floor. | 6 months |
| 6 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The men's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 7 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The women's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | **Chapel** | | |
| 8 | 206.1, 405, 505.2 | The ramp does not comply with the Standards. | Provide a ramp that is at least 36 inches wide, with a slope not exceeding 8.33% and a cross slope not exceeding 2.08%; with level landings at least as wide as the ramp and 60 inches long at the top and bottom of every ramp run; The ramp shall have no run containing a rise greater than 30 inches. On each side of ramp runs and landings, provide edge protection that consists of either an extended ground surface at least 12 inches beyond the edge of the surface of the ramp or landing, or a curb or barrier that prevents the passage of a 4 inch diameter sphere where any part of the sphere is within 4 inches of the surface. On both sides, provide handrails that have a diameter between 1 1/4 and 2 inches or a perimeter between 4 inches and 6 1/4 inches and a cross section of no more than 2 1/4 inches such that the handrails are continuous along the full length of the ramp run. Handrails shall have a continuous gripping surface extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface; extensions shall return to the wall, guard, or landing surface (or continue on as handrails); handrails shall not rotate within their fittings; handrails shall be mounted between 34 inches and 38 inches above the ramp surface and at least 1 1/2 inches from the wall; gripping surfaces shall be free of sharp or abrasive elements and have rounded edges; and gripping surfaces shall not be obstructed along their tops or sides and the bottoms shall not be obstructed for more than 20% of their length and have no horizontal projections occurring closer than 1 1/2 inches from the bottom of the gripping surface (except that the distance between horizontal projections and the bottom of the gripping surface can be reduced by 1/8 inch for each 1/2 inch of handrail perimeter over 4 inches). | 18 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DI# 204-32M-55

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004602

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | | **Louisiana State Penitentiary - Angola - ADA Report** | |
| 9 | 206.5, 302, 303, 404.2.5 | The entry door threshold is 1 inch. | Provide a threshold that is no more than ¼ inch high, or is between ¼ inch and ½ inch high (3/4 inch if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 6 months |
| 10 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The visitor's toilet room has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 11 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 12 | 206, 303. | The accessible route to the stage/pulpit is blocked by 3 steps. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible). | 6 months |
| | | | **Educational Building** | |
| 13 | 206.1, 302, 303 | The accessible route at the entrance door has deteriorated to the point that portions are not firm, stable, and slip resistant. | Repave the deteriorated portions of the walkway such that the accessible route is firm, stable, and slip resistant. | 6 months |
| 14 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | | **Dining Hall** | |
| 15 | 226.1, 305, 306, 902 | The tables in the dining room are not accessible to persons who use wheelchairs. | At least 5% (but no fewer than 1) of dining surfaces shall be available for use by people with mobility disabilities.  Each accessible dining or work surface shall be on an accessible route; with clear floor space 30 inches wide by 48 inches deep positioned for a forward approach; with knee clearance at least 11 inches deep at 9 inches high and at least 8 inches deep at 27 inches high; and with a dining or work surface between 28 inches and 34 inches high.  They shall be dispersed throughout the dining hall. | 6 months |
| | | | **Dorm - Bear 1** | |
| 16 | 206.4, 305, 308, 309.4, 404.2.4.4, 404.3.5 | At the door there is a raised concrete area greater than 1/2 inch within the maneuvering clearance. | The ground within the door's required clearances shall have a slope no greater than 2.08%, or an automatic door opener with standby power or that remains open with the power off.  All automatic door opener operating devices shall be easy to operate with one hand; shall not require tight grasping, pinching, or twisting of the wrist to operate; shall not require more than 5 pounds of force to operate; shall be mounted between 15 and 48 inches high on an accessible route; and shall be accompanied by a clear floor space that is 48 inches by 30 inches and is beyond the arc of the door's swing. | 6 months |
| 17 | 205.1, 305, 308.2, 308.3, 309 | The hot water dispenser above the drinking fountain is mounted 62 inches above the finished floor. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 12 months |
| 18 | 213.3.6, 608.7 | The ceramic tile threshold into the gang shower entry is greater than 1 inch and is not beveled. | Provide a threshold that is 1/2 inch high maximum.  Changes in level between ¼ inch high minimum and ½ inch high maximum shall be beveled with a slope not steeper than 50%. | 6 months |
| 19 | 213.2, 606.5 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact.  There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| 20 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The shower does not comply with the Standards. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening.  Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 18 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000408
Page 11 of 30

Lewis v. Cain - Def's Production 4 - 000004603

| | Louisiana State Penitentiary - Angola - ADA Report | | | |
|---|---|---|---|---|
| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
| | | **CAMP D** | | |
| | | **Parking Lot** | | |
| 21 | 206, 406 | The curb ramp serving the accessible parking space has a slope of 10.1%. | Provide a curb ramp that is at least 36 inches wide, has a maximum slope of 8.33% and a maximum cross slope of 2%. | 12 months |
| | | **Entry Building** | | |
| 22 | 206.5, 404.2.3 | The clear opening of the 2 sliding doors is 25 1/4 inches. | Provide a doorway that has a minimum clear opening of 32 inches. | 24 months |
| | | **Visiting Center** | | |
| 23 | 206.1, 302, 303 | The accessible route at the entrance door has deteriorated to the point that portions are not firm, stable, and slip resistant. | Repave the deteriorated portions of the walkways, such that the accessible route is firm, stable, and slip resistant. | 12 months |
| 24 | 226.1, 305, 306, 902 | The tables in the dining room are not accessible to persons who use wheelchairs. | At least 5% (but no fewer than 1) of dining surfaces shall be available for use by people with mobility disabilities. Each accessible dining or work surface shall be on an accessible route; with clear floor space 30 inches wide by 48 inches deep positioned for a forward approach; with knee clearance at least 11 inches deep at 9 inches high and at least 8 inches deep at 27 inches high; and with a dining or work surface between 28 inches and 34 inches high. They shall be dispersed throughout the dining hall. | 6 months |
| 25 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 26 | 206.5, 404, 904.2 | The Shakedown Booth/K9 Narcotics Detector is not accessible to persons who use wheelchairs. | Provide an accessible booth such that all of the elements, including door, door hardware, clear floor space and arrangement comply with the Standards. | 12 months |
| 27 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The men's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 28 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The women's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | **Chapel** | | |
| 29 | 213.3.4, 309.4, 606.4 | The inmate toilet room lavatory contains knob hardware and requires tight grasping, tight pinching, or twisting of the wrist to operate. | Provide a lavatory with a faucet that can be operated with no more than 5 pounds of force and can be used with one hand and without tight grasping, pinching, or twisting of the wrist (lever-operated, push-type, and electronically controlled mechanisms are examples of acceptable designs). Hand-operated metering faucets shall remain open for at least 10 seconds. | 6 months |
| 30 | 213.3.2, 309.4, 604.6 | The visitor toilet room flush control is located on the closed side. | Provide a flush control mounted on the "open" side of the toilet's clear floor space, between 15 and 48 inches high, and requiring a maximum of 5 pounds of force to operate; or provide an automatic flush device. | 6 months |
| 31 | 206, 303 | The accessible route to the stage/pulpit is blocked by 3 steps. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible). | 12 months |
| | | **Barber Shop** | | |
| 32 | 206, 303, 403.4 | There is a 3 1/2 inch step at the entrance. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| | | **Dining Hall** | | |
| 33 | 206, 403.5.1 | The food service line is blocked by a column, narrows to 29 inches and is not accessible to persons who use wheelchairs. | Provide an accessible route with a minimum clear width of 36 inches, except that the width may decrease to 32 inches for a depth of no more than 24 inches. | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJW 204-32M-55

JX-CCH-000409
Page 5 of 20

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004604

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| 34 | 226.1, 305, 306, 902 | The tables in the dining room are not accessible to persons who use wheelchairs. | At least 5% (but no fewer than 1) of dining surfaces shall be available for use by people with mobility disabilities. Each accessible dining or work surface shall be on an accessible route; with clear floor space 30 inches wide by 48 inches deep positioned for a forward approach; with knee clearance at least 11 inches deep at 9 inches high and at least 8 inches deep at 27 inches high; and with a dining or work surface between 28 inches and 34 inches high. They shall be dispersed throughout the dining hall. | 6 months |
| | | **Education Building** | | |
| 35 | 211, 602 | The drinking fountain does not comply with the Standards. | Ensure that 50% of all drinking fountains per building (but at least 1) comply with the Standards and have a spout mounted at the front of the unit no higher than 36 inches (measured from the finished floor or ground surface to the spout outlet). Ensure that fountain controls require no more than 5 pounds of force to operate; are operable with one hand without tight grasping, pinching, or twisting of the wrist; and are front mounted or side mounted near the front edge. Additionally, provide a drinking fountain that is accessible to people who have difficulty bending or stooping. This can be accommodated by the use of a "hi-lo" fountain; by providing one fountain accessible to those who use wheelchairs and one fountain at a standard height convenient for those who have difficulty bending; by providing a fountain accessible to people who use wheelchairs and a cup dispenser; or by such other means as would achieve the required accessibility for each group of people. | 12 months |
| 36 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | **Infirmary** | | |
| 37 | 213.2, 606.5 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| | | **Pill Window** | | |
| 38 | 206.2, 405.2 | The ramp leading to the pill window has a steep slope near the bottom of the ramp. | Provide a ramp with a slope no greater than 8.33%, unless there are space limitations and the ramp serves an existing site, building, or facility, and has a rise of no more than 6 inches, in which case a ramp may be provided in accordance with Table 405.2. | 6 months |
| | | **Falcon Unit 1 - Designated Accessible Dorm** | | |
| 39 | 206.4, 305, 308, 309.4, 404.2.4.4, 404.3.5 | At the door there is a slope of 8.1% within the required maneuvering clearance. | The floor within the door's required clearances shall have a slope no greater than 2.08%, or an automatic door opener with standby power or that remains open with the power off. All automatic door opener operating devices shall be easy to operate with one hand; shall not require tight grasping, pinching, or twisting of the wrist to operate; shall not require more than 5 pounds of force to operate; shall be mounted between 15 and 48 inches high on an accessible route; and shall be accompanied by a clear floor space that is 48 inches by 30 inches and is beyond the arc of the door's swing. | 18 months |
| 40 | 205.1, 305, 308.2, 308.3, 309 | The hot water dispenser is mounted too high and not accessible to persons who use wheelchairs. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 12 months |
| 41 | 213.3.2, 604.4 | The toilet seat is 20 1/4 inches high. | Provide a toilet with the top of the seat 17 to 19 inches high. | 6 months |
| 42 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The shower does not comply with the Standards. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening. Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 24 months |
| | | **Hawk Tier 2** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000410
Page 9 of 10

Lewis v. Cain - Def's Production 4 - 000004605

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | | **Louisiana State Penitentiary - Angola - ADA Report** | |
| 43 | 206, 303, 403.4 | There is a 1 inch lip between the interior and breezway pavement. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| 44 | 28 CFR § 35.151(k), 232, 807 | There are no accessible cells. | Provide accessible cells so that at least 3% minimum of the total cells are accessible and ensure that all inmates with mobilty disabilities are housed in accessible cells.  To be accessible, all of the cells' elements, including door, clear floor space, water closet, grab bars, lavatory, mirror, bed, desk, controls, and dispensers, comply with the ADA Standards. | 24 months |
| | | **CAMP J** | | |
| 45 | 28 CFR § 35.151(k), 206, 213, 216, 226, 232, 404, 603, 604, 606,  703, 807, 902 | There are no accessible inmate toilet rooms, cells, dorms, visitation areas or common-use facilities at Camp J. | Provide accessible elements including inmate toilet rooms, cells, dorms, inmate visitation areas and common-use facilities at Camp J or provide the required number of accessible elements in other housing areas within the prison. | 24 months |
| 46 | 226.1, 902 | The tables in the visitation area are not accessible to persons who use wheelchairs. | Provide a sufficient number of accessible tables so that 5% of them in each area (but no fewer than one) are available for use by people with mobility disabilities.  Each accessible table must be on an accessible route, must have knee space at the table at least 27 inches high, 30 inches wide, and 17 inches deep, and must have a table top between 28 inches and 34 inches above the floor. | 6 months |
| 47 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The public use toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 48 | 206.5, 404, 904.2 | The Shakedown Booth/K9 Narcotics Detector is not accessible to persons who use wheelchairs. | Provide an accessible booth such that all of the elements, including door, door hardware, clear floor space and arrangement comply with the Standards. | 12 months |
| | | **PRISON MUSEUM** | | |
| | | **Parking Lot** | | |
| 49 | 208, 302, 502 | The designated accessible parking space has an access aisle that is 56 inches wide. | Provide a van accessible parking space that is a minimum of 132 inches wide and served by an access aisle at least 60 inches wide, or a minimum of 96 inches wide and served by an access aisle at least 96 inches wide; and designated by a vertical sign with the International Symbol of Accessibility and an additional "van accessible" sign mounted at least 60 inches high to the bottom of the signs (unless there are 4 or fewer total parking spaces, in which case, signage is not required).  The space and access aisle shall contain no changes in level, with slopes and cross-slopes not exceeding 2.08%, and shall have surfaces that are firm, stable, and slip-resistant; and the access aisle shall be marked so as to discourage parking in it. | 6 months |
| | | **Exterior Ramp** | | |
| 50 | 206.2, 405.8, 505 | The handrails do not comply with the Standards. | On both sides of the ramp, provide handrails that have a diameter between 1 1/4 inch and 2 inches or a perimeter between 4 inches and 6 1/4 inches and a cross section of no more than 2 1/4 inches such that the handrails are continuous along the full length of the ramp run.  Inside handrails on switchbacks or doglegs shall be continuous between runs; handrails shall have a continuous gripping surface extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface (except in alterations where extensions would be hazardous due to plan configuration); extensions shall return to the wall, guard, or landing surface (or continue on as handrails); handrails shall not rotate within their fittings; handrails shall be mounted at a consistent height between 34 inches and 38 inches above the ramp surface and at least 1 1/2 inches from the wall; gripping surfaces and adjacent surfaces shall be free of sharp or abrasive elements and have rounded edges; and gripping surfaces shall not be obstructed along their tops or sides and the bottoms shall not be obstructed for more than 20% of their length and have no horizontal projections occurring closer than 1 1/2 inches from the bottom of the gripping surface (except that the distance between horizontal projections and the bottom of the gripping surface can be reduced by 1/8 inch for each 1/2 inch of handrail perimeter over 4 inches). | 6 months |
| | | **Men's Public Toilet Room** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000411

Lewis v. Cain - Def's Production 4 - 000004606

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| 51 | 213.3.6, 608.7 | The wood transition threshold is 1 inch. | Provide a threshold that is beveled with a slope of no more than 50% if higher than 1/4 inch. | 6 months |
| 52 | 213.3.2, 604.5.1 | The side grab bar is mounted with the far end 46 inches from the rear wall. | Provide a side grab bar that is at least 42 inches in overall length, with the far end mounted at least 54 inches from the rear wall, and with the closer end no more than 12 inches from the rear wall. | 6 months |
| 53 | 213.2, 603.3 | The bottom reflecting surface of the mirror is 45 1/2 inches high. | Provide at least one mirror such that, if it is mounted above a lavatory or countertop, it is mounted with the bottom edge of the reflecting surface no more than 40 inches high; or, if it is not mounted above a lavatory or countertop, it is mounted with the bottom edge of the reflecting surface no more than 35 inches high. | 6 months |
| 54 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering clearance at the door is 4 3/8 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| 55 | 206, 307 | The wall mounted paper towel dispenser projects more than 4 inches into the circulation path. | Unless protected by a cane detectable barrier, objects with their leading edges between 27 inches and 80 inches high shall not protrude into circulation paths more than 4 inches for wall-mounted elements, or 12 inches for free standing post- or pylon-mounted elements.  Protruding objects (and cane-detectable barriers) shall not reduce the clear width of accessible routes or maneuvering spaces below minimum requirements. | 6 months |
| | | **Women's Public Toilet Room** | | |
| 56 | 213.3.6, 608.7 | The wood transition threshold is 1 inch. | Provide a threshold that is beveled with a slope of no more than 50% if higher than 1/4 inch. | 6 months |
| 57 | 213.3.2, 604.5.1 | The side grab bar is mounted with the far end 47 inches from the rear wall. | Provide a side grab bar that is at least 42 inches in overall length, with the far end mounted at least 54 inches from the rear wall, and with the closer end no more than 12 inches from the rear wall. | 6months |
| 58 | 213.2, 603.3 | The bottom reflecting surface of the mirror is 45 1/2 inches high. | Provide at least one mirror such that, if it is mounted above a lavatory or countertop, it is mounted with the bottom edge of the reflecting surface no more than 40 inches high; or, if it is not mounted above a lavatory or countertop, it is mounted with the bottom edge of the reflecting surface no more than 35 inches high. | 6 months |
| 59 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering clearance at the door is 9 3/4 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| 60 | 206, 307 | The wall mounted paper towel dispenser projects more than 4 inches into the circulation path. | Unless protected by a cane detectable barrier, objects with their leading edges between 27 inches and 80 inches high shall not protrude into circulation paths more than 4 inches for wall-mounted elements, or 12 inches for free standing post- or pylon-mounted elements.  Protruding objects (and cane-detectable barriers) shall not reduce the clear width of accessible routes or maneuvering spaces below minimum requirements. | 6 months |
| 61 | 213.3.2, 309.4, 604.6 | The flush control is located on the closed side. | Provide a flush control mounted on the "open" side of the toilet's clear floor space, between 15 and 48 inches high, and requiring a maximum of 5 pounds of force to operate; or provide an automatic flush device. | 6 months |
| | | **ADMINISTRATION OFFICE AT RECEPTION CENTER** | | |
| | | **Parking Lot** | | |
| 62 | 206.2.1, 406 | The curb ramp is located in the designated accessible parking space access aisle. | Provide a curb ramp that does not project into traffic, parking spaces or access aisles; and has transitions on and off that are on the same level.  Flared sides, if provided, shall have a maximum slope of 10%. | 12 months |
| 63 | 206, 301.1, 401.1 | The accessible route (sidewalk) leading from the parking lot has a cross slope of 4.2%. | Provide an accessible route that has a running slope no greater than 5% and a cross slope no greater than 2.08%. | 12 months |
| 64 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering clearance at the door is 4 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| | | **Lobby** | | |
| 65 | 206, 307.4 | The verticle clearance under the stairs is less than 80 inches. | Provide a minimum vertical clearance of 80 inches throughout.  Where the vertical clearance is reduced to less than 80 inches, provide a guardrail or other barrier with a leading edge no more than 27 inches high. | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000412
Page 8 of 20

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004607

### Louisiana State Penitentiary - Angola - ADA Report

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| 66 | 206.6, 308, 309.4, 407.4.9, 703.2, 708 | The elevator emergency system lacks visible signals. | Provide a two-way communication system that provides both audible and visible signals, with operable parts between 15 and 48 inches high, and identified by raised characters and Braille adjacent to the device.  If the system uses a handset, the cord shall be at least 29 inches long.  If the system is located in a closed compartment, the compartment door hardware shall operate without tight grasping, pinching or twisting of the wrist. | 12 months |
| 67 | 211, 602 | The drinking fountains do not comply with the Standards. | Ensure that 50% of all drinking fountains per building (but at least 1) comply with the Standards and have a spout mounted at the front of the unit no higher than 36 inches (measured from the finished floor or ground surface to the spout outlet).  Ensure that fountain controls require no more than 5 pounds of force to operate; are operable with one hand without tight grasping, pinching, or twisting of the wrist; and are front mounted or side mounted near the front edge.  Additionally, provide a drinking fountain that is accessible to people who have difficulty bending or stooping.  This can be accommodated by the use of a "hi-lo" fountain; by providing one fountain accessible to those who use wheelchairs and one fountain at a standard height convenient for those who have difficulty bending; by providing a fountain accessible to people who use wheelchairs and a cup dispenser; or by such other means as would achieve the required accessibility for each group of people. | 12 months |
| 68 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The men's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 69 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The women's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | **DEATH ROW** | | |
| | | **Lobby Men's Toilet Room** | | |
| 70 | 205.1, 305, 308.2, 308.3, 309 | The soap dispenser control is mounted 53 inches high. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 6 months |
| 71 | 213.3.2, 604.5.1 | The side grab bar is mounted with the far end 44 inches from the rear wall. | Provide a side grab bar that is at least 42 inches in overall length, with the far end mounted at least 54 inches from the rear wall, and with the closer end no more than 12 inches from the rear wall. | 6 months |
| 72 | 213.3.1, 404, 604.8.1.2 | The designated accessible toilet stall door lacks pull hardware on the interior side. | Provide a toilet compartment door with pull hardware on both sides of the door near the latch. | 6 months |
| | | **Lobby Women's Toilet Room** | | |
| 73 | 205.1, 305, 308.2, 308.3, 309 | The soap dispenser control is 53 inches high. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 6 months |
| 74 | 213.3.2, 604.5.1 | The side grab bar is mounted with the far end 44 inches from the rear wall. | Provide a side grab bar that is at least 42 inches in overall length, with the far end mounted at least 54 inches from the rear wall, and with the closer end no more than 12 inches from the rear wall. | 6 months |
| 75 | 213.3.1, 404, 604.8.1.2 | The designated accessible toilet stall door lacks pull hardware on the interior side. | Provide a toilet compartment door with pull hardware on both sides of the door near the latch. | 6 months |
| | | **Visitation** | | |
| 76 | 217.3, 704.3 | The telephone lacks volume control for persons who are hard of hearing. | Provide telephones with volume control. | 12 months |
| | | **Video Visitation/Video Court (Booths 107P and 107Q)** | | |
| 77 | 232.5, 305, 306, 902, 904.4.2, 904.6 | The Video Visitation/Video Court is not accessible to persons who use wheelchairs. | Provide a visitation or other such area such that at least 5% of cubicles provide accessible clear floor space and work surfaces on both the visitor and detainee sides.  Where counters are provided, provide at least one that is, on both the visitor and detainee side, at least 30 inches long and no more than 36 inches high, with knee space and clear floor space provided under the counter. | 12 months |
| | | **Process/Intake (Room 112)** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola D04 204-32M-55

Page 16 of 30

JX-CCH-000413

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain – Def's Production 4 - 000004608

Lewis v. Cain – Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary – Angola - ADA Report** | | |
| 78 | 206.5, 302, 303, 404.2.5 | The threshold at the door is 1 inch. | Provide an accessible door with a threshold that is no more than 1/4 inch high, or is between 1/4 inch and 1/2 inch high (3/4 inch high if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 6 months |
| | | **Exercise Area** | | |
| 79 | 206.5, 302, 303, 404.2.5 | The threshold at the door is 1 inch. | Provide an accessible door with a threshold that is no more than 1/4 inch high, or is between 1/4 inch and 1/2 inch high (3/4 inch high if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 6 months |
| | | **Typical Accessible Cell - E1** | | |
| 80 | 232, 304, 807.2.1 | In the designated accessible cells, the metal drawers under the bed prohibit the required 6 inch toe clearance to achieve the mandatory 60 inch turning space within the cell. | Provide a circular or T-shaped 60 inch minimum turning space within the cell. | 18 months |
| | | **VISITOR CENTER AT MAIN GATE** | | |
| | | **Parking lot** | | |
| 81 | 216.6, 703.5, 703.7.2.1 | Directional signage is not provided to indicate the location of the accessible entrance and accessible parking lot. | Provide accessible directional signage at inaccessible entrances directing users to the accessible entrance, and provide accessible signage with the International Symbol of Accessibility at all permanent accessible entrances. | 6 months |
| 82 | 208, 302, 502 | Some of the designated accessible parking spaces lack access aisles. | At each accessible parking space, provide an access aisle that is at least 60 inches wide, except at van accessible parking spaces that are less than 132 inches wide, in which case provide an access aisle at least 96 inches wide.  All access aisles shall adjoin an accessible route; extend the full length of the parking space they serve; be marked so as to discourage parking in them; contain no changes in level, with slopes and cross-slopes not exceeding 2.08%; and have surfaces that are firm, stable, and slip-resistant. | 6 months |
| | | **Lobby** | | |
| 83 | 206, 303, 403.4 | The asphalt/concrete transition at the crosswalk is 1 1/2 inches. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| 84 | 206.5, 404, 904.2 | The Shakedown Booth/K9 Narcotics Detector is not accessible to persons who use wheelchairs. | Provide an accessible booth such that all of the elements, including door, door hardware, clear floor space and arrangement comply with the Standards. | 12 months |
| | | **R.E. BARROW, JR. TREATMENT CENTER (HOSPITAL)** | | |
| | | **Front Parking Lot** | | |
| 85 | 208, 302, 502 | There are no designated accessible parking spaces. | Provide a van accessible parking space that is a minimum of 132 inches wide and served by an access aisle at least 60 inches wide, or a minimum of 96 inches wide and served by an access aisle at least 96 inches wide; and designated by a vertical sign with the International Symbol of Accessibility and an additional "van accessible" sign mounted at least 60 inches high to the bottom of the signs (unless there are 4 or fewer total parking spaces, in which case, signage is not required).  The space and access aisle shall contain no changes in level, with slopes and cross-slopes not exceeding 2.08%, and shall have surfaces that are firm, stable, and slip-resistant; and the access aisle shall be marked so as to discourage parking in it. | 6 months |
| 86 | 206.4, 305, 308, 309.4, 404.2.4.4, 404.3.5 | The exterior steel ramp at the inmate entrance is not level and slopes away from the door at 7.8%. | The ground area within the door's required clearances shall have a slope no greater than 2.08%. | 12 months |
| | | **General Treatment Area** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000414
Page 8 of 20

Lewis v. Cain - Def's Production 4 - 000004609

Lewis v. Cain - Def's Production 4 - 000004600

| | | Louisiana State Penitentiary - Angola - ADA Report | | |
|---|---|---|---|---|
| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
| 87 | 211, 602 | The drinking fountain does not comply with the Standards. | Ensure that 50% of all drinking fountains per building (but at least 1) comply with the Standards and have a spout mounted at the front of the unit no higher than 36 inches (measured from the finished floor or ground surface to the spout outlet). Ensure that fountain controls require no more than 5 pounds of force to operate; are operable with one hand without tight grasping, pinching, or twisting of the wrist; and are front mounted or side mounted near the front edge. Additionally, provide a drinking fountain that is accessible to people who have difficulty bending or stooping. This can be accommodated by the use of a "hi-lo" fountain; by providing one fountain accessible to those who use wheelchairs and one fountain at a standard height convenient for those who have difficulty bending; by providing a fountain accessible to people who use wheelchairs and a cup dispenser; or by such other means as would achieve the required accessibility for each group of people. | 12 months |
| 88 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The visitor toilet room contains a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 89 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room contains a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | Mental Health Unit | | |
| 90 | 206.5, 305, 308, 309.4, 404 | The double doors lack a leaf which allows a 32 inch clear passage width. | Provide a door that has at least one active leaf with at least 32 inches of clear opening width, measured between the face of the door and the opposite stop, when the door is open 90 degrees (or, in the case of automatic doors, the door shall have 32 inches clear opening provided by all leaves in the open position); that has clear and level maneuvering clearance that complies with § 404.2.4 (unless the door is automatic and either has standby power or remains open with the power off); and that has a threshold not exceeding ½ inch in height (or ¾ inch in height if the threshold is existing or altered) and, if it is greater than ¼ inch in height, beveled with a slope no greater than 50%. All hardware and operating devices shall be operable with one hand and without tight grasping, pinching, or twisting of the wrist and shall require no more than five pounds of force to operate; and shall be mounted between 34 and 48 inches high. All automatic door opener operating devices shall be easy to operate with one hand; shall not require tight grasping, pinching, or twisting of the wrist to operate; shall not require more than 5 pounds of force to operate; shall be mounted between 15 and 48 inches high on an accessible route; and shall be accompanied by a clear floor space that is 48 inches by 30 inches and is beyond the arc of the door's swing. | 12 months |
| | | Hospice Chapel Entrance | | |
| 91 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering space at the door is 14 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| | | Hospice Chapel Single User Toilet Room | | |
| 92 | 206.4, 206.5, 309.4, 404.2.7 | The door contains knob hardware that requires tight grasping pinching, or twisting of the wrist to operate. | Provide a door with hardware, mounted between 34 and 48 inches high, that is operable with one hand and does not require tight grasping, pinching, or twisting of the wrist and requires no more than 5 pounds of force to operate. Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs. | 6 months |
| 93 | 606.4 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| 94 | 213.3.2, 604.7, 609.3 | The toilet paper dispenser is mounted 48 inches from the rear wall. | Provide a toilet paper dispenser that is mounted with its centerline between 7 and 9 inches from the front of the toilet and with its outlet between 15 and 48 inches high with continuous paper flow that does not control delivery. The dispenser shall be mounted either at least 1½ inches below the side grab bar or at least 12 inches above the side grab bar. | 6 months |
| | | Nursing Unit 1 - Cells | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000415

Page 9 of 10

Lewis v. Cain - Def's Production 4 - 000004610

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | Louisiana State Penitentiary - Angola - ADA Report | | |
| 95 | 206.4, 305, 308, 309.4, 404 | The double doors lack a leaf which allows a 32 inch clear passage width. | Provide a door that has at least one active leaf with at least 32 inches of clear opening width, measured between the face of the door and the opposite stop, when the door is open 90 degrees (or, in the case of automatic doors, the door shall have 32 inches clear opening provided by all leaves in the open position); that has clear and level maneuvering clearance that complies with § 404.2.4 (unless the door is automatic and either has standby power or remains open with the power off); and that has a threshold not exceeding 1/2 inch in height (or 3/4 inch in height if the threshold is existing or altered) and, if it is greater than 1/4 inch in height, beveled with a slope no greater than 50%. All hardware and operating devices shall be operable with one hand and without tight grasping, pinching, or twisting of the wrist; shall require no more than five pounds of force to operate; and shall be mounted between 34 and 48 inches high. All automatic door opener operating devices shall be easy to operate with one hand; shall not require tight grasping, pinching, or twisting of the wrist to operate; shall not require more than 5 pounds of force to operate; shall be mounted between 15 and 48 inches high on | 12 months |
| 96 | 28 CFR § 35.151(k), 232, 807 | There are no accessible cells. | Provide accessible cells so that at least 3% minimum of the total cells are accessible and ensure that all detainees with mobility disabilities are housed in accessible cells. To be accessible, including door, clear floor space, water closet, grab bars, lavatory, mirror, bed, desk, controls, and dispensers, comply with the ADA Standards. | 24 months |
| | | Nursing Unit 1 - Common Toilet Room | | |
| 97 | 606.4 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| 98 | 213.3.2, 604.4 | The toilet seat is 15 1/4 inches high. | Provide a toilet with the top of the seat 17 to 19 inches high. | 6 months |
| | | Nursing Unit 2 | | |
| 99 | 206.4, 305, 308, 309.4, 404 | The double doors lack a leaf which allows a 32 inch clear passage width. | Provide a door that has at least one active leaf with at least 32 inches of clear opening width, measured between the face of the door and the opposite stop, when the door is open 90 degrees (or, in the case of automatic doors, the door shall have 32 inches clear opening provided by all leaves in the open position); that has clear and level maneuvering clearance that complies with § 404.2.4 (unless the door is automatic and either has standby power or remains open with the power off); and that has a threshold not exceeding 1/2 inch in height (or 3/4 inch in height if the threshold is existing or altered) and, if it is greater than 1/4 inch in height, beveled with a slope no greater than 50%. All hardware and operating devices shall be operable with one hand and without tight grasping, pinching, or twisting of the wrist; shall require no more than five pounds of force to operate; and shall be mounted between 34 and 48 inches high. All automatic door opener operating devices shall be easy to operate with one hand; shall not require tight grasping, pinching, or twisting of the wrist to operate; shall not require more than 5 pounds of force to operate; shall be mounted between 15 and 48 inches high on an accessible route; and shall be accompanied by a clear floor space that is 48 inches by 30 inches and is beyond the arc of the door's swing. | 12 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004610

JX-CCH-000416

Lewis v. Cain - Def's Production 4 - 000004611

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| | | **Nursing Unit 2 - Designated Accessible Medical Cell #119** | | |
| 100 | 606.4 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply drain pipes insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| | | **Nursing Unit 2 - Common Toilet Room** | | |
| 101 | 606.4 | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| 102 | 206.5, 404.2.4.1 | The white wood column supporting the breezeway to the outdoor seating area blocks the minimum 18 inch latch side, pull side maneuvering space at the exterior door by the garden. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| | | **Prison Rodeo Complex** | | |
| | | **Designated Accessible Route** | | |
| 103 | 206, 301.1, 302 401.1 | The accessible route leading from the parking to the east ticket booth and public entrance is not firm, stable and slip resistant. | Provide an accessible route with a surface that is firm, stable, and slip resistant. | 6 months |
| 104 | 206, 301.1, 302, 401.1 | The designated accessible route leading from parking lot #10, on the south end of complex, is not firm, stable and slip resistant. | Provide an accessible route with a surface that is firm, stable, and slip resistant. | 6 months |
| 105 | 206.2, 405.9 | The connecting ramp from parking lot #10 to the road lacks edge protection. | On each side of the ramp, provide edge protection that consists of either an extended ground surface at least 12 inches beyond the edge of the surface of the ramp or landing, or a curb or barrier that prevents the passage of a 4 inch diameter sphere where any part of the sphere is within 4 inches of the surface. | 6 months |
| 106 | 206, 301.1, 302, 401.1 | The designated accessible route leading from the south entrance to the designated accessible toilet rooms and the arena seating area is not firm, stable and slip resistant. | Provide an accessible route with a surface that is firm, stable, and slip resistant. | 6 months |
| 107 | 206, 303 | At the south entrance there is level change of 3/4 inches between the concrete ramp and the cast iron manhole cover. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| | | **Seating** | | |
| 108 | 28 C.F.R. § 35.151(g), 221.2.3 | While there are adequate (112) wheelchair seating spaces that ring the bottom concourse, of the 7500 seat arena, there are no wheelchair seating spaces off the central concourse or in the VIP section. | When the seating capacity exceeds 300, wheelchair spaces and companion seats shall be horizontally and vertically dispersed. Ensure that wheelchair spaces and companion seats are dispersed to all levels that include seating served by an accessible route. Wheelchair spaces and companion seats shall be dispersed vertically at varying distances from the screen, performance area, or playing field, including locations in each balcony or mezzanine located on an accessible route. Assembly areas that (1) have seating encircling, in whole or in part, a field of play or performance area, and (2) are required to horizontally disperse wheelchair spaces and companion seats, shall disperse wheelchair spaces and companion seats around that field of play or performance area. | 18 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

Page 11 of 20

Lewis v. Cain - Def's Production 4 - 000004600

JX-CCH-000417

Lewis v. Cain - Def's Production 4 - 000004612

Lewis v. Cain - Def's Production 4 - 000004600

## Louisiana State Penitentiary - Angola - ADA Report

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Southeast Corner Public Toiletrooms** | | |
| 109 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The designated accessible men's toilet room has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 110 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The designated accessible women's toilet room has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | **T-UNIT ISOLATION** | | |
| | | **Visiting Shed** | | |
| 111 | 206.1, 302, 303 | The accessible route at the transition ramp has deteriorated to the point that portions are not firm, stable, and slip resistant. | Repave the deteriorated portions of the walkway, such that the accessible route is firm, stable, and slip resistant. | 6 months |
| 112 | 226, 232.5, 902.2, 902.3 | The non-contact visiting booths are not accessible to persons who use wheelchairs. | Provide a visitation or other area such that at least 5% of cubicles provide accessible clear floor space and work surfaces on both the visitor and inmate sides. Where counters are provided, on both the visitor and inmate side, provide at least one that is at least 30 inches long and no more than 36 inches high, with knee space and clear floor space provided under the counter. If a telephone is part of the video vistation station, provide a phone cord that is at least 29 inches long. | 12 months |
| 113 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The inmate toilet room #115 has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 114 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The visitor toilet room #113 has a number of inaccessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | **Housing - Extended Lockdown** | | |
| 115 | 206.1, 302.1, 303 | The concrete transition ramp at the entrance door is broken so there is a 1/2 inch lip at the loading edge. | Repave the deteriorated portions of the walkway, such that the accessible route is firm, stable, and slip resistant. | 12 months |
| | | **F Tier/Cell 1** | | |
| 116 | 213.3.2, 604.4 | The toilet seat is 16 inches high. | Provide a toilet with the top of the seat 17 to 19 inches high. The seat shall not be sprung to return to a lifted position. | 6 months |
| 117 | 213.3.2, 604.5.2, 609 | There is no rear grab bar at the toilet. | Provide a rear grab bar that is at least 36 inches long (except where wall space does not permit it due to the location of a recessed fixture, in which case the grab bar may be 24 inches long), extending 12 inches from the toilet centerline on one side and 24 inches on the other side (except where an administrative authority requires flush controls to be located in a position that conflicts with the location of the rear grab bar, in which case the bar may be split or shifted to the open side); mounted horizontally between 33 and 36 inches high to the top of the gripping surface; with a diameter between 1 1/4 and 2 inches (or, if the grab bar is not circular, a perimeter between 4 and 4 3/4 inches and cross-section dimensions of no more than 2 inches); with 1 1/2 inches between the grab bar and the wall; and at least 1 1/2 inches between the grab bar and any object beside or below it and at least 12 inches between the grab bar and any object above it. Grab bars shall also comply with requirements for surface hazards, fittings, and structural strength. | 6 months |
| 118 | 213.3.4, 306, 606.2, 606.3 | The lavatory lacks knee space for a forward approach and the top is 35 1/2 inches high. | Provide a lavatory with the top of the rim or counter 34 inches high or less; knee clearance at least 30 inches wide, between 9 inches and 27 inches high, extending between 11 and 25 inches deep at 9 inches high, and extending at least 8 inches deep at 27 inches high; and toe clearance at least 30 inches wide and 9 inches high, and extending between 17 and 25 inches deep under the lavatory. | 12 months |
| 119 | 213.3.2, 604.2 | The center line of the toilet is 15 inches from the side wall. | Provide a toilet with its centerline between 16 and 18 inches from the near side wall. | 12 months |
| | | **F Tier/Cell 3** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DM 204-32M-55

JX-CCH-000418

Lewis v. Cain - Def's Production 4 - 000004613

| | | Louisiana State Penitentiary - Angola - ADA Report | | |
|---|---|---|---|---|
| | **2010 Standards** | **Violation** | **Requirement/Corrective Action** | **Completion Date** |
| 120 | 213.3.2, 604.5.2, 609 | There is no rear grab bar provided at the toilet. | Provide a rear grab bar that is at least 36 inches long (except where wall space does not permit it due to the location of a recessed fixture, in which case the grab bar may be 24 inches long), extending 12 inches from the toilet centerline on one side and 24 inches on the other side (except where an administrative authority requires flush controls to be located in a position that conflicts with the location of the rear grab bar, in which case the bar may be split or shifted to the open side); mounted horizontally between 33 and 36 inches high to the top of the gripping surface; with a diameter between 1 1/4 and 2 inches (or, if the grab bar is not circular, a perimeter between 4 and 4 3/4 inches and cross-section dimensions of no more than 2 inches); with 1 1/2 inches between the grab bar and the wall; and at least 1 1/2 inches between the grab bar and any object beside or below it and at least 12 inches between the grab bar and any object above it.  Grab bars shall also comply with requirements for surface hazards, fittings, and structural strength. | 12 months |
| | | **F Tier Showers 25, 28 and 46** | | |
| 121 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The showers have a number of inaccessible features. | At each location, provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening.  Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 18 months |
| | | **Recreation Yard** | | |
| 122 | 206.5, 302, 303, 404.2.5 | The threshold at the door is 1 inch. | Provide an accessible door with a threshold that is no more than 1/4 inch high, or is between 1/4 inch and 1/2 inch high (3/4 inch high if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 6 months |
| | | **MAIN PRISON** | | |
| | | **Parking lot** | | |
| 123 | 208, 302, 502 | Three of the four designated accessible parking spaces lack access aisles and the only access aisle provided is 57 inches wide. | At each accessible parking space, provide an access aisle that is at least 60 inches wide, except at van accessible parking spaces that are less than 132 inches wide, in which case provide an access aisle at least 96 inches wide.  All access aisles shall adjoin an accessible route; extend the full length of the parking space they serve; be marked so as to discourage parking in them; contain no changes in level, with slopes and cross-slopes not exceeding 2.08%; and have surfaces that are firm, stable, and slip-resistant. | 6 months |
| 124 | 208, 302, 502.4. | Surface irregularities in the asphalt pavement create level changes up to 1 inch. | Provide designated accessible parking spaces and access aisles that contain no changes in level, with slopes and cross-slopes not exceeding 2.08%, and surfaces that are firm, stable, and slip-resistant. | 12 months |
| | | **Entrance Building A** | | |
| 125 | 206.4, 206.5, 404.2.3 | The doors leading into the visitor area lack the minimum required 32 inch clear width. | Provide doors with a clear opening at least 32 inches wide, measured between the face of the door and the opposite stop, when the door is open 90 degrees. | 12 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000419
Page 15 of 20

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004614

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | Louisiana State Penitentiary - Angola - ADA Report | | |
| 126 | 205.5, 404, 904.2 | In the attorney room, the Shakedown Booth/K9 Narcotics Detector is not accessible to persons who use wheelchairs. | Provide an accessible booth such that all of the elements, including door, door hardware, clear floor space and arrangement comply with the Standards. | 12 months |
| 127 | 206.4, 205.5, 404.2.3 | The doors leading into the Shakedown Rooms lack the minimum required 32 inch clear width. | Provide a door with a clear opening at least 32 inches wide, measured between the face of the door and the opposite stop, when the door is open 90 degrees. | 12 months |
| | | Toilet Rooms | | |
| 128 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The inmate toilet room near the shakedown rooms is not accessible. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 129 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The men's toilet room is not accessible. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| 130 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The women's toilet room is not accessible. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | Court Room | | |
| 131 | 206.4, 205.5, 309.4, 404.2.3, 404.2.7 | The door lacks the minimum required 32 inch clear width and has knob hardware. | Provide a door with a clear opening at least 32 inches wide, measured between the face of the door and the opposite stop, when the door is open 90 degrees. Provide door hardware, mounted between 34 and 48 inches high, that is operable with one hand and does not require tight grasping, pinching, or twisting of the wrist and requires no more than 5 pounds of force to operate. Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs. | 12 months |
| | | Parole Board Meeting Room | | |
| 132 | 206.4, 205.5, 309.4, 404.2.3, 404.2.7 | The door lacks the minimum required 32 inch clear width and has knob hardware. | Provide a door with a clear opening at least 32 inches wide, measured between the face of the door and the opposite stop, when the door is open 90 degrees. Provide door hardware, mounted between 34 and 48 inches high, that is operable with one hand and does not require tight grasping, pinching, or twisting of the wrist and requires no more than 5 pounds of force to operate. Lever-operated mechanisms, push-type mechanisms, and U-shaped handles are acceptable designs. | 12 months |
| 133 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The men's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), urinal (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| 134 | 204, 205, 206, 213, 216, 225, 301.1, 401.1, 601.1, 703, 811 | The women's toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including signage, door, door hardware, clear floor space, toilet, stall size and arrangement (if any), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | Door to Hallway - Court Room and Parole Board Meeting Room | | |
| 135 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering space at the door is 5 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DOJ 204-32M-55

JX-CCH-000420
Page 14 of 20

Lewis v. Cain - Def's Production 4 - 000004615

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| | | **Chapel** | | |
| 136 | 211, 602 | The drinking fountain does not comply with the Standards. | Ensure that 50% of all drinking fountains per building (but at least 1) comply with the Standards and have a spout mounted at the front of the unit no higher than 36 inches (measured from the finished floor or ground surface to the spout outlet). Ensure that fountain controls require no more than 5 pounds of force to operate; are operable with one hand without tight grasping, pinching, or twisting of the wrist; and are front mounted or side mounted near the front edge. Additionally, provide a drinking fountain that is accessible to people who have difficulty bending or stooping. This can be accommodated by the use of a "hi-lo" fountain; by providing one fountain accessible to those who use wheelchairs and one fountain at a standard height convenient for those who have difficulty bending; by providing a fountain accessible to people who use wheelchairs and a cup dispenser; or by such other means as would achieve the required accessibility for each group of people. | 12 months |
| | | **Visitor Women's Toilet Room at Chapel** | | |
| 137 | 213, 404.2.7 | The designated accessible toilet stall door lacks accessible pull hardware on the interior side. | Provide a door pull complying with § 404.2.7 on both sides of the door near the latch. | 6 months |
| 138 | 213.3.2, 604.2 | The centerline of the toilet is 22 inches from the side wall. | Provide a toilet with its centerline between 16 and 18 inches from the near side wall. | 12 months |
| 139 | 206.5, 404.2.4.1 | The latch side, pull side maneuvering space at the door is 10 inches. | On the pull side of the door, provide a maneuvering clearance of at least 48 inches (54 inches if closer is present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| | | **Inmate's Toilet Room at Chapel** | | |
| 140 | 404.2.4 | The latch side, push side maneuvering clearance at the door is 4 1/2 inches. | On the push side of the door provide a maneuvering clearance of at least 42 inches (48 inches if closer and latch are present) perpendicular to the doorway and at least 24 inches adjacent to the latch side of the door. | 12 months |
| 141 | 213.3.2, 604.2 | The centerline of the toilet is 21 3/4 inches from the side wall. | Provide a toilet with its centerline between 16 and 18 inches from the near side wall. | 12 months |
| 142 | 206.7, 405, 505 | The multiple segment ramp leading to the stage/pulpit is too steep (at 13.2% & 24.6%) and does not have a landing that complies with the Standards. | Provide a ramp that is at least 36 inches wide between handrails, with a slope not exceeding 8.33% and a cross slope not exceeding 2.08%; with level landings at least as wide as the ramp and 60 inches long at the top and bottom. | 18 months |
| | | **Visitor Men's Toilet Room** | | |
| 143 | 213, 404.2.7 | The designated accessible toilet stall door lacks pull hardware on the interior side. | Provide a door pull complying with § 404.2.7 on both sides of the door near the latch. | 6 months |
| | | **Education Building** | | |
| 144 | 226.1, 305, 306, 902 | The general library and the law library tables are not accessible to inmates who use wheelchairs. | Provide a sufficient number of accessible tables so that 5% of them in each area (but no fewer than one) are available for use by people with mobility disabilities. Each accessible table must be on an accessible route, must have knee space at the table at least 27 inches high, 30 inches wide, and 17 inches deep, and must have a table top between 28 inches and 34 inches above the floor. | 6 months |
| 145 | 213.3.2, 604.4 | The toilet seat in the women's toilet room is 16 inches high. | Provide a toilet with the top of the seat 17 to 19 inches high. | 6 months |
| 146 | 213.3.2, 604.4 | The toilet seat in the men's toilet room is 16 inches high. | Provide a toilet with the top of the seat 17 to 19 inches high. | 6 months |
| | | **Dining Hall** | | |
| 147 | 206, 303, 403.4 | The pavement along the approach walk at the first set of columns has a 1 inch level change. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch high). | 6 months |
| 148 | 206.2, 405.2 | The ramp on the right side of the main dining hall has 21.7% slope. | Provide a ramp with a slope no greater than 8.33%, unless there are space limitations and the ramp serves an existing site, building, or facility, and has a rise of no more than 6 inches, in which case a ramp may be provided in accordance with table 405.2. | 12 months |
| 149 | 226.1, 902 | The tables in the dining room are not accessible to persons who use wheelchairs. | At least 5% (but no fewer than 1) of dining surfaces shall be available for use by people with mobility disabilities. Each accessible dining or work surface shall be on an accessible route; with clear floor space 30 inches wide by 48 inches deep positioned for a forward approach; with knee clearance at least 11 inches deep at 9 inches high and at least 8 inches deep at 27 inches high; and with a dining or work surface between 28 inches and 34 inches high. They shall be dispersed throughout the dining hall. | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000421
Page 13 of 20

Lewis v. Cain – Def's Production 4 - 000004616

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | **Louisiana State Penitentiary - Angola - ADA Report** | | |
| 150 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 12 months |
| | | **Ash Canteen** | | |
| 151 | 206.2, 405.7 | At the top and bottom of the ramp there are level changes of 1/2 and 1 inch. | Provide a landing at the top and bottom such that the landings have slopes of no more than 2.08% in any direction and contain no changes in level. | 12 months |
| 152 | 206.1, 302.1, 303 | The pavement at the end of the approach walk has deteriorated to the point that portions are not firm, stable, and slip resistant. | Repave the deteriorated portions of the walkway, such that the accessible route is firm, stable, and slip resistant. | 12 months |
| | | **Hickory Canteen** | | |
| 153 | 206.2, 405, 505 | The ramp has a 17.0% slope, no edge protection, handrails are 40 1/2 inches high, and lacks a 60 inch landing at the bottom of the ramp. | Provide a ramp that is at least 36 inches wide, with a slope not exceeding 8.33% and a cross slope not exceeding 2.08%; with level landings at least as wide as the ramp and 60 inches long at the top and bottom of the ramp; The ramp shall have no run containing a rise greater than 30 inches. On each side of ramp runs and landings, provide edge protection that consists of either an extended ground surface at least 12 inches beyond the edge of the surface of the ramp or landing, or a curb or barrier that prevents the passage of a 4 inch diameter sphere where any part of the sphere is within 4 inches of the surface. On both sides, provide handrails that have a diameter between 1 1/4 and 2 inches or a perimeter between 4 inches and 6 1/4 inches and a cross section of no more than 2 1/4 inches such that the handrails are continuous along the full length of the ramp run. Handrails shall have a continuous gripping surface extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface; extensions shall return to the wall, guard, or landing surface (or continue on as handrails); handrails shall not rotate within their fittings; handrails shall be mounted between 34 inches and 38 inches above the ramp surface and at least 1 1/2 inches from the wall; gripping surfaces shall be free of sharp or abrasive elements and have rounded edges; and gripping surfaces shall not be obstructed along their tops or sides and the bottoms shall not be obstructed for more than 20% of their length and have no horizontal projections occurring closer than 1 1/2 inches from the bottom of the gripping surface (except that the distance between horizontal projections and the bottom of the gripping surface can be reduced by 1/8 inch for each 1/2 inch of handrail perimeter over 4 inches). | 18 months |
| 154 | 206, 303, 403.4 | The walk near the bottom of the approach ramp has a level change of 1 inch. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

Page 10 of 10

Lewis v. Cain - Def's Production 4 - 000004600

JX-CCH-000422

Lewis v. Cain - Def's Production 4 - 000004617

| | | Louisiana State Penitentiary - Angola - ADA Report | | |
|---|---|---|---|---|
| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
| | | Gym | | |
| 155 | 206, 303, 403.4 | The walk near the entrance gate has a level change of 1 3/8 inches. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than ¼ inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| 156 | 206.4, 305, 308, 309.4, 404.2.4.4, 404.3.5 | The raised concrete areas on each side of the security booth contain level changes up to 1 1/2 inches. | The area within the door's required clearances shall have a slope no greater than 2.08%. | 6 months |
| 157 | 206.5, 213.2, 216.2, 404, 603, 604, 606, 703 | The inmate toilet room does not have any accessible features. | Provide an accessible toilet room such that all of the room's elements, including door, door hardware, clear floor space, water closet, urinal (if provided), compartment size and arrangement (if provided), compartment door (if provided), grab bars, lavatory, mirror, controls, and dispensers, comply with the Standards. | 18 months |
| | | Hickory Hobby Shop | | |
| 158 | 206.2, 405, 505 | The ramp has a 12.7% slope, no edge protection and lacks a 60 inch landing at the bottom of the ramp. | Provide a ramp that is at least 36 inches wide, with a slope not exceeding 8.33% and a cross slope not exceeding 2.08%; with level landings at least as wide as the ramp and 60 inches long at the top and bottom of the ramp; The ramp shall have no run containing a rise greater than 30 inches.  On each side of ramp runs and landings, provide edge protection that consists of either an extended ground surface at least 12 inches beyond the edge of the surface of the ramp or landing, or a curb or barrier that prevents the passage of a 4 inch diameter sphere where any part of the sphere is within 4 inches of the surface.  On both sides, provide handrails that have a diameter between 1 1/4 and 2 inches or a perimeter between 4 inches and 6 1/4 inches and a cross section of no more than 2 1/4 inches such that the handrails are continuous along the full length of the ramp run.  Handrails shall have a continuous gripping surface extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface; extensions shall return to the wall, guard, or landing surface (or continue on as handrails); handrails shall not rotate within their fittings; handrails shall be mounted between 34 inches and 38 inches above the ramp surface and at least 1 1/2 inches from the wall; gripping surfaces shall be free of sharp or abrasive elements and have rounded edges; and gripping surfaces shall not be obstructed along their tops or sides and the bottoms shall not be obstructed for more than 20% of their length and have no horizontal projections occurring closer than 1 1/2 inches from the bottom of the gripping surface (except that the distance between horizontal projections and the bottom of the gripping surface can be reduced by ¼ inch for each 1/2 inch of handrail perimeter over 4 inches). | 18 months |
| 159 | 206, 301.1, 401.1 | The route to the Wood Shop and Leather Shop is not firm, stable, and slip resistant. | Provide a surface that is firm, stable and slip resistant. | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000423

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004618

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | | **Louisiana State Penitentiary - Angola - ADA Report** | |
| | | **Wheelchair Workshop** | | |
| 160 | 213.3.4, 606.5. | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact.  There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| | | **Cellblock Bravo** | | |
| 161 | 206.5, 302, 303, 404.2.5. | The threshold at the main cellblock entrance, lower level, has a level change on the exterior side greater than 1/2 inch. | Provide an accessible cellblock entrance with a threshold that is no more than 1/4 inch high, or is between 1/4 inch and 1/2 inch high (3/4 inch high if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 6 months |
| 162 | 28 CFR § 35.151(k), 232, 807 | There are no accessible cells. | Provide accessible cells so that at least 3% minimum of the total cells are accessible and ensure that all detainees with mobility disabilities are housed in accessible cells.  To be accessible, all of the cells' elements, including door, clear floor space, water closet, grab bars, lavatory, mirror, bed, desk, controls, and dispensers, comply with the ADA Standards. | 24 months |
| 163 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The shower does not have any accessible features. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening.  Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 24 months |
| | | **East Recreation Yard** | | |
| 164 | 206.2, 405.2 | The ramp to the recreational yard is too steep and lacks edge protection. | Provide a ramp with a slope no greater than 8.33%, unless there are space limitations and the ramp serves an existing site, building, or facility, and has a rise of no more than 6 inches, in which case a ramp may be provided in accordance with table 405.2.  On each side of ramp runs and landings, provide edge protection that consists of either an extended ground surface at least 12 inches beyond the edge of the surface of the ramp or landing, or a curb or barrier that prevents the passage of a 4 inch diameter sphere where any part of the sphere is within 4 inches of the surface. | 12 months |
| | | **Ash 2 Gang Toilet Room- Designated Accessible  Dorm** | | |
| 165 | 213.3.6, 608.7. | The threshold at the entrance to the gang toilet room is 19.9%. | Provide a threshold that is no more than ¼ inch high, or is between ¼ inch and ½ inch high (3/4 inch if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 12 months |
| 166 | 213.3.4, 606.5. | The lavatory drain pipes are not insulated or otherwise configured to protect against contact. | Provide water supply and drain pipes insulated or otherwise configured to protect against contact.  There shall be no sharp or abrasive surfaces underneath the lavatory or sink. | 6 months |
| 167 | 213.3.1, 301.1, 404, 604, 604.8.1, 609. | The designated accessible toilet does not comply with the Standards. | Provide an accessible toilet compartment at least 60 inches wide and at least 59 inches deep (or at least 56 inches deep with a wall-mounted toilet) such that all of the compartment's elements comply with the Standards. | 12 months |
| 168 | 213.3.6, 608.7. | The threshold at the entrance of the gang shower has a 1/2 inch curb and is not beveled. | Provide a threshold that is beveled with a slope of no more than 50% if higher than 1/4 inch. | 6 months |
| 169 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The shower does not comply with the Standards. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening.  Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 18 months |
| 170 | 206, 403.5.1. | The existing wood benches narrow to 30 inches clear width in the Day Room and do not allow a minimum 36 inches accessible route up to the TV area. | Provide an accessible route with a minimum clear width of 36 inches, except that the width may decrease to 32 inches for a depth of no more than 24 inches. | 6 months |
| | | **Cypress 2 - Designated Accessible Dorm** | | |
| 171 | 206.5, 302, 303, 404.2.5. | The door leading to the recreation yard has an opening width of 30 inches and 1 3/4 inch high threshold. | Provide a door with a clear opening at least 32 inches wide and a threshold that is no more than 1/4 inch high, or is between 1/4 inch and 1/2 inch high (3/4 inch high if the threshold is existing or altered) and is beveled with a slope no greater than 50%. | 12 months |
| | | **Cypress Recreation Yard** | | |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

Page 18 of 20

JX-CCH-000424

Lewis v. Cain - Def's Production 4 - 000004619

Lewis v. Cain - Def's Production 4 - 000004600

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | | **Louisiana State Penitentiary - Angola - ADA Report** | |
| 172 | 206, 303, 403.4 | The pavement at the top of the ramp leading to the exercise yard has a level change of 1 inch. | Provide an accessible route such that level changes in excess of 1/2 inch are ramped (or otherwise made accessible); level changes with exposed edges of up to 90 degrees are not more than 1/4 inch high; and level changes between 1/2 inch and 1/4 inch high are beveled with a slope no greater than 50% (or up to 1/4 inch vertical and at least 1/4 inch beveled). | 6 months |
| 173 | 206, 301.1, 401.1 | There is no accessible route at the bottom of the ramp leading to the basketball court and other recreation features in the exercise yard. | Provide at least one accessible route that coincides with or is located in the same area as general circulation paths.  The accessible route must have a minimum clear width of 36 inches (except that it may narrow to no less than 32 inches for a length of no more than 24 inches), or a minimum clear width of 42 inches if there is a U-turn around an obstruction less than 48 inches wide; have passing spaces at least every 200 feet; have a minimum clear headroom of 80 inches; have a surface that is firm, stable, and slip resistant; have, in the absence of a curb ramp, ramp, elevator, or platform lift, no level changes in excess of 1/2 inch vertically; have no level changes greater than 1/4 inch vertically unless they are beveled with a slope no greater than 50%; and have a running slope no greater than 5% (or have been constructed as a fully accessible ramp) and a cross slope no greater than 2.08%. | 12 months |
| | | | **Cypress 2 Dorms** | |
| 174 | 206, 403.5.1. | The existing wood benches narrow to 30 inches clear width in the Day Room and do not allow a minimum 36 inches accessible route up to the TV area. | Provide an accessible route with a minimum clear width of 36 inches, except that the width may decrease to 32 inches for a depth of no more than 24 inches. | 6 months |
| 175 | 213.3.6, 608.7. | The threshold at the entrance to the gang toilet room is 13.8%. | Provide a threshold that is beveled with a slope of no more than 50% if higher than 1/4 inch. | 6 months |
| 176 | 213.3.1, 301.1, 404, 604, 604.8.1, 609 | The designated accessible toilet in the gang toilet room has a 14 1/2 inch seat height; lacks the minimum required clear floor space; and has a side grab bar that does not comply with the Standards. | Provide an accessible toilet area at least 60 inches wide and at least 59 inches deep (or at least 56 inches deep with a wall-mounted toilet) such that the toilet size and arrangement and grab bars comply with the Standards. | 12 months |
| 177 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The designated accessible shower located in the gang shower does not comply with the Standards. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening.  Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 18 months |
| 178 | 213.3.6, 608.7. | The threshold into the gang shower entry has a 3/4 inch curb and is not beveled. | Provide a threshold that is 1/2 inch high maximum.  Changes in level between ¼ inch high minimum and ½ inch high maximum shall be beveled with a slope not steeper than 50%. | 6 months |
| 179 | 213.3.4, 306, 606.2, 606.3. | The lavatories lack knee space for a forward approach. | Provide a lavatory with the top of the rim or counter 34 inches high or less; knee clearance at least 30 inches wide, between 9 inches and 27 inches high, extending between 11 and 25 inches deep at 9 inches high, and extending at least 8 inches deep at 27 inches high; and toe clearance at least 30 inches wide and 9 inches high, and extending between 17 and 25 inches deep under the lavatory. | 12 months |
| 180 | 205.1, 305, 308.2, 308.3, 309 | The hot water dispenser above the drinking fountain is not accessible. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 12 months |
| | | | **Breezeway Between Dorms** | |
| 181 | 206, 302.3 | Throughout the facility, the accessible route between the dorms has 1 3/4 inch openings in the concrete breezeway joints that creates a tripping hazard for inmates who use mobility devices. | Openings or gratings on walking surfaces shall not allow passage of a sphere more than 1/2 inch in diameter.  If gratings have elongated openings, then they shall be placed so that the long dimension is perpendicular to the dominant direction of travel. | 12 months |
| | | | **Hickory 4 Dorms** | |
| 182 | 205.1, 305, 308.2, 308.3, 309 | The hot water dispenser above the drinking fountain is not accessible. | Operable parts and controls of this element shall be between 15 and 48 inches high and accompanied by clear floor space of 30 by 48 inches that allows a forward or parallel approach by a person using a wheelchair. | 12 months |
| 183 | 206, 403.5.1. | The existing wood benches narrow to 30 inches clear width in the Day Room and do not allow a minimum 36 inches accessible route up to the TV area. | Provide an accessible route with a minimum clear width of 36 inches, except that the width may decrease to 32 inches for a depth of no more than 24 inches. | 6 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000425
Page 19 of 20

Lewis v. Cain - Def's Production 4 - 000004600

Lewis v. Cain - Def's Production 4 - 000004620

| | 2010 Standards | Violation | Requirement/Corrective Action | Completion Date |
|---|---|---|---|---|
| | | | **Louisiana State Penitentiary - Angola - ADA Report** | |
| 184 | 206.2, 405. | The concrete ramp at the toilet room entrance is steeper (at 27.8%) than the maximum allowable 8.3%. | Provide a ramp that is at least 36 inches wide between handrails, with a slope not exceeding 8.33% and a cross slope not exceeding 2.08% | 18 months |
| 185 | 213.3.4, 306, 606.2, 606.3. | The lavatories lack knee space for a forward approach. | Provide a lavatory with the top of the rim or counter 34 inches high or less; knee clearance at least 30 inches wide, between 9 inches and 27 inches high, extending between 11 and 25 inches deep at 9 inches high, and extending at least 8 inches deep at 27 inches high; and toe clearance at least 30 inches wide and 9 inches high, and extending between 17 and 25 inches deep under the lavatory. | 12 months |
| 186 | 206.5, 213.2, 213.3.6, 404, 603, 608 | The designated accessible shower located in the gang shower does not comply with the Standards. | Provide a transfer shower that is exactly 36 inches wide and 36 inches deep with a 48 inch long and 36 inch wide clear floor space alongside the shower opening, and an L-shaped shower seat mounted on the wall opposite the controls and extending the full depth of the stall; OR a shower that is at least 30 inches deep and 60 inches wide with no curb or threshold and with a 36 inch deep and 60 inch wide clear floor space at the shower opening. Ensure that the shower has grab bars, controls, a shower spray unit, and a seat, curb, and enclosure, if provided, that comply fully with the Standards. | 12 months |
| 187 | 213.3.6, 608.7. | The threshold into the gang shower entry has a 1 1/4 inch curb and is not beveled. | Provide a threshold that is beveled with a slope of no more than 50% if higher than 1/4 inch. | 6 months |
| 188 | 213.3.1, 301.1, 404, 604, 604.8.1, 609 | The designated accessible toilet in the gang toilet room lacks the minimum required clear floor space and the side grab bar does not comply with the Standards. | Provide an accessible toilet area at least 60 inches wide and at least 59 inches deep (or at least 56 inches deep with a wall-mounted toilet) such that the toilet size and arrangement and grab bars comply with the Standards. | 12 months |

Architectural survey on May 10 - 12, 2010 applied the 1991 Standards.
Attachment A - Louisiana State Penitentiary - Angola DJ# 204-32M-55

JX-CCH-000426

## ATTACHMENT B

Certification of ADA Compliance

I, [insert name], in my capacity as an Independent Licensed Architect, retained by Louisiana State Penitentiary and approved by the United States, pursuant to the Settlement Agreement executed by the parties on _____, 2015 hereby CERTIFY to the best of my knowledge, information, and belief that the following element identified below is in compliance with the physical accessibility requirements of the Settlement Agreement and the Americans with Disabilities Act as of the date shown below.

Element Identified in Attachment A to the Settlement Agreement:

Description of Element:

Location of Element:

_____

Date

_____

Signature of Independent Licensed Architect

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


JOSEPH LEWIS, JR., KENTRELL PARKER, FARRELL
SAMPIER, REGINALD GEORGE, JOHN TONUBBEE, OTTO
BARRERA, CLYDE CARTER, CEDRIC EVANS, EDWARD
GIOVANNI, RICKY D. DAIS, LIONEL TOLBERT, and
RUFUS WHITE, on behalf of themselves and all
other similarly situated

                              CIVIL ACTION
                              NO. 15-318
VERSUS                        JUDGE: BAJ
                              MAGISTRATE: RLB

BURL CAIN, Warden of the Louisiana State
Penitentiary, in his official capacity; STEPHANIE
LAMARTINIERE, Assistant Warden for Health
Services, in her official capacity; JAMES M.
LEBLANC, Secretary of the Louisiana Department of
Public Safety and Corrections, IN HIS OFFICIAL
CAPACITY; and THE LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS



     DEPOSITION OF WARDEN DARREL VANNOY, P.O. BOX
1831 WOODVILLE, MISSISSIPPI 39669, TAKEN IN THE
OFFICES OF SHOWS, CALI & WALSH, LLP, 628 ST.
LOUIS STREET, BATON ROUGE, LOUISIANA 70802, ON
WEDNESDAY, THE 8TH DAY OF AUGUST, 2016,
COMMENCING AT 9:00 A.M.




REPORTED BY:
  MICHELLE VIDRINE-CORONA, CCR
  CERTIFIED COURT REPORTER

 1    Commission on Correctional Healthcare?
 2         A.   I've heard of it.  I'm not real familiar
 3    with them but I've heard of that organization
 4    before.
 5         Q.   Do you know if Angola is accredited by
 6    that organization?
 7         A.   I do not know that.
 8         Q.   Do the prison's policies and procedures
 9    regarding medical care apply across the board to
10    all prisoners?
11              MR. HILBURN:
12                   Object to form.
13              THE WITNESS:
14                   Yes.
15    BY MS. COMPA:
16         Q.   Do the named plaintiffs in this lawsuit
17    get singled out for special treatment in any way,
18    whether better or worse?
19         A.   No.
20         Q.   What is your role currently as warden of
21    Angola with respect to disabled prisoners?
22              MR. HILBURN:
23                   Object to form.
24              THE WITNESS:
25                   My role over them would be the same

1   things.

2       Q.   What's your understanding of your

3   responsibility in accommodating disabled

4   prisoners in that way?

5           MR. HILBURN:

6               Object to form.

7           THE WITNESS:

8               Are you referring to the physical

9   plant or?

10  BY MS. COMPA:

11      Q.   I am referring to the physical plant as

12  well as programs and services offered by Angola?

13          MR. HILBURN:

14              Same objection.

15  BY MS. COMPA:

16      Q.   If you would like to separate your

17  answer, that's totally fine.

18      A.   Well, on the physical plant, Angola has

19  a lot of work to do on a physical plant to be

20  ADA, to meet the ADA requirements, which I think

21  we'll be working on fairly soon down the road.

22              On the ADA programs, we have an ADA

23  coordinator who is Warden Peabody.  He over -- he

24  will be overseeing the programs, the ADA programs

25  for the institution.  I feel like the institution

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOSEPH LEWIS, JR., KENTRELL          CIVIL ACTION
PARKER,FARRELL SAMPIER,              NO. 15-318
REGINALD GEORGE,JOHN TONUBBEE,       JUDGE:  BAJ
OTTO BARRERA,CLYDE CARTER,CEDRIC     MAG:  RLB
EVANS,EDWARD GIOVANNI,RICKY D.
DAVIS,LIONEL TOLBERT, and RUFUS
WHITE,on behalf of themselves and
all others similarly situated,

     Plaintiffs,

     V.

BURL CAIN, Warden of the Louisiana State
Penitentiary, in his official capacity;
STEPHANIE LAMARTINIERE, Assistant Warden for
Health Services, in her official capacity;
JAMES LEBLANC, Secretary of the Louisiana
Department of Public Safety and Corrections, in
his official capacity; and THE LOUISIANA
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
     Defendants.



    DEPOSITION OF WARDEN BURL CAIN, given

in the above-entitled cause, pursuant to the

following stipulation, before Sandra P. DiFebbo,

Certified Shorthand Reporter, in and for the

State of Louisiana, at Shows, Cali & Walsh, 628

St. Louis Street, Baton Rouge, Louisiana, on the

11th day of August, 2016.

 1    people from other prisons to work together.
 2    Q.    When you say they, you're talking about
 3    the ACA?
 4    A.    Headquarters.
 5    Q.    Did you get any like regular reports about
 6    the ADA or anything like that?
 7    A.    I don't know.  He would have that.  You'd
 8    have to ask him.
 9    Q.    Warden Peabody?
10    A.    Yes.
11    Q.    Did you try to treat all offenders by the
12    same set of rules?
13    A.    Of course.
14    Q.    What would happen in a prison if the rules
15    -- if the inmates didn't believe the rules were
16    going to be applied consistently?
17          MR. HILBURN:
18                Object to the form.  Subject to the
19    objection, you can answer.
20          THE WITNESS:
21                We didn't have that issue.  We'd
22    have some inmates who would refuse treatment.
23    Miguel Valdez did.  That's a good example, with
24    his cancer.  He didn't want the treatment.  He
25    was ready to go.

JX-CCH-000432

1   BY MR. DUBNER:

2   Q.    But in terms of the policies, those would

3   be consistent for anybody who came --

4   A.    Yes.

5   Q.    How did staffing levels change over time

6   while you were warden, as far as medical goes?

7   A.    We went from about 1,800 staff to about

8   1,500 staff in the 21 years, but most of that

9   was due to technology with the security staff.

10  Most of that was security staff.  It was very

11  little other.

12  Q.    Do you know if there were changes in the

13  number of medical staff?

14  A.    Actually, it probably increased when we

15  got the Phelps people.  I would think the

16  medical increased.

17  Q.    Do you know that for a fact or --

18  A.    I don't know it for a fact.

19  Q.    Did you ever feel like you didn't have

20  enough medical staff?

21  A.    No.

22  Q.    Did you ever hear that from anybody in the

23  medical staff, that they felt like they didn't

24  have enough people?

25      MR. HILBURN:

JX-CCH-000433

016725

Form HC-01-A
14 September 2009

**Health Care Request Form**          Institution: _TCC_

Name: _Joseph Lewis_   DOC#: _560138_   Age: _80_   Housing: _Bear-1_   Job Assignment: _No Duty_

**OFFENDER TO COMPLETE THIS SECTION ONLY— COMPLAINT AND/OR REQUEST:**

I need to see a Doctor about my throat and voice.
This is my third request

**Health Care Personnel Screening:** Date: _8-12-14_   Time: _05:55_   Location Seen: _Bear_

(Circle One) Emergency / **Routine Sick Call** / Work Related   Allergies: _Imagan, Versct, Demerol_

B/P _120/80_   Pulse _70_   Resp _14_   Temp _98.7_   Other _____

**Assessment/Comment:** Pt c/o as above   Pe Ax4 PMS x 4  Neuros
intact   Skin w/o intact   Pt spoke in full unbroken
sentences 5 distress   Pt denied   Cx pain or SOB   Cap refill good
PMS x 4   Neuros intact   Rest of pe unremarkable
v/s as above

**Disposition:** S/c prn
Keep sch. apt

**Health Care Practitioner Notes:**

**New Medications Ordered:**

0

Total #: 0

Screener's Signature: _Jfolombe 551_

HCP's Signature: _____   Date: _8/15/40_

☐ No Fees  ☒ $3 Access Fee  ☐ $6 Access Fee  ☐ $2 for Each Prescription Fee: $_____   Total: $ _3.00_

I understand that in accordance with Dept. Reg. No. B-06-001, I will be charged $3.00 for routine requests for health care services, $6.00 for emergency requests and $2.00 for each new prescription written and dispensed to me, with the exceptions noted in the referenced regulation. I am aware that if I declare myself a medical emergency and health care staff determine that an emergency does not exist, I may be subject to disciplinary action for malingering.

Offender's Signature: _Joseph Lewis_   DOC#: _560138_   Date: _8-10-14_   Witness Signature: _(70) 551_

Original - Offender's Medical Record       Yellow - Business Office       Pink - Offender's Copy

JX-CCH-000434

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOSEPH LEWIS, JR., KENTRELL PARKER,
FARRELL SAMPIER, REGINALD GEORGE,
JOHN TONUBBEE, OTTO BARRERA, CLYDE CARTER,
CEDRIC EVANS, EDWARD GIOVANNI,
RICKY D. DAVIS, LIONEL TOLBERT, and
RUFUS WHITE, on behalf of themselves and
all others similarly situated,
    Plaintiffs     CIVIL ACTION NO. 15-318

VERSUS         JUDGE:  BAJ

BURL CAIN, Warden of the Louisiana  MAGISTRATE:  RLB
State Penitentiary, in his official
capacity; STEPHANIE LAMARTINIERE,
Assistant Warden for Health Services,
in her official capacity; JAMES M.
LEBLANC, Secretary of the Louisiana
Department of Public Safety and
Corrections, in his official capacity;
and THE LOUISIANA STATE DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,
     Defendants


   30(b)(6) DEPOSITION OF THE LOUISIANA

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,

through its designated representative, DARREN

MICHAEL CASHIO, given in the above-entitled

cause, pursuant to the following stipulation,

before Raynel E. Schule, Certified Shorthand

Reporter in and for the State of Louisiana, at

The Louisiana State Penitentiary, 17544 Tunica

Trace, Angola, Louisiana, on Thursday, the 25th

day of August, 2016.


**SOUTHERN COURT REPORTERS, INC.**
**(504)488-1112**

JX-CCH-000435

```
 1        written reviews along those lines that
 2        discuss problems with the care -- with the
 3        care?
 4   A.   Not that I can recall.
 5   Q.   Yeah, okay.  Have you ever gotten feedback
 6        from doctors or other providers about the
 7        care that EMTs were giving?
 8   A.   Most of the feedback we get is positive.
 9   Q.   Good.  Okay.  Have you ever gotten
10        feedback, for example, from doctors or
11        other providers that EMTs weren't
12        recognizing signs of stroke?
13   A.   No, I don't recall that.
14   Q.   Okay, and what about signs of infection?
15   A.   They should be all pretty proficient --
16   Q.   Huh-huh.
17   A.   -- with that.
18   Q.   Huh-huh.
19   A.   I don't recall any.
20   Q.   Okay, and the same with -- with heart
21        attacks, is that something that has ever
22        been raised?
23   A.   That, no, I don't -- I don't recall any.
24   Q.   Okay.  How do you train EMTs to recognize
25        when inmates are trying to game the system?
```

1      They'll usually write me a letter, and I'll
2      usually refund those.
3  Q.   What do you mean by that?
4  A.   If they -- they do multiple requests for
5      the same thing --
6  Q.   Huh-huh.
7  A.   -- and it's non-emergent, and we don't have
8      to get anything taken care of right then
9      and right there --
10 Q.   Huh-huh.
11 A.   -- then I'll usually refund.  Those inmates
12     will write me a letter, and I'll usually
13     refund those subsequent charges --
14 Q.   Okay.
15 A.   -- unless they decided once every day that
16     I'm going to catch sick call every day
17     until somebody sees me, then I'll probably
18     leave those charges.
19 Q.   Huh-huh.
20 A.   Because they're clogging up the system.
21 Q.   And what's the purpose of having the
22     charges?
23 A.   So they don't clog up the system.
24         MR. DUBNER:
25            Why don't we go off the record for

### STATE OF LOUISIANA
### DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### CORRECTIONS SERVICES

**Health Care Policy**
**No. HC–16**



**27 August 2010**

### ELECTIVE PROCEDURES, PROSTHESES AND ORTHODONTIC DEVICES

1.  **REFERENCES:**  ACA Standards 4-4375 and 4-4398 (Adult Correctional Institutions); Louisiana Constitution Art. 1 § 3 "Right to Individual Dignity" and § 12 "Freedom from Discrimination;" Americans with Disabilities Act of 1990 (ADA) as amended; Civil Rights for Handicapped Persons La. R.S. 46:2251 et seq.; Rehabilitation Act of 1973; 28 C.F.R. § 35.104 and 28 C.F.R. § 39.103; La. R.S. 40:731 et seq., 46:2365, 49:145 et seq. and 51:2231 et seq.; Department Regulation Nos. B-08-010 "Americans with Disabilities Act," B-08-018 "Effective Communication with the Hearing Impaired" and Health Care Policy Nos. HC-02 "Healthcare Co-Payments" and HC-15 "Duty Status Classification System."

2.  **PURPOSE:** To state the general guidelines regarding departmental policies concerning the provision of medical/dental auxiliary aids or adaptive devices, elective procedures or surgery for offenders.

3.  **DEFINITIONS:**

    A.  Elective procedure:  Any planned non-emergency procedure.  It may be either medically necessary (e.g., cataract surgery, routinely scheduled heart surgery, etc.) or optional (e.g., cosmetic, etc.)

    B.  Individualized devices/aids: Those that cannot be used by others (including but not limited to eye glasses, dentures, hearing aids, etc.)

    C.  Major life activity: Walking, seeing, hearing, breathing, caring for one's self, sitting, standing, lifting, learning, thinking and working.  This list is illustrative only.

    D.  Medically necessary procedure: Treatments/procedures routinely prescribed by health care providers to maintain/preserve basic health and/or functionality (e.g., cardiac bypass surgery, gallbladder removal, surgical treatments of various cancers, spinal surgeries, orthopedic surgeries, etc.)

Lewis v. Cain - Def's Production 1 - 000005088

JX-CCH-000438

**Health Care Policy No. HC-16**
**27 August 2010**
**Page Two**

E.    Non-individualized devices/aids: Those that can be used by multiple users (including but not limited to wheelchairs, canes, walkers, CPAP machines, etc.)

F.    Non-medically necessary procedure: Procedure that is not necessary to preserve basic health (including but not limited to replacing missing front teeth, cosmetic surgery, tattoo removal, Lasik eye surgery, etc.)

4.    **POLICY:** It is the Secretary's policy to provide medically necessary elective procedures or surgeries for offenders and to ensure medical/dental auxiliary aids or adaptive devices (including but not limited to eyeglasses, hearing aids, dentures, wheelchairs or other prosthetic devices, etc.) are provided when medically necessary as determined by a health care provider (approval by the unit's Medical Director may be required.)

5.    **PROCEDURES:**

A.    Elective Procedures

Non-medically necessary elective procedures are not routinely provided. In exceptional cases when a procedure that is non-medically necessary is recommended, the unit's Medical Director shall notify the Warden, who shall submit a written request to the Department's Medical/Mental Health Director for consideration. If approved, a clinic visit or procedure shall then be scheduled.

B.    Prostheses and Orthodontic Devices

1)    The unit's Medical Director shall screen all referrals for appropriateness and compliance with departmental policy regarding medical prosthesis and devices.

2)    Prior to purchasing any alternate prostheses/devise, should the unit Medical Director have institutional safety concerns regarding a specific prosthetic device, the appropriate Security Administrator shall be consulted. If the concerns are validated, an alternate prostheses/devise shall be considered. If necessary, the unit Warden may consult with the Department's Medical/Mental Health Director to reach a final disposition.

3)    Basic auxiliary aids/prosthetic devices that are deemed medically necessary shall be provided by the Department. The Department shall not provide aids or devices that are cosmetically or otherwise enhanced and that do not provide any additional medical benefit.

Lewis v. Cain - Def's Production 1 - 000005089

JX-CCH-000439

Health Care Policy No. HC-16
27 August 2010
Page Three

4)    A medical co-payment charge may be assessed to the offender in accordance with Health Care Policy No. HC-02 "Medical Co-Payment" for individualized medical prostheses and orthodontic devices.  Replacement of devices that were damaged, broken or lost due to obvious negligence shall be replaced at the discretion of the unit's Medical Director; however, a co-payment shall be applied each time the device is replaced.  The Department shall provide for the routine maintenance and repair of the device that occurs through normal usage by the offender as outlined in the manufacture's guidelines.

5)    There shall be no co-payment for non-individualized auxiliary aids/adaptive devices, prosthetic devices or medical devices furnished by the Department and the offender shall return these items to the medical department of the unit prior to release. The Warden or designee is authorized to allow an offender to be released from custody with a non-individualized device in exceptional cases.

6)    If indicated, when an auxiliary aid/adaptive devise or a prosthetic devise is issued to an offender, the unit's medical provider shall ensure that an appropriate duty status clearly stating the offender's limitations and/or required accommodations is issued as outlined in Health Care Policy No. HC-15 "Duty Status Classification System."

C.    Eyeglasses

1)    The Department shall furnish prescription eyeglasses to any offender requiring them, as documented through a professional prescription.

2)    Reading glasses may be purchased through the offender canteen or purchased by the Department.

3)    Offenders having glasses upon admission may retain the glasses once approved by security to ensure that the model of device addresses institutional safety concerns.  Glasses shall not be allowed from an outside source unless approved by the Warden or designee.

4)    The Department shall provide new eyeglasses if the offender's prescription changes greater than ½ diopter sphere or cylinder or the addition of increased power is indicated.

Lewis v. Cain - Def's Production 1 - 000005090

JX-CCH-000440

Lewis v. Cain - Def's Production 1 - 000005090

**Health Care Policy No. HC-16**
**27 August 2010**
**Page Four**

    5)    The Department shall not provide contact lenses and/or contact lens maintenance supplies to an offender in lieu of eye glasses. If a unit allows offenders to purchase their own contact lenses through an approval process, then the offender shall be responsible for contact lens solution or any other necessary supplies in addition to future costs of replacements.

D.    Dental Adaptive Devices

A dental prosthesis may be provided to offenders in cases where the number and location of missing teeth make proper mastication too difficult and/or when the health of the offender would be adversely affected for this reason, as determined by the dentist. However, the Department is not required to replace missing teeth, regardless of when or where the teeth were removed. A dental prosthesis shall not be considered if any of the following conditions are present:

- Poor periodontal health;
- Poor oral hygiene;
- Non-restorable teeth present;
- Chronic infection;
- Restorations have not been completed;
- Eight or more posterior teeth in occlusion, to include bicuspid occlusion;
- The offender has less than one year remaining on his sentence.

E.    Hearing Aids

    1)    The supplying of hearing aids to offenders is addressed pursuant to Department Regulation No. B-08-010 "Americans with Disability Act."

    2)    The current Occupational Safety and Health Administration (OSHA) standards shall be utilized to determine if an offender can be assisted by the use of a hearing aid. At intake, an initial hearing test shall be scheduled for those offenders identified as possibly hard of hearing or deaf. An offender may request a hearing test if his hearing has degenerated during the course of his incarceration. This request may also be made for the offender by a staff member. The request shall be made utilizing Form A-02-017-A "Request for Accommodation" in accordance with Department Regulation No. B-08-018 "Effective Communication with the Hearing Impaired." If the hearing test reveals that a hearing aid is medically warranted, the appropriate steps shall be initiated to provide the offender with an

Lewis v. Cain - Def's Production 1 - 000005091

JX-CCH-000441

Lewis v. Cain - Def's Production 1 - 000005092

**Health Care Policy No. HC-16**
**27 August 2010**
**Page Five**

aid. Further, the offender shall be given an option to remain at his current facility or to administratively transfer to one of the specialized facilities for deaf or hearing impaired offenders (LSP, RCC or LCIW.) The location of the transfer shall be determined by the Office of Adult Services.

F.  Prosthetic Device

1)  A prosthesis or artificial device (including wheelchairs, etc.) to replace a missing body part or to cope with a disability which prohibits major life activities, may be provided if deemed essential for overall health maintenance by the unit's Medical Director in consultation with the Warden.

2)  The prosthesis shall meet the minimum requirements of the function.

3)  A prosthetic device of a cosmetic nature only, shall not be provided unless approved by the Warden and the Department's Medical/Mental Health Director with adequate written justification from the unit's Medical Director.

4)  The prosthesis may be replaced due to normal wear and tear at the discretion of the unit's Medical Director.

5)  Offenders having a prosthetic device upon admission may be allowed to keep the device at the discretion of the unit Medical Director. If approved, this device shall be considered personal property and shall be allowed to leave with the offender upon discharge.

s/James M. Le Blanc
Secretary

Form:  A-02-017-A  Request for Accommodation

This policy supersedes Health Care Policy No. HC-16 dated 12 August 2010.

Lewis v. Cain - Def's Production 1 - 000005092

JX-CCH-000442

| November 1, 2010 | CHAPTER:<br>HEALTH CARE SERVICES | DIRECTIVE NO.<br><br>13.030 |
|---|---|---|
| **LOUISIANA STATE PENITENTIARY** | SUBJECT:<br>ELECTIVE PROCEDURES, PROSTHESES AND ORTHODONTIC DEVICES | ACA STANDARD:<br>4-4375, 4-4398 |
| | REFERENCE: | |

PURPOSE:  To state the general guidelines concerning the provision of medical/dental auxiliary aids or adaptive devices, elective procedures or surgery for offenders.

APPLICABILITY:  To the Louisiana State Penitentiary Medical Director and health care providers.

DEFINITIONS:

Elective procedure: Any planned non-emergency procedure. It may be either medically necessary (e.g., cataract surgery, routinely scheduled heart surgery, etc.) or optional (e.g., cosmetic, etc.)

Individualized devices/aids: Those that cannot be used by others (including but not limited to eye glasses, dentures, hearing aids, etc.)

Major life activity: Walking, seeing, hearing, breathing, caring for one's self, sitting, standing, lifting, learning, thinking and working. This list is illustrative only.

Medically necessary procedure: Treatments/procedures routinely prescribed by health care providers to maintain/preserve basic health and/or functionality (e.g., cardiac bypass surgery, gallbladder removal, surgical treatments of various cancers, spinal surgeries, orthopedic surgeries, etc.)

Non-individualized devices/aids: Those that can be used by multiple users (including but not limited to wheelchairs, canes, walkers, CPAP machines, etc.)

Non-medically necessary procedure: Procedure that is not necessary to preserve basic health (including but not limited to replacing missing front teeth, cosmetic surgery, tattoo removal, Lasik eye surgery, etc.)

POLICY:  It is the policy of Louisiana State Penitentiary to provide medically necessary elective procedures or surgeries for offenders and to ensure medical/dental auxiliary aids or adaptive devices (including but not limited to eyeglasses, hearing aids, dentures, wheelchairs or other prosthetic devices, etc.) are

JX-CCH-000443

provided when medically necessary as determined by a health care provider (approval by the Medical Director is required.)

PROCEDURE:

A.    ELECTIVE PROCEDURES

Non-medically necessary elective procedures are not routinely provided. In exceptional cases when a procedure that is non-medically necessary is recommended, the Medical Director shall notify the Warden, who shall submit a written request to the Department's Medical/Mental Health Director for consideration.  If approved, a clinic visit or procedure shall then be scheduled.

B.    PROSTHESES AND ORTHODONTIC DEVICES

1.    The Medical Director shall screen all referrals for appropriateness and compliance with departmental policy regarding medical prosthesis and devices.

2.    Prior to purchasing any alternate prostheses/device, should the Medical Director have institutional safety concerns regarding a specific prosthetic device, the Assistant Warden/Health Services shall be consulted.  If the concerns are validated, an alternate prostheses/device shall be considered. If necessary, the Warden may consult with the Department's Medical/Mental Health Director to reach a final disposition.

3.    Basic auxiliary aids/prosthetic devices that are deemed medically necessary shall be provided by the Department.  The Department shall not provide aids or devices that are cosmetically or otherwise enhanced and that do not provide any additional medical benefit.

4.    A medical co-payment charge may be assessed to the offender in accordance with Health Care Policy No. HC-02 "Medical Co-Payment" for individualized medical prostheses and orthodontic devices.  Replacement of devices that were damaged, broken or lost due to obvious negligence shall be replaced at the discretion of the Medical Director; however, a co-payment shall be applied each time the device is replaced.  The Department shall provide for the routine maintenance and repair of the device that occurs through normal usage by the offender as outlined in the manufacture's guidelines.

5.    There shall be no co-payment for non-individualized auxiliary aids/adaptive devices, prosthetic devices or medical devices furnished by the Department and the offender shall return these items to the medical department prior to release. The Warden or designee is authorized to allow an offender to be released from custody with a non-individualized device in exceptional cases.

6.   If indicated, when an auxiliary aid/adaptive device or a prosthetic device is issued to an offender, the medical provider shall ensure that an appropriate duty status clearly stating the offender's limitations and/or required accommodations is issued as outlined in Health Care Policy No. HC-15 "Duty Status Classification System."

C.   EYEGLASSES

1.   The Department shall furnish prescription eyeglasses to any offender requiring them, as documented through a professional prescription.

2.   Reading glasses may be purchased through the offender canteen or purchased by the Department.

3.   Offenders having glasses upon admission may retain the glasses once approved by security to ensure that the model of device addresses institutional safety concerns. Glasses shall not be allowed from an outside source unless approved by the Warden or designee.

4.   The Department shall provide new eyeglasses if the offender's prescription changes greater than ½ diopter sphere or cylinder or the addition of increased power is indicated.

5.   The Department shall not provide contact lenses and/or contact lens maintenance supplies to an offender in lieu of eye glasses.

D.   DENTAL ADAPTIVE DEVICES

1.   A dental prosthesis may be provided to offenders in cases where the number and location of missing teeth make proper mastication too difficult and/or when the health of the offender would be adversely affected for this reason, as determined by the dentist. However, the Department is not required to replace missing teeth, regardless of when or where the teeth were removed. A dental prosthesis shall not be considered if any of the following conditions are present:

   ⋅  Poor periodontal health;
   ⋅  Poor oral hygiene;
   ⋅  Non-restorable teeth present;
   ⋅  Chronic infection;
   ⋅  Restorations have not been completed;
   ⋅  Eight or more posterior teeth in occlusion, to include bicuspid occlusion;
   ⋅  The offender has less than one year remaining on his sentence.

2.     All transactions regarding repair of dental prosthetics will be documented as follows:

    a.     When repairs are necessary, the offender must turn the appliance(s) in to the Dental Clinic.

    b.     The Dental Clinic staff will complete a receipt in triplicate with a complete physical description of each item.

    c.     The original receipt will be forwarded to the Health Information Management Department.  One (1) copy will be issued to the offender and (1) copy will be maintained in the Dental Clinic.

## E.     HEARING AIDS

1.     The supplying of hearing aids to offenders is addressed pursuant to Department Regulation No. B-08-010 "Americans with Disability Act."

2.     The current Occupational Safety and Health Administration (OSHA) standards shall be utilized to determine if an offender can be assisted by the use of a hearing aid.  At intake, an initial hearing test shall be scheduled for those offenders identified as possibly hard of hearing or deaf.  An offender may request a hearing test if his hearing has degenerated during the course of his incarceration.  This request may also be made for the offender by a staff member. The request shall be made utilizing Form A-02-017-A "Request for Accommodation" in accordance with Department Regulation No. B-08-018 "Effective Communication with the Hearing Impaired."  If the hearing test reveals that a hearing aid is medically warranted, the appropriate steps shall be initiated to provide the offender with an aid.

## F.     PROSTHETIC DEVICE

1.     A prosthesis or artificial device (including wheelchairs, etc.) to replace a missing body part or to cope with a disability which prohibits major life activities, may be provided if deemed essential for overall health maintenance by the Medical Director in consultation with the Warden.

2.     The prosthesis shall meet the minimum requirements of the function.

3.     A prosthetic device of a cosmetic nature only, shall not be provided unless approved by the Warden and the Department's Medical/Mental Health Director with adequate written justification from the Medical Director.

    4.    The prosthesis may be replaced due to normal wear and tear at the discretion of the Medical Director.

    5.    Offenders having a prosthetic device upon admission may be allowed to keep the device at the discretion of the unit Medical Director. If approved, this device shall be considered personal property and shall be allowed to leave with the offender upon discharge.

G.    PROCUREMENT OF PROSTHESES AND ORTHODONTIC DEVICES

    1.    After an offender has been evaluated and a prosthetic/orthodontic device is deemed medically necessary, the attending physician/dentist will make a referral to the Medical Director for review and approval.

    2.    The Medical Director will review all referrals for appropriateness and compliance with departmental policy.

        a.    Disapproved referrals will be returned to the attending physician/dentist with an explanation or request for additional information.

        b.    Approved referrals will be appropriately procured.

    3.    For devices that have been approved, a completed request for purchase (Form 156-B), including approximate cost, will be generated and forwarded to the Purchasing Office for assignment of a requisition number.

    4.    Upon receipt of a requisition number, an appointment will be made with the appropriate vendor for the offender, or the appliance may be sent, if appropriate.

Burl Cain, CCE
Warden

This policy rescinds Penitentiary Directive No. 13.031 May 26, 2004, and supersedes Penitentiary Directive No. 13.030 dated May 17, 2004.

**From:** "RSINGH@corrections.state.la.us"
<RSINGH@corrections.state.la.us@RSINGH@corrections.state.la.us>
**Sent:** Fri, 16 Jul 2010 22:19:00 +0000
**To:** "CN=JONATHAN ROUNDTREE/OU=LSP/O=CORRECTIONS" <>, "CN=Annette
Dupuis/OU=LSP/O=CORRECTIONS" <>, "CN=DONALD BARR/OU=LSP/O=CORRECTIONS" <>,
"CN=Tony Tarver/OU=DCI/O=CORRECTIONS" <>, "CN=LESLIE SCHMIDT/OU=DCI/O=CORRECTIONS"
<>, "CN=Jackie Hughes/OU=DCI/O=CORRECTIONS@CORRECTIONS" <>, "CN=DENISE
HARRISON/OU=EHCC/O=CORRECTIONS" <>, "CN=Tiffany
Jordan/OU=EHCC/O=CORRECTIONS@CORRECTIONS" <>, "CN=BRENDA
HEBERT/OU=EHCC/O=CORRECTIONS@CORRECTIONS" <>, "CN=Preety
Singh/OU=LCIW/O=CORRECTIONS@CORRECTIONS" <>, "CN=CHARLENE
HAYDEL/OU=EHCC/O=CORRECTIONS" <>, "CN=SETH SMITH/OU=EHCC/O=CORRECTIONS" <>,
"CN=Karen Bess/OU=LCIW/O=CORRECTIONS" <>, "CN=Tonya
Stelly/OU=LCIW/O=CORRECTIONS@CORRECTIONS" <>, "CN=JULIE
RAY/OU=LCIW/O=CORRECTIONS@CORRECTIONS" <>, "cmoore@corrections.state.la.us" <>,
"CN=Bessie Carter/OU=RCC/O=CORRECTIONS" <>, "CN=Dennis Laravia/OU=RCC/O=CORRECTIONS"
<>, "CN=WAYNE COOK/OU=RCC/O=CORRECTIONS@CORRECTIONS" <>, "CN=AVC
D.O.N/OU=AVC/O=CORRECTIONS" <>, "CN=Casey McVea/OU=AVC/O=CORRECTIONS" <>,
"CN=GARY GREMILLION/OU=AVC/O=CORRECTIONS" <>, "CN=BURT
MICHOT/OU=JLDCC/O=CORRECTIONS" <>, "CN=JOE RUEBUSH/OU=PCC/O=CORRECTIONS" <>,
"CN=NATHAN CAIN/OU=PCC/O=CORRECTIONS@CORRECTIONS" <>, "teshepherd@geogroup.com"
<>, "pat.thomas@correctionscorp.com" <>, "CN=DEBBIE SCRIBER/OU=DWCC/O=CORRECTIONS" <>,
"CN=John Crawford/OU=PCC/O=CORRECTIONS" <>, "CN=PAM HEARN/OU=DWCC/O=CORRECTIONS"
<>, "CN=DENISE SCOTT/OU=PCC/O=CORRECTIONS" <>, "CN=Sonya Bufalo/O=CORRECTIONS" <>
**CC:** "DSG" <>, "CN=James M. LeBlanc/O=CORRECTIONS" <>, "CN=SHERYL
RANATZA/O=CORRECTIONS" <>
**Subject:** Fw: LSU REFERRAL PROCESS FEEDBACK FOR JULY 16TH VIDEOCONFERENCE

---

Before I start on this I want to share that I attended a meeting at E.A.Conway,
Monroe and now LSU-Shreveport is also talking about expanding telemed to cut
down the trips which will involve LSU-S, E A Conway and Huey P. Long hospitals.
Details are being worked out and I will keep you all posted.

Sonya has compiled all of your responses about your experience with new
referral review process and telemed ( Pl. see below) . I am planning to do a
follow up videoconference to fine tune this process on Thursday July 22, in
afternoon ( tentatively) . This will be mandatory for LSP, DCI,EHCC, LCIW, RCC
and PCC and optional for others. I want to listen from all of you how  to
further fine tune this process and the challenges you have faced in last
several weeks. LSU will join us to answer your questions.  Pl. have your staff
involved in this process available for this videoconference.

I had a videoconference with Drs. Kaiser, Couk and Ms. Angelico today where we
discussed these issues and some others.

1. Infrastructure : HQ IT is working to boost the capabilities so that
multiple telemed clinics at different sites can be held simultaneously. As of
now too many clinics can crash this system. This will hopefully be accomplished
in next few weeks.

2. PCC : The practice where  your provider is ordering tests ( CT scans etc. )
and then patients have to go to med clinic @ Moss Regional , just to ensure
that these tests are needed, is under review as this is a waste of LSU and our
resources. This will also be taken up with LSU-S leadership for WNC, AVC, DWCC

Lewis v. Cain - Def's Production 1 - 000051435

JX-CCH-000448

and FWCC ( or any other institution if you let me know)

3. As of now LSU is NOT offering screening colonoscopies ( recommended during age physicals) neither to their routine patients nor to offenders unless patient is a high risk candidate( polyp or family history or stool positive for occult blood etc. ) . They have sent me their expert's opinion and although less trip is good but I want to make sure that every i's have been dotted and every t's have been crossed before we change our practice. I believe that no matter who  recommends what or it is a private care or charity care, in the end DOC is responsible to ensure that care being given, meets the community standards and is appropriate and if that is not the case then we will be held liable.

4. Neurosurgery : back pain is a very common problem in our field and we tossed around some ideas to have a logical solution. Sending to PT even before surgery is considered, may be a cost saving measure to HMOs but it may not work for us. I have asked LSU to get with their Neurosurgeons and Neurologists and prepare a refresher course for DOC providers so that we all can be on same page. Occasionally ( or more often than that) MRI is ordered because pain never gets better but the fact is that MRI is not normal in half of the asymptomatic " free " people after a certain age. Pain is a very subjective symptom and MRI is a very sensitive test so this combination can cause a serious dilemma for a provider which results in neurosurgery referrals. We need to increase our comfort zone and know more about evidence based practices about back pain ; when to order MRI, when to order a neurosurgery consult etc. They are talking about PT for every patient referred to Neurosurgery first and at this stage I do not completely agree with this suggestion. We have decided to explore more options which should work well for both of us.

5. Urgent appointments: If you think that a particular referral can not wait to go through the routine process then Pl. pick up phone and call Ms. Diane Angelico or send her an email. Will continue to fine tune this process.

6. On site specialists directly making appointments : mainly at LSP, if a Surgeon or Ortho resident is seeing patients and then giving them appointments for surgery. This may sound like a waste to use this review process since a LSU specialist has already evaluated the patient but in their experience , sometimes residents order certain surgeries to complete their  required quota before getting licenses/ certifications. I was given examples of bunion surgery and I am fine to cancel any surgery which is not absolutely necessary. Pl. call Ms. Diane if a surgery has been scheduled and if you think that is needed then that will be reviewed expeditiously.

7.Follow up : when a patient is seen by a LSU provider either in person or by telemed and needs a follow up appointment then we were told that LSU will take care of that follow up appt. That is not happening all the time.  Pl. understand that although we have mainly 6 prisons participating, they have 7 hospitals. Believe it or not now our prisons work more like a team towards same goal but their 7 hospitals are another story. LSU, New Orleans have traditionally never scheduled any follow up appointment and have left this to the prison staff. It will take some efforts to change their work habits too. Hopefully, soon all 7 hospitals will be on the same page.

8.Pregnant : As discussed earlier, pregnant offenders going to Ob clinic do not need to go through this review process.

9. Waiting time for telemed clinic : The Cardiologist was late one day as he could not get out in a timely manner from a meeting. Pl. be aware that Telemed will only grow from here so once we hit the critical mass then waiting time will go down significantly. Let me expound on this: if you have only one or two patients then they have to wait but if you have a full day worth of patients then provider will start showing up on time otherwise he will be stuck till late in the evening and if a patient is late then you can have another patient done  . We have done only little telemed so far so we never paid attention towards making this efficient but this will change. Also you may consider having a dedicated room for telemed as this will be a busy clinic in its own.

10. Eceptionist : many nurses should be able to  enter data , it will help. LSU will look into this as they agree.

11.LCIW / EHCC cancelled appointments : they have just finished processing them and you will hear from them soon.

12.Pacemaker checks : don't need to go on a trip. can be done on site. I have several other suggestions like Holter monitor which can be applied and removed by any nurse after a little training and small monitor can be sent to cardiology lab.

13. I guess this is enough for this week

Thanks and have a great weekend

Raman Singh M.D.
Medical / Mental Health Director
Louisiana Dept. of Public Safety & Corrections
225.342.1320 ( Office)
225.342.1329 ( Fax)


LSU REFERRAL PROCESS FEEDBACK FOR JULY 16TH VIDEOCONFERENCE

LSP - Good afternoon Dr. Singh this is reminder from our earlier conversation in regards to the LSU referral system. As we discussed earlier I feel that Angola is unique in that we have specialty doctors on site that most often have already performed all the testing required and when we get a referral to send to an outside hospital it is almost always because they have exhausted all other means. My concern is do we really need to have them seen over telemed after they have seen a hands on specialist? Also when the specialty doctors here get surgeries scheduled for the offender and we get a date and the PCP and specialty doctor both agree that all other means have been tried and failed so surgery is the only option and a date is given, we still have to go through eceptionist and get approval?? will they review the referral in a timely manner so that if approved by them (Dr. Couk and Dr. Kaiser) we will know in a timely manner so that the trip can be set up and appointment/surgery date can be kept?  Thanks  I spoke to Mrs. Dianne and she said if the offender has been through the LSU system and has a F/U we can keep those appointments but

everything else has to go through eceptionist. Also have all the specialty doctors been told about this referral system??  Annette

EHCC:We have several issues with the new referral process.

1.EHCC Trip Nurse's are not able to get into eceptionist.

We have made several attempts to have this system installed by IT and thru LSU, Ms Plant (LSU) began training but has been unable to complete it. This is very problematic because while I can currently assist with inputting information into Eceptionist the Trip nurses donot have access to pull up appointment dates.We need a shared system, that will allow various nurses access to the same information ( ie. requested appts),since several nurses will be requesting appts for telemed and for onsite visits.  According to the explanation given to me, the appt dates will only show under the requests that I send and will not be available for others to view (?).  We also need an easier way to view scheduled appts, onsite appts cannot be obtained by dates as they can thru telemed,but must be located thru an individual name search and this is very time consuming.

2. Algorithim not being followed in regards to LSU clinics scheduling appts

Examples:

1# No appointment scheduled from LSU, even if the follow up was requested by LSU. (example)
Offender Weatherspoon DOC# 359060 was seen on 7/12/2010 in New Orleans, on the
Inmate Collaborative Care Form it states "follow up in 1week at Lord & Taylor Ophthalmology Clinic".
However, no appointment date was given.

2# Offenders that have been seen at EKL and the LSU provider is requesting a diagnostic test ( CT, U/S, etc.) ,
   EKL is sending back an appt. date for the test being ordered. (example)
   A) Offender Dugas DOC#491849 was seen on 7/13/2010 @ EKL Oncology and the LSU Provider is requesting a CT Scan which has been scheduled   for 7/27/2010. This appt. was listed on the  Inmate   Collaborative Form.

B) Offender Sessions DOC#224756 was seen on 7/12/2010 @ ILH Neurosurgery.  The LSU Provider  request is written as follows:
CTA of Head.  RTC after above is done (1 month).     No appointment date was given for CTA of Head.

There is confusion as to who request tests or appts. Ex# A the  EKL provider requested appt for a diagnostic study and sent date. Ex# B  the IHL provider needs the procedure in order to make a diagnosis but test was not requested. Was this a recommendation only? Are we to request the CTA or is date pending and will be sent to us?

It appears that facilities are scheduling differently. What are we to expect?

5. Backlog referrals that was faxed after the July 1st meeting have not been addressed.

We have not received appts for 34 offenders

DWCC - We have no follow up appointments in South Louisiana at this time. Telemed referrals are being requested through Eceptionist/Patty Plant. Nurse Paula Millwee has not received access to Eceptionist, but has taken the training offered recently. Thanks, Debbie

JLDCC - This morning I received a call from Ms. Patty Plant from LSU and told to schedule the 2 dermatology Telemed appointments in SOMMET in eceptionist. Also there are 3 other offenders with pending follow up appointment requests from the Dermatologist at LSU and that their appointments need to be resubmitted in eceptionist. All of the paperwork and scheduling will be completed today. Burton Michot RN, BSN. A few days after the last LSU meeting I placed an eceptionist request for a telemed dermatology appointment. I was notified to cancel the appointment and was informed that LSU is not ready to accept referrals yet. The appointment was requested on 07/01/10 and cancelled 07/01/10. I have 2 Derm Telemed appointments that need scheduling at the present time. I have 3 offenders that are scheduled in the Telemed Hepatitis Clinic tomorrow. No other appointments have been requested from the 7 southern LSU hospitals. Burton Michot RN, BSN

WNC - I would like to know if it is possible to make a referral from Winn Parish Medical Center ER (when the patient is stable) to LSU ER in the event a LSU inpatient bed is not available. Our problem arises when the LSU inpatient bed is not available. That is when the patient gets transferred to a private hospital.

LCIW- At this point the new referral process seems to be going well. Our biggest challenge at this point is re-processing all the postponed and cancelled appointments that were previously scheduled. Some of the previously postponed appointments have been scheduled within the tele-medicine system. We have a large bulk of cancelled appointments that were previously on our list that must be reviewed by providers. We are getting the required forms back from outside trips. In addition, appointments are being scheduled off-site as requested by the clinic physicians without difficulty. The Tele-medicine clinics for LCIW are taking placed as scheduled per the Eceptionist calendar. There continue to be delays as far as when the clinics actually start as opposed to the time listed on the calendar. This is an issue for LCIW due to lack of space for telemedicine clinic. At present, telemedicine is occupying the same space with X-Ray. (Unfortunately, these two cannot run simultaneously). I know we all working hard to facilitate the various clinics. Currently, I think the process is going well and will improve once we get through the backlog of referrals and when everyone become accustomed to what is needed and expected. Karen A. Bess, RN

AVC - We had two referrals pending and we received them today... They are two eye clinics and will be seen via telemed. Maybe Dr. McVea would have more to add. Tammy O. Lacombe, RN, MSN Dr. Singh, I haven't had much experience with the southern hospitals, but the system as it was laid out in the conference

Lewis v. Cain - Def's Production 1 - 000051439

JX-CCH-000452

seems pretty straightforward. Do you know if the northern region will be switching to a similar system? Casey McVea, MD

DCI- In reply to your inquiry: From my perception, the new referral process has significantly increased the workload of all persons involved, and has resulted in delays in requested and required diagnostic tests and consultations. I realize this process is in its infancy, and hope that adolescence with subsequent maturity is in the not-too-distant future.

The required labor has more than doubled for the nurses. When I see an offender in the clinic, who I think needs a diagnostic test or a specialist consultation, I complete the specific EBCF and give it to the clinic nurse, In addition, I flag any supporting documents that are available, in the chart. The chart and consult are then given to the Trips Coordinator, Jackie. The EBCF and attachments must then be faxed to the required server AND the information has to be manually entered into eCeptionist by Jackie. Since the faxes are actually data transfers to an electronic server, the individual referrals have to be sent separately, instead of in a batch fax of a stack of papers and dividers. Therefore, Jackie has to watch the fax machine, so that she can load the new offender's paperwork and push the Redial button after the previous referral has been sent.

In the past, the appointment requests were commonly conducted person-to-person, via telephone. If I thought an offender needed to have a test or be seen in an urgent time (but not an emergency requiring the ER), this could be relayed to the scheduling person at the Hospital, and appointments were usually given for the near future. When Jackie hung up the phone, we had the appointment date and time. These abilities and luxuries have been removed. Now, the information is impersonally entered digitally via fax and eCeptionist, the data is reviewed (and probably viewed on a monitor), then the decision is sent back to us electronically. According to the Instructions for DOC personnel for submitting requests for specialty services sent after our previous video conference:

The request (eCeptionist and Inmate Evidence Based Form) will be reviewed by an LSU physician member of the CPSO
a. If additional information is needed, that alert will be sent via EC to your incoming box
b. If the request is denied, notification will be sent via EC to you incoming box
c. If the request has been approved for a telemed based encounter, you will receive notification via EC incoming box
d. If the request has been approved for an in person, face-to-face clinic examination, notification of that decision will be sent via EC incoming box. The hospital creating the face to face appointment will send details of the day and time and location of the appointment

It seems there is no method to request an urgent appointment. In fact, I have submitted requests, have written ASAP on the form, the urgency was noted in eCeptionist, and it has been two weeks since submission with still no reply in the EC incoming box mentioned above. Such delays could result in "urgent" becoming "emergency", with potential consequences for the patient and DCI.

Lewis v. Cain - Def's Production 1 - 000051440

JX-CCH-000453

Lewis v. Cain - Def's Production 1 - 000051441

The above details about how we will be notified about the outcome of submitted EBCF forms has not been seen.  To date, we have not received a reply for a single form that has been submitted requesting a new appointment or diagnostic test, since the process was started last week.

Regarding telemedicine clinics, it is blatantly obvious how much additional time and work is required from the nursing staff, usually Travis.  Because of the significant increase in the number of scheduled telemedicine clinic appointments, I believe this has become a full-time position, as opposed to the current telemed/ID/help where needed such as with PharmaCorr.  It obviously takes longer to prepare for more patients (V/S, copying labs, notes, CLIQ, etc), then present more patients, then receive/review/rewrite incoming faxes/notes/orders.  With telemedicine clinics now scheduled almost every day, this takes time previously dedicated to ID issues (e.g., TST testing, INH f/u, calls regarding previous TST results, etc).  Also, with the time now dedicated to telemedicine, if there is delay because of waiting for the MD, hook-ups, etc,, it is difficult to take advantage of the "down time", since there is no way to predict how long it will last.  We have had telemedicine clinics on 5 different days since starting 7/8, with 19 encounters done.  Already, I am noticing a projected increase in our laboratory cost - tests that would previously have been done while the patient was at the Hospital are now being done at DCI.

Since the MD who is seeing the offender via telemedicine is not at EKL, there are extra steps required when an offender requires a test, surgery, etc.  For example, patient was seen in telemed ortho, the MD recommended ATS, so we have to submit a new request to EKL ortho for an appointment for surgery to be scheduled.  Another example is an offender who was referred to General Surgery for recurring balanoposthitis, to be scheduled for a circumcision.  He was seen in telemed Urology clinic, the MD recommended continue the current topical treatments and hygiene care, and agreed that circumcision should be considered when cleared.  So now, a new appointment needs to be requested - again to General Surgery, as originally done.

Whereas there was previously just 1 degree of separation between us and EKL (or whichever primary hospital each institution had a relationship with), there are now 3 or 4 degrees of separation, which is causing some confusion and delay.  As stated above, in the past we were able to talk to someone at EKL, who was able to address whatever the request was - either schedule a clinic appointment, schedule a test date, schedule surgery, etc.  Now, forms are submitted in a detached, impersonal manner.  These are subsequently reviewed by someone not directly affiliated with the Hospital to where the request is being made.  The decision is then sent back to us (and hopefully also to the Hospital or telemed scheduling, meaning approved).  If approved for a Hospital appointment, someone at the Hospital will then send the necessary information about the appointment (probably via EC or e-mail).  If approved for a telemed clinic, the staff physician who sees the offender may or may not be affiliated with our primary Hospital EKL.  Whether he is or not, if he believes the offender should be scheduled at the Hospital (either for a test, on-site clinic, or surgery), does he have the ability/privileges to accomplish this, or just recommend and then it is up to us, at DCI, to get the appointment?  Where it took just one phone call to get an offender scheduled for a test in the past (e.g. MRI for back pain, abnormal x-rays, neuropathy), now it takes a fax

requesting the test, a review of the data sent, an approval to be seen in telemed clinic, an assessment by the telemed physician who recommends the same test, then a new referral to the Hospital to get the test. While this example may seem extreme, it is very feasible.

I have seen a couple of offenders who are post-op ACL repair, who have been under continued ortho care, with activity limitations. Because they are not in the immediate post-op period (one was 2 months post-op, the other 12-13 weeks), the recommended f/u appointments were cancelled or denied. So now I am seeing them in my clinic, but without the benefit of the recommended time-frame for activity advancement. They are performing self-rehab based on a handout given to them, and continue to have complaints about weakness, climbing, etc. It would be beneficial to have some guidelines from different specialists regarding these issues, especially orthopedic disorders.

I believe a follow-up video conference would be very beneficial and informational, now that the process has begun, and we are realizing the impact that was nebulous before.

I hope this information helps, and that your meeting is worthwhile.

**From:** "CN=Annette Dupuis/OU=LSP/O=CORRECTIONS" <CN=Annette Dupuis/OU=LSP/O=CORRECTIONS@CN=Annette Dupuis/OU=LSP/O=CORRECTIONS>
**Sent:** Tue, 03 Feb 2015 18:14:00 +0000
**To:** "RSINGH@corrections.state.la.us" <>
**CC:** "CN=Melanie Benedict/O=CORRECTIONS@CORRECTIONS" <>, "CN=Randy Lavespere/OU=LSP/O=CORRECTIONS@CORRECTIONS" <>, "CN=Sherwood Poret/OU=LSP/O=CORRECTIONS@CORRECTIONS" <>
**Subject:** Re: LSU Ortho @ LSP

Dr. Singh the rotation has changed the ortho doctor that was here on the previous rotation did write alot of referrals for f2f but the resident we have now is more conservative. Alot of the offenders continue to complain and the residents have exhausted all measures that an be done here for relief, injections etc. So I guess they are just covering themselves. I have talked to the resident we have now as well as Dr. Lavespere telling them to refer only patients that are truly medically necessary. Hope this helps.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

Annette Dupuis Carroll RN,CCN/M
Doctor's Clinic
Ph. # 225-655-2728
Fax: # 225-655-2275
ADupuis@corrections.state.la.us

RAMAN SINGH/CORRECTIONS
02/03/2015 11:57 AM

To
Randy Lavespere/LSP/CORRECTIONS@CORRECTIONS, Sherwood Poret/LSP/CORRECTIONS@CORRECTIONS, Annette Dupuis/LSP/CORRECTIONS, Melanie Benedict/CORRECTIONS@CORRECTIONS
cc

Subject
LSU Ortho @ LSP

Seeing too many requests for a F2F appts for surgeries which are non urgent and are chronic ( have been there for many years).

Q1: Did rotation occur and now there is a new resident ?

Q2: why these patients are being put ? back in Ortho and if conditions have changed then that should be reflected in the documentation sent to HQ.


Thanks

Raman Singh M.D.
Medical / Mental Health Director
Louisiana Dept. of Public Safety & Corrections
225.342.1320 ( Office)
225.342.1329 ( Fax)


Confidentiality Notice: This e-mail message from Department of Corrections, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, copying, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this e-mail from your computer, and destroy any copies in any form immediately.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOSEPH LEWIS, JR., ET
AL
                              CIVIL ACTION

                              NO. 15-318

VERSUS

                              JUDGE BAJ
                              MAG. RLB

BURL CAIN, WARDEN OF
THE LOUISIANA STATE
PENITENTIARY, ET AL




            Video Deposition of RAMAN SINGH,
M.D., taken on August 3, 2016, in the offices
of Shows, Cali & Walsh, 628 St. Louis Street,
Baton Rouge, Louisiana.

JX-CCH-000458

1    Give me one moment.  You referred to Medicaid
2    pricing a moment ago, Medicaid pricing --
3    scratch that.  You referred to medical
4    necessity a moment ago.  How does the DOC
5    define medically necessary?
6         A    That's a good question.  And it's
7    hard for DOC to define.  We let the treating
8    physician or specialist determine medical
9    necessity.  For example, if a patient has a
10   tattoo right here on his forehead saying
11   something bad and he wants that tattoo to be
12   taken out, you know, the clinician,
13   dermatologist will recommend it.  But then we
14   ask -- medically necessary is very closely
15   tied to the prioritization.  We expect
16   clinicians to use their clinical knowledge to
17   determine what is medically necessary.  I can
18   have a small ganglia, you know, which can be
19   very low priority or it's hurting me so much
20   that it becomes urgent.  So we don't have a
21   definition of medically necessity.  This term
22   is very self-explanatory, the way I see it.
23   And it's the job and responsibility of the
24   specialist or the physician who is actually
25   examining the patient to advise.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOSEPH LEWIS, JR., KENTRELL PARKER,
FARRELL SAMPIER, REGINALD GEORGE,
JOHN TONUBBEE, OTTO BARRERA, CLYDE CARTER,
CEDRIC EVANS, EDWARD GIOVANNI,
RICKY D. DAVIS, LIONEL TOLBERT, and
RUFUS WHITE, on behalf of themselves and
all others similarly situated,

         Plaintiffs         CIVIL ACTION NO. 15-318

VERSUS                     JUDGE:  BAJ

BURL CAIN, Warden of the Louisiana    MAGISTRATE:  RLB
State Penitentiary, in his official
capacity; STEPHANIE LAMARTINIERE,
Assistant Warden for Health Services,
in her official capacity; JAMES M.
LEBLANC, Secretary of the Louisiana
Department of Public Safety and
Corrections, in his official capacity;
and THE LOUISIANA STATE DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,

         Defendants


     DEPOSITION OF JASON H. COLLINS, M.D.,

given in the above-entitled cause, pursuant to

the following stipulation, before Raynel E.

Schule, Certified Shorthand Reporter in and for

the State of Louisiana, at the Law Offices of

Messrs. Shows, Cali & Walsh, 628 St. Louis

Street, Baton Rouge, Louisiana, 70802,

commencing at 9:05 o'clock a.m., on Friday, the

12th day of August, 2016.

JX-CCH-000460

```
 1        all?
 2   A.   Yeah, we sent these referrals to whatever
 3        the mechanism was at headquarters.  They
 4        took it from there.
 5   Q.   Huh-huh.
 6   A.   So every time we saw the problem, my
 7        medical team would send the referral, and
 8        that's what our job was, and that's as far
 9        as we could take it.
10   Q.   Huh-huh, huh-huh.  Who had the final say
11        over referrals?
12             MR. HILBURN:
13             Object to the form.
14   BY MR. DUBNER:
15   Q.   You can answer.
16             MR. HILBURN:
17             Subject to the objection, you can
18         answer.
19             THE WITNESS:
20             Okay.  The -- the process ended
21         with the submission of the referral.
22   BY MR. DUBNER:
23   Q.   Huh-huh.
24   A.   Beyond that, I don't know how the decisions
25        were made.
```

```
 1   Q.   Huh-huh, and when you say --
 2   A.   I wasn't privy to it.  I wasn't in the
 3        building.
 4   Q.   Huh-huh.
 5   A.   I don't know how the conversations took
 6        place.  All I know is I made sure and my
 7        medical team made sure that when we saw a
 8        problem, we defined it, evaluated it, and
 9        got it to the proper specialty area, and it
10        went from there.
11   Q.   Huh-huh, huh-huh, and so, you know, when
12        you say, "the process ended," you mean, you
13        know, for you and the treating physician?
14   A.   Right.  I mean, there was -- there was a
15        moment where the surgery residents stopped
16        coming, and they were under contract.
17   Q.   Huh-huh, huh-huh.  Sorry.  Go ahead.
18   A.   So I'm -- I'm giving you an example of how
19        these decisions went.  In other words, I
20        couldn't make LSU Surgery Department see
21        the patients.
22   Q.   Huh-huh.
23   A.   They were getting the referrals, but they
24        weren't coming to the clinics.  They just
25        stopped.
```

**SOUTHERN COURT REPORTERS, INC.**
**(504)488-1112**

JX-CCH-000462

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


HYMEL VARNADO, et al.

      Plaintiffs,              Docket No.

                           13-348-JWD-EWD

VERSUS                  Consolidated for

                     Discovery with Nos:

JAMES LEBLANC, et al,      13-490-JWD-EWD:

      Defendants.       13-673-JWD-EWD;

                     13-556-JWD-EWD.




      DEPOSITION OF KENNETH D. NORRIS, given

in the above-entitled cause, pursuant to the

following stipulation, before Sandra P. DiFebbo,

Certified Shorthand Reporter, in and for the

State of Louisiana, at the Law Offices of

Morrow, Gates & Morrow, 613 Main Street,

Opelousas, Louisiana, on the 26th day of July,

2016.

JX-CCH-000463

1    A.    Okay.

2    Q.    Look at Exhibit B.

3    A.    The first page?

4    Q.    Look at Page 2.  Look at the bottom of the

5    page.  Your response Number 5.

6    A.    Identify the reason why LSP prisoners have

7    not been referred by LSP physicians for medical

8    treatment until and unless their hernia develops

9    into an immediate and life-threatening

10   condition.  Okay.  There is an objection to it.

11   Q.    Yeah.  That's what I want to get at.  The

12   sentence says, "It is the task of the treating

13   physician."  Right there.

14   A.    "It is the task of the treating physician

15   to refer patients for surgery; however, the

16   treating physician has no control over the final

17   scheduling of the surgery."  He doesn't.  We

18   recommend this guy needs surgery, and it goes to

19   Dr. Singh's office. You know, he decides, based

20   on the doctors talking, who gets treated and who

21   don't.

22   Q.    Dr. Singh decides?

23   A.    Dr. Singh.

24   Q.    I want to ask you about that.  Go to your

25   response to number -- just look at Number 7.  I

**From:** "TAMRYAYOUNG@corrections.state.la.us"
<TAMRYAYOUNG@corrections.state.la.us@TAMRYAYOUNG@corrections.state.la.us>
**Sent:** Wed, 11 Dec 2013 20:42:00 +0000
**To:** SherwoodPoret@corrections.state.la.us, ADUPUIS@corrections.state.la.us
**CC:** MelanieBenedict@corrections.state.la.us, AmandaMayeux@corrections.state.la.us
**Subject:** screening colonscopy.

Good Afternoon,

We are still receiving requests for screening C-scopes from LSP. We have over
193 pending screening c-scopes from LSP in our box at the present time to be
scheduled.
As requested by Melanie Benedict, last week please inform your staff to stop
inputting screening colonoscopy request into ecepeptionist until DOC HQ gives
approval to resume entering for screeing c-scopes.

Please continue to enter diagnostics and we will schedule those.

Thanks so much,

Tamrya Young, RN/Corrections
Office of Mental/Medical Health Director
Office Phone: 225-342-6390
Fax Number: 225-342-7240

Lewis v. Cain - Def's Production 2 - 00056310

JX-CCH-000465