UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., *et al.*, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 3:15-cv-00318 |
| v. | JUDGE SDD |
| BURL CAIN, Warden of the Louisiana State Penitentiary, in his official capacity, *et al.*, | MAGISTRATE RLB |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SUBSTITUTE WITNESSES AND TAKE DEPOSITIONS**

NOW INTO COURT COME PLAINTIFFS, through undersigned counsel, who respectfully offer the following memorandum of law in support of their Motion for Leave to Substitute Witnesses and Take Depositions.

More than a year has passed since discovery ended and the parties identified their proposed trial witnesses. But at the class certification hearing, Defendants based much of their testimony on undocumented assertions that care at LSP has improved since the close of discovery, and have made clear that they intend to do the same at trial. In response, Plaintiffs have sought to ensure that they will not be prejudiced if the Court entertains this testimony. As part of those efforts, and to reduce the burden on Defendants of preparing for trial, Plaintiffs offered to drastically reduce the number of absent class member witnesses on their trial list, in exchange for replacing just 5 of the roughly 19 class member witnesses who have left LSP since they were first identified in the Joint Pretrial Order ("JPTO") over a year ago. Defendants rejected this proposal, even though it would significantly reduce their burden in preparing for trial. Plaintiffs will be unfairly prejudiced if they are unable to

1

partially offset the loss of nearly half the class member witnesses capable of testifying regarding the current conditions at LSP. In contrast, there will be no prejudice to Defendants if substitution is permitted, as Defendants have not even noticed depositions any of the 55 class member witnesses since learning their identities in February 2017.

Additionally, Plaintiffs recently learned that the Defendant Department of Corrections ("DOC") suspended Dr. Raman Singh, a defendant and the DOC's statewide Medical Director, prior to the class certification hearing, and terminated him just two weeks after the hearing. Defendants opted not to inform Plaintiffs of this development or of related changes to their supervisory structures for months. After Plaintiffs learned of Dr. Singh's removal, they asked Defendants to make available for deposition Nurse Stacye Falgout and Dr. Pamela Hearn, who have jointly assumed Dr. Singh's duties. Given the key role the statewide Medical Director plays in overseeing and administering health care at LSP, Defendants' intent to present evidence of current conditions at the prison, and Defendants' failure to inform Plaintiffs of this major development, Plaintiffs must be given a fair opportunity to examine the individuals who took over Dr. Singh's duties and have been overseeing medical care for the past five months.

## BACKGROUND

### I. Facts Related to Substitution of Witnesses

This case has been pending since May 20, 2015. The parties completed fact discovery on September 30, 2016, with limited exceptions for a small number of outstanding discovery requests. Rec. Doc. 129. In advance of a trial originally scheduled for May 2017, the parties filed the original JPTO on February 27, 2017, Rec. Doc. 222, and a First Amended JPTO on April 23, 2017, Rec. Doc. 242. Attached to each order was Plaintiffs' witness list, which identified 55 absent class

members as potential witnesses, 49 of whom remained at LSP as of April 2017. Rec. Doc. 222-5 at 2-4; Rec. Doc. 242-7 at 2-4.

At the November 1-2 class certification hearing, Defendants elicited testimony regarding changes that allegedly have occurred at LSP since the close of discovery. *See* Ex. A (Nov. 2 Tr.) at 17:7-19:22, 31:19-37:24. Following the hearing, Plaintiffs indicated to Defendants that they would need supplemental discovery regarding the current conditions at LSP if Defendants intended to introduce evidence at trial of post-discovery changes, and they negotiated a list of specific discovery requests that required supplementation. *See* Ex. B (Dec. 22, 2017 Email from A. Boozer to Defense Counsel). Defendants began producing supplemental discovery on a rolling basis on January 26, 2018. *See* Ex. C (Jan. 26, 2018 Email from J. Conine to J. Dubner).

During a December 27, 2017 meet and confer, Defendants asked whether Plaintiffs would consider removing the 19 absent class member witnesses who were no longer at LSP from Plaintiffs' witness list. In response, on January 16 and in a follow-up email on January 18, Plaintiffs offered to cut the list of potential witnesses to 25—reducing it by more than half—provided that they could substitute in five new class members for the 30 they were removing. *See* Ex. D (Jan. 18, 2018 Email from J. Dubner to Defense Counsel). Defendants indicated that they would consider Plaintiffs' proposal, and requested that Plaintiffs wait for a response until after the class certification ruling. *See* Ex. E (Feb. 15, 2018 Email from J. Dubner to Defense Counsel). On February 27, Defendants informed Plaintiffs that they would not agree to substitution. *See* Ex. F (Feb. 27, 2018 Email from R. Robert to M. Montagnes).

**II. Facts Related to Depositions of Ms. Falgout and Dr. Hearn**

When this case was filed and through the close of discovery, Defendant Raman Singh was the DOC's statewide Medical Director. In the evidence amassed during discovery, Defendants'

3

testimony, and the parties' filings, Dr. Singh played a major role. As an illustration of Dr. Singh's significance in this case, he was an author or recipient of six of the seven documentary exhibits presented in Plaintiffs' opening statement at the class certification hearing, *see* Ex. G (Nov. 1 Tr.) at 24:14-27:21, and was referred to numerous times by Defendants' witnesses, *see, e.g.*, Ex. H (Nov. 2 Tr.) at 47:3-10, 57:16-21, 58:15-59:15, 70:20-24. Indeed, as late as October 25, 2017, Defendants intended to call Dr. Singh as one of just two fact witnesses at the class certification hearing. *See* Rec. Doc. 305 (Defendants' Motion to Continue Evidentiary Hearing on Motion for Class Certification) at 1; Ex. I (Oct. 26, 2017 Email from J. Conine to Plaintiffs' Counsel).

Less than a week before the hearing, however, Defendants informed Plaintiffs that they would be "calling Stacye Falgout in place of Dr. Singh at the upcoming hearing." *See* Ex. I. Ms. Falgout, a defendant in this case, was at the time the DOC's Chief Nursing Officer, as far as Plaintiffs knew. She had previously testified that she "answer[s] to Dr. Singh" and was his "No. 2 in the headquarters realm." *See* Ex. J (Sept. 19, 2016 Deposition of S. Falgout) at 13:15-18.

Defendants did not tell Plaintiffs then—and, indeed, never informed Plaintiffs—that the DOC had placed Dr. Singh on involuntary leave pending investigation on October 23, 2017, or that they then fired him two weeks after the class certification hearing. *See* Ex. K (Petition for Declaratory Judgment and for Damages, *Raman Singh v. State of Louisiana*, No. 663773, 19th Judicial Dist. Ct.) at ¶¶ 19, 25. Nor did they tell Plaintiffs that aspects of their testimony and DOC's centralized management of medical care had changed nine months earlier, with Defendant Falgout no longer "answer[ing] to Dr. Singh." Ex. J; *see* Ex. K at ¶ 4 ("On February 3, 2017, defendant LeBlanc transferred defendant Falgout under his direct supervision and reporting only to defendant LeBlanc.").

On January 16, Plaintiffs informed Defendants that they had learned that Dr. Singh was no longer serving as Medical Director. *See* Ex. D. Plaintiffs requested the name of the individual who had replaced Dr. Singh and were told that Ms. Falgout had taken over his administrative duties, while Dr. Pamela Hearn, a physician at a different DOC facility, had assumed his medical responsibilities. *See id.* The following Monday, January 22, Plaintiffs informed Defendants that they wished to depose Ms. Falgout and Dr. Hearn in light of the fact that they had replaced a former Defendant and assumed a significant role with respect to LSP's medical care. *See* Ex. L (Jan. 22, 2018 Email from J. Dubner to Defense Counsel). The parties conferred on this issue, but Defendants ultimately refused to make Ms. Falgout and Dr. Hearn available for deposition. *See* Ex. M (Mar. 7, 2018 Email from J. Conine to J. Dubner).

## LAW AND ARGUMENT

It is a "fundamental rule in our jurisdiction" that "a district court possesses broad discretion in its supervision of discovery." *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1224 (5th Cir. 1987). That includes the discretion to permit the identification of new witnesses after the close of discovery, as well as to reopen discovery in order to prevent undue prejudice to any party. *See, e.g.*, *Gonzalez v. Tex. HHS Comm'n*, No. 5: 13-CV-183-DAE, 2014 U.S. Dist. LEXIS 161706, at *33 (W.D. Tex. Nov. 19, 2014) (reopening discovery to permit the deposition of a witness who was not disclosed by the opposing party prior to the close of discovery). Since the evidentiary hearing, the parties have worked together in good faith without the Court's intervention to supplement discovery with the understanding that Defendants intend to introduce evidence of LSP's current conditions at trial.[1] While Defendants have agreed to supplement their responses to numerous document requests,

---

[1] While Plaintiffs have been working to obtain discovery that would assist them in verifying or disputing Defendants' post-discovery-period testimony, they reserve the right to object to introduction of evidence or testimony that postdates the discovery period.

5

they inexplicably have refused two reasonable requests that would neither prejudice Defendants nor cause delay. It is well within the Court's discretion to permit the requested substitutions and depositions.

In light of Defendants' intent to introduce evidence of post-discovery changes in the delivery of medical care at LSP, Plaintiffs must be able to call upon witnesses who continue to be members of the class and who can speak to their experiences in seeking medical care *after* the close of discovery. Through no fault of Plaintiffs, but rather as an inevitable result of the passage of time, at least 19 of the 49 class members who were incarcerated at LSP as of the filing of the JPTO can no longer testify regarding the current conditions at LSP.[2] Plaintiffs offered to cut the list of witnesses from 55 to 25 in exchange for the ability to substitute five new class members who could provide testimony regarding recent experiences in seeking medical care at LSP. As Defendants have not yet attempted to depose a single one of the 55 class members disclosed over a year ago, they would not be prejudiced in any way by the substitution. If anything, Plaintiffs' proposal *reduces* the burden on Defendants, considering that Plaintiffs offered to eliminate 30 class members from their witness list. Given the absence of any conceivable prejudice, it is unclear what basis Defendants may have for their refusal to permit substitution other than a desire to limit Plaintiffs' ability to present witnesses capable of responding to their claims of a new and improved system of medical care.[3] Defendants do not have an unqualified right to present evidence of conditions outside the discovery period. *See, e.g., Brown v. Plata*, 563 U.S. 493, 523 (2011) (affirming decision of a three-judge panel that evidence

---

[2] Indeed, in some cases these witnesses may be entirely unavailable, as Plaintiffs have not been able to locate all released witnesses, and some may have passed away. And of those who remain at LSP, not all have sought medical care in the last year.

[3] As the Court noted in denying Defendants' motion in limine to exclude the absent class member witnesses, "Defendants were on notice [prior to the discovery deadline] that any LSP inmates from 2012 to present were possible witnesses." Rec. Doc. No. 343 at 3.

6

of "changed prison conditions" after the cutoff for discovery would not be admitted). If Defendants intend to do so, there is no justification for preventing Plaintiffs from doing the same, given the ample notice Plaintiffs have provided and the opportunity to conduct depositions on the exact same terms as all other absent class member witnesses.

Likewise, Defendants have failed to provide any justification for their refusal to make Ms. Falgout and Dr. Hearn available for deposition. Without deposing these individuals, Plaintiffs cannot evaluate their qualifications, division of responsibilities, or involvement in the delivery of healthcare to class members, or any affect that their takeover of Dr. Singh's duties might have on the provision of medical care. To the extent Defendants intend to argue that conditions have changed at LSP since Dr. Singh's removal, Plaintiffs must be given the opportunity to probe his successors' credentials, duties, and practices. Moreover, the taking of two depositions presents no danger of delay, as no trial date has been set and Defendants apparently still intend to take as many as 55 depositions of Plaintiffs' absent class member witnesses.[4] To the extent that there is any inconvenience to Defendants, it owes entirely to their failure to timely inform Plaintiffs of this significant change to the identity of the Defendants and the management of the health care system.

Accordingly, given the extraordinary circumstances of Dr. Singh's recent termination and the impossibility of inquiring into Ms. Falgout's and Dr. Hearn's current roles during the discovery period, Plaintiffs respectfully submit that exceptional circumstances exist to allow these selected additional depositions after the close of fact discovery pursuant to Local Rule 26(d)(1).

---

[4] Defendants have indicated that they may soon hire a permanent replacement for Dr. Singh, in which case a deposition of that individual would be appropriate as well. However, given that that person would be starting now, and would not have Ms. Falgout's and Dr. Hearn's actual experience working with LSP over the past several months, depositions of Ms. Falgout and Dr. Hearn would still be necessary.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them leave to amend the Joint Pretrial Order to substitute five witnesses and to take the depositions of Stacye Falgout and Dr. Pamela Hearn.

Respectfully submitted by:

/s/ *Mercedes Montagnes*
Mercedes Montagnes, La. Bar No. 33287
Amanda Boozer (*pro hac vice*)
Nishi Kumar, La. Bar No. 37415
The Promise of Justice Initiative
636 Baronne Street
New Orleans, LA 70113
Telephone: (504) 529-5955
Facsimile: (504) 558-0378
Email: mmontagnes@thejusticecenter.org

Jeffrey B. Dubner (*pro hac vice*)
P.O. Box 34553
Washington, DC 20043
Telephone: (202) 656-2722
Email: Jeffrey.dubner@gmail.com

Daniel A. Small (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: dsmall@cohenmilstein.com

Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile: (888) 534-2996
Email: bhamilton@laaclu.org

Miranda Tait, La. Bar No. 28898

                                              Advocacy Center
                                              600 Jefferson Street, Suite 812
                                              Lafayette, LA 70501
                                              Telephone: (337) 237-7380
                                              Facsimile: (337) 237-0486
                                              Email: mtait@advocacyla.org

                                              *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

Dated : March 15, 2018          */s/ Mercedes Montagnes*
                                             Mercedes Montagnes