# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., ET AL. | CIVIL DOCKET |
| VERSUS | 15-318-SDD-RLB |
| BURL CAIN, ET AL. | |

### RULING

This matter is before the Court on Plaintiffs' *Emergency Motion to Re-open Discovery Regarding COVID-19*,[1] *Motion for Expedited Consideration on Emergency Motion for Discovery*,[2] and Plaintiff's *Emergency Motion to Restrain Defendants from Transferring COVID-19 Carriers to Louisiana State Penitentiary*,[3] to which Defendants filed an *Opposition*.[4] Plaintiffs' *Motion for Expedited Consideration on Emergency Motion for Discovery*[5] is granted; however, Plaintiff's substantive motions shall be denied.

**I.    BACKGROUND**

This suit was originally brought by several inmates incarcerated at the Louisiana State Penitentiary ("LSP"). The LSP at Angola (sometimes referred to as "Angola") is a maximum-security men's prison in Angola, Louisiana that housed between 6200-6400 men throughout the discovery period.[6] In part, Plaintiffs claim that the medical care

---

[1] Rec. Doc. No. 580.
[2] Rec. Doc. No. 581.
[3] Rec. Doc. No. 582.
[4] Rec. Doc. No. 585.
[5] Rec. Doc. No. 581.
[6] Undisputed Facts ("UF") ¶ 1, First Amended Joint Pretrial Order ("JPTO"), Rec. Doc. 242-2; PX 6 at 0017; DX 14 at 02876.
Document Number: 59799

provided at LSP violates the Eighth Amendment prohibition of cruel and unusual punishment. Following a class certification hearing, the Court certified a class consisting of "all inmates who [are] now, or will be in the future, incarcerated at LSP." [7]

This matter came before the Court for an eleven-day non-jury trial on the merits beginning October 9, 2018.[8] The Court allowed the Parties to submit post-trial briefs, and on February 5, 2020, the undersigned conducted a site visit to LSP to observe various medical facilities and dormitories.[9] On February 21, 2020, the Court issued an *Order* advising the Parties that it is prepared to find that the medical care at LSP is unconstitutional in some respects and is prepared to order injunctive relief addressing conditions which the Court finds unconstitutional. The Court also encouraged the Parties to attempt to reach an amicable resolution on some or all claims.[10]

## II. PENDING MOTIONS

Plaintiffs now seek to "reopen discovery in this matter given the imminent and dangerous threat that the coronavirus ("COVID-19") poses to Plaintiffs and Class members."[11] Citing the large population of LSP inmates suffering from serious health conditions, and the constitutionally deficient medical care provided by LSP in some respects, Plaintiffs maintain that emergency discovery is necessary because:

> The question therefore is not *if* or even *when* COVID-19 will strike Angola. Rather, the crucial question that must be addressed immediately is: I*s Angola taking proper measures to deal with this imminent and deadly virus and, if not, how many Class members will get sick, suffer serious complications, and die from COVID-19?*[12]

---

[7] Rec. Doc. 394, p. 30.
[8] Rec. Doc. No. 520.
[9] Rec. Doc. No. 576.
[10] Rec. Doc. No. 578.
[11] Rec. Doc. No. 580-1, p. 1.
[12] *Id.* at p. 3 (emphasis in original).
Document Number: 59799

Plaintiffs contend discovery is necessary because counsel has inquired about the health of Plaintiffs and LSP's plan to combat the COVID-19 pandemic, yet Plaintiffs find Defendants to be largely unresponsive. While Defendants provided Plaintiffs with a Continuity of Operations Plan and a Pandemic Flu Plan on March 25, 2020, Plaintiffs complain that neither document specifically references COVID-19. Further, Plaintiffs argue that Defendants' e-mail provided a "bullet point summary" of some precautionary measures allegedly being implemented at LSP, such as restricting movement, modifications to pill call procedures, the provision of testing for symptomatic staff and patients, screening of staff, and provision of free soap, but Defendants have explicitly refused to meet and confer with Plaintiffs.[13] Finding that the DOC's COVID-19 guidance failed to address a number of critical issues, Plaintiffs again requested to meet with Defendants, which they refused and prompted Plaintiffs' motions.

Plaintiffs have also moved the Court to enter a temporary restraining order ("TRO") enjoining the Defendants from enacting a plan to transfer to LSP inmates who are COVID-19 carriers from state and local facilities across Louisiana. Plaintiffs claim that Defendants

> are about to embark on a course of action that will likely result in the death of dozens if not hundreds of Class members. According to multiple press reports, Defendants intend to transfer persons with COVID-19 from prisons and jails throughout Louisiana to the Louisiana State Penitentiary at Angola ("LSP"). But LSP has "no place to treat an ill person with COVID-19 except in a general housing unit or on the infirmary, both of which would expose other patients to infection." And even if Defendants could somehow isolate the transferred inmates while treating their condition, LSP's inappropriate policy on staff who may have contracted COVID-19 makes it likely that staff would transmit the virus to other staff and to the general population of LSP.

---

[13] *Id.* at pp. 3-4.
Document Number: 59799

> In such settings, transmission to large numbers of Class members is inevitable.[14]

Plaintiffs further claim that the evidence presented the 2018 bench trial in this case established that LSP "has a uniquely high number of inmates who are elderly, immuno-compromised, or disabled, or have cardiac, pulmonary, or cardiovascular conditions—individuals who are at particularly high risk for severe or even fatal consequences if they contract COVID-19."[15] Plaintiffs argue that, if Defendants "intentionally bring carriers of COVID-19 to LSP and treat them in the infirmary—the only place at LSP where even moderate cases of COVID-19 could conceivably be treated—'the infection is likely to spread throughout this unit of compromised patients,' just like 'nursing homes where COVID is known to have caused significant death.'"[16] Plaintiffs claim that Defendants "will be intentionally and willfully exposing the most vulnerable people in the entire DOC system to an unconscionably high risk of death or serious harm."[17] Thus, Plaintiffs request the Court enter a TRO preventing Defendants from "knowingly transferring patients with COVID-19 to LSP" until a preliminary injunction hearing may be held.[18]

Defendants oppose Plaintiffs' motion for a TRO, arguing that the Louisiana Department of Corrections ("DOC") and LSP have taken steps to protect both offenders and staff from the COVID-19 pandemic. Defendants submit details regarding the efforts it has taken in this regard:

> In response to the COVID-19 pandemic, DOC has a developed a plan to protect the health and safety of all offenders within the DOC system. As part of its infection control program, DOC's Influenza and Pandemic Viral

---

[14] Rec. Doc. No. 582-1, p. 1 (footnotes omitted).
[15] *Id.* at pp. 1-2.
[16] *Id.* at p. 2 (quoting Supplemental Declaration of Dr. Michael Puisis, ¶ 10).
[17] *Id.*
[18] *Id.* at p. 3.

Document Number: 59799

Outbreaks regulation provides a formal policy and procedure concerning the planning, preparation, and management of a pandemic viral disease or an influenza outbreak. DOC recognized that a pandemic or an influenza outbreak may not follow an expected course and may present new challenges. DOC activated this regulation to the highest level, and DOC facility plans have been customized specifically to address COVID-19.

Pursuant to the DOC regulation, each state prison has implemented a thorough and detailed Continuity of Operations Plan ("COOP"), which have been reviewed by DOC Headquarters Medical/Operations. DOC is coordinating with the Governor's office and other state agencies to stay up to date on all COVID-19 related issues, developments, and discussions. Secretary LeBlanc has engaged in daily phone calls with the Unified Command Group headed by the Governor. He along with all other Cabinet Secretaries, participate in these phone calls. DOC is actively involved in the statewide management and response through the Governor's Office of Homeland Security and Emergency Preparedness. Moreover, DOC leadership has conference calls every Monday, Wednesday, and Friday with all Wardens, Louisiana State Police, and the Louisiana Sheriffs Association. These phone calls discuss updates from each institution, medical reports and updates, institutional reports, and strategy for continued management related to COVID-19.[19]

Defendants maintain that they have been proactive in the fight against the COVID-19 pandemic and the DOC is following the guidelines of the United States Centers for Disease Control and Prevention ("CDC"). The DOC has obtained from the Louisiana Department of Health ("LDH") COVID-19 test sample collection kits, which have been issued to all prison facilities, and Defendants described the plan for testing criteria. Defendants explain that:

Personal Protective Equipment ("PPE") has been distributed to staff and offenders, as needed. DOC has issued COVID-19-specific guidelines and trained all state prisons regarding screening, isolation, quarantine, housing, proper use of PPE, and precautionary measures. These guidelines are revised and updated as the CDC issues new information. Each DOC facility has quarantine and isolation capabilities, which are used as needed. DOC has implemented daily tracking of all inmate influenza and COVID-19

---

[19] *Id.* at pp. 2-3 (footnotes omitted).
Document Number: 59799

testing at each facility and delivers the COVID-19 test samples to LDH for laboratory testing.[20]

Defendants go on to describe the specific ways LSP is implementing the guidelines and safety measures at Angola.

### III. ANALYSIS

The Court need not reach the merits of the requirements for a TRO because the Court finds that Plaintiffs' requests are improper given the procedural posture of this case. This request for emergency relief is not justiciable within the present matter. The discovery and relief Plaintiffs seek is beyond the scope of the claims asserted and tried before the Court. Moreover, Plaintiffs cite no authority for the proposition that they can join what the Court views as an independent claim to a case that has been tried and is presently under submission. Furthermore, the Court finds that Plaintiffs' motion is based primarily on speculation and conjecture, citing to news reports and what the DOC "might" do with respect to transferring inmates.

Accordingly, Plaintiffs' *Motion for Expedited Consideration on Emergency Motion for Discovery*[21] is GRANTED. Plaintiffs' *Emergency Motion to Re-open Discovery Regarding COVID-19*[22] and Plaintiff's *Emergency Motion to Restrain Defendants from Transferring COVID-19 Carriers to Louisiana State Penitentiary*[23] are DENIED.

Signed in Baton Rouge, Louisiana on April 2, 2020.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[20] *Id.* at p. 5 (footnotes omitted).
[21] Rec. Doc. No. 581.
[22] Rec. Doc. No. 580.
[23] Rec. Doc. No. 582.
Document Number: 59799