UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., ET AL. | CIVIL DOCKET |
| VERSUS | 15-318-SDD-RLB |
| BURL CAIN, ET AL. | |

**RULING**

This matter is before the Court on Defendants' *Motion for Reconsideration or, in the Alternative, to Certify Ruling for Interlocutory Appeal.*[1] Plaintiffs have filed an *Opposition*[2] to this motion. For the following reasons, Defendants' *Motion* is denied.

**I.    BACKGROUND**

Following an eleven-day bench trial[3] in this matter, post-trial briefing, and a site visit by the undersigned, the Court entered a *Ruling*[4] on March 31, 2021, finding Defendants liable for deliberate indifference to the serious medical needs of all inmates housed at Louisiana State Penitentiary ("LSP" or "Angola") in the manner and means of the systemic delivery of health care, in violation of the Eighth Amendment to the United States Constitution. The Court also found Defendants liable for violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") as to disabled inmates, in some respects. The Court specifically noted that it would not enter injunctive relief until

---

[1] Rec. Doc. No. 603.
[2] Rec. Doc. No. 582.
[3] Rec. Doc. No. 536.
[4] Rec. Doc. No. 594.
69475

the conclusion of a remedy phase and that evidence of subsequent improvements/changes would be credited to Defendants, where demonstrated.[5]

Defendants have moved for reconsideration of the Court's *Ruling*, arguing that the Court improperly based its Eighth Amendment findings on stale and outdated evidence. Defendants list several patients referenced by the Court who received treatment going back to 2013, in some instances.[6] Defendants contend the Court did not consider any evidence beyond September 30, 2016, two years before the trial began.[7]

Alternatively, Defendants ask the Court to certify its *Ruling* for interlocutory appeal.

## II. MOTION FOR RECONSIDERATION

Although it has been noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[8] the Fifth Circuit has "consistently recognized that such a motion may challenge a judgment or order under the Federal Rules of Civil Procedure 54(b) [or] 59(e) . . . ."[9] The Court finds that, because the challenged *Ruling* is not a final judgment, Rule 54(b) is the proper standard to apply.[10]

Rule 54(b) provides that:

[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

---

[5] *Id.* at 122; *see also* Rec. Doc. No. 419 at 3.
[6] Rec. Doc. No. 603-1 at 2-3.
[7] *Id.* at 3.
[8] *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167,173 (5th Cir. 1990).
[9] *Lightfoot v. Hartford Fire Ins. Co.*, 2012 WL 711842, *2 (E.D. La. 2012).
[10] See *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336 (5th Cir. 2017)("Because the district court was not asked to reconsider a judgment, the district court's denial of Austin's motion to reconsider its order denying leave to file a surreply should have been considered under Rule 54(b)").
69475

Accordingly, under Rule 54(b), "a court retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole."[11] Compared to the "stricter"[12] analysis required by Rule 59(e), "[d]istrict courts have considerable discretion in deciding whether to reconsider an interlocutory order"[13] under 54(b). "However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays."[14] Therefore, "rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration."[15] "There are three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."[16]

Defendants ostensibly argue that the Court committed manifest error by failing to follow the principles set forth in *Valentine v. Collier.*[17] In *Valentine*, inmates at state geriatric prison filed an action against prison officials, alleging that prison officials' failure to implement adequate protections against transmission of COVID-19 violated the Eighth Amendment under § 1983, the ADA, and the RA.[18] The matter proceeded to a bench trial as a class action and resulted in the district court entering a permanent injunction. The defendants appealed, and the Fifth Circuit reversed the district court and vacated the

---

[11] *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002).
[12] *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Loc. 198,* 495 F. Supp. 3d 392, 395 (M.D. La. 2020).
[13] *Keys v. Dean Morris, LLP*, 2013 WL 2387768, *1 (M.D. La. 2013).
[14] *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 564–65 (E.D. La. 2013).
[15] *State of La. v. Sprint Communications Co.*, 899 F. Supp. 282, 284 (M.D. La. Sept. 8, 1995).
[16] *J.M.C. v. Louisiana Bd. of Elementary and Secondary Educ*, 584 F. Supp. 2d 894, 896 (M.D. La. 2008) (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988)).
[17] 993 F.3d 270 (5th Cir. 2021).
[18] *Id.*
69475

injunction. The court noted that, "'[a] permanent injunction is appropriate only if a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions.'"[19]  Defendants herein particularly rely on the following principles articulated in *Valentine*:

> When there is a possible constitutional violation that is likely to continue over time as in a prison injunction case, we consider the evidence from the time suit is filed to the judgment. Deliberate indifference is determined based on prison officials' "current attitudes and conduct." The evidence must show over the course of the timeline that officials "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future."[20]

Defendants contend all the findings of this Court are based on evidence predating September 30, 2016; thus, holding that Plaintiffs are entitled to injunctive relief based on evidence that is now outdated fails to satisfy the requirements of *Valentine* for the issuance of injunctive relief.

First, the Court does not find that *Valentine* is particularly applicable to the facts of this case.  While the *Valentine* court *did* address a deliberate indifference claim regarding the health care being provided by the prison, it was entirely within the context of the prison's response to ever-changing health guidelines, CDC regulations, and recommendations in response to the novel COVID-19 pandemic sweeping through the country.  Further, in *Valentine*, there was evidence before the district court that prison officials were trying to respond to the rapid changes in general and prison health guidelines for addressing the pandemic.  There was no evidence that the prison officials

---

[19] *Id.* at 280 (quoting *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (internal quotations omitted) (cleaned up).
[20] *Id.* at 282 (internal citations omitted).
69475

ignored the risk of COVID-19; thus, the Fifth Circuit reversed the district court and found that there was no evidence of deliberate indifference.

In the Court's view, the established facts and the conduct on the part of prison officials in *Valentine* are vastly different from the facts of the present case, where unlike *Valentine*, this Court has not issued injunctive relief and has consistently stated that it would consider the current state of circumstances at LSP in crafting satisfactory injunctive relief.  Defendants' claim that injunctive relief crafted by this Court will be based on outdated evidence is demonstrably wrong.  In its bifurcation order, the Court found that bifurcation of liability and injunctive relief, along with "limiting the historical scope of the evidence on liability" to "**evidence of the conditions as they existed on or before September 30, 2016,**"[21] was a "reasonable response to the problems and needs confronting the court's fair administration of justice."[22]

Further, the Court did not solely base its liability findings on the patients mentioned in Defendants' motion.  The *Ruling* speaks for itself as to the breadth of evidence the Court considered.  But particularly, the Court found Plaintiffs' experts - Dr. Puisis, Nurse LaMarre, and Dr. Vassallo - to be highly credible and persuasive, and their expert reports were admitted into evidence.  Their testimony and reports included discussion of these patients, and numerous others, but the experts' testimony and reports did not solely rely upon patient records.  These experts made site visits to LSP, observed the current conditions and operations, and applied applicable national standards to their observations in reaching their conclusions about the health care system at LSP.  The massive

---

[21] This date was the close of the discovery period.
[22] Rec. Doc. No. 419 at 3 (quoting *Degen v. United States*, 517 U.S. 820, 823–824 (1996)(emphasis added).
69475

evidentiary documents together with eleven days of live testimony presented at trial encompassed incidents well within the discovery period, and the totality of all the evidence submitted in this case formed the basis for the Court's findings. Indeed, the Court made numerous findings regarding its evaluation of the "current" management of the delivery of health care at LSP by Dr. Randy Lavespere. The Court considered, *inter alia*, evidence of the "current" staffing numbers, medication administration, use of inmate orderlies, budgeting, credentialing, peer review, and mortality review, based on documents offered and admitted by both Parties and the live testimony regarding the current state of health care at LSP leading up to and at the time of trial. The Court's liability findings were based on evidence of the "current attitudes and conduct" of LSP officials at the time of trial. The Court found, based on Dr. Lavespere's general testimony, that he saw no problems with his management of health care at LSP from an administrative standpoint or the actual care being provided to sick inmates. The Court also performed a site visit, at the request of *both* Parties, months after completion of the bench trial, and observed no changes to some of the areas of concern (medical records and acute care services being two). Thus, the Court reasonably concluded from the evidence before it that unconstitutional practices were likely to continue.

Additionally, reference to evidence before the discovery period was also necessary to evaluate the subjective knowledge requirement and to determine whether an ongoing pattern existed and continued into the time period to be addressed at trial. The Court referenced evidence going back to 1989. Obviously, the historical evidence of long-standing problems with the health care system at LSP will not be used in fashioning injunctive relief; it was nevertheless an important factor in the Court's determination of

69475

Defendants' subjective knowledge of the serious risks of harm presented in the delivery of health care at LSP for decades before and up to the time of trial.

Accordingly, the Court denies Defendants' *Motion for Reconsideration*.

## III.    INTERLOCUTORY APPEAL

Alternatively, Defendants ask this Court to certify its *Ruling* for interlocutory appeal under 28 U.S.C. § 1292(b), which provides that a district judge may certify an order for interlocutory appeal to the Circuit Court of Appeals when: (1) the order involves "a controlling question of law," (2) there is "substantial ground for difference of opinion" on the question presented, and (3) an immediate appeal would "materially advance the ultimate termination of the litigation."[23]    A district court cannot certify an order for interlocutory appeal unless all three criteria are present.[24]    In determining whether certification is appropriate, the Court is mindful that interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment."[25]

Indeed, courts in this district have held that, "[a] substantial ground for difference of opinion 'usually only arises out of a genuine doubt as to the correct applicable legal standard relied on in the order.'"[26]    Furthermore, "'[a]n interlocutory appeal assuredly does not lie simply to determine the correctness of a judgment.'"[27]    Finally, "[d]isagreement with the district court's ruling is insufficient to establish a substantial ground for a difference of

---

[23] 28 U.S.C. § 1292(b).
[24] *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n. 2 (5th Cir.1981) ("Section 1292(b) sets out three criteria all of which must be met before the district court may properly certify an interlocutory order for appeal.").
[25] *David v. Signal Intern, LLC*, 37 F.Supp.3d 836, 839 (E.D. La. 2014)(citing *Clark–Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68–69 (5th Cir.1983)).
[26] *United States v. Louisiana Generating, LLC*, No. 09-100-JJB, 2012 WL 4588437 (M.D. La. Oct. 2, 2012)(quoting *Property One, Inc. v. USAgencies, L.L.C.*, 830 F.Supp.2d 170, 182-83 (M.D. La. 2011).
[27] *Id*. at *2, quoting *Clark-Dietz*, 702 F.2d at 69).
69475

opinion."[28]

The Court finds that Defendants have not satisfied these requirements. In the Court's view, Defendants simply disagree with the Court's weighing of the evidence and credibility of witnesses in reaching its conclusions regarding liability. Because the Court determines that Defendants wish to "simply determine the correctness" of the Court's *Ruling*, the *Motion* seeking certification of the *Ruling* for interlocutory appeal is also DENIED.

## IV. CONCLUSION

For the reasons set forth above, Defendants' *Motion for Reconsideration or, in the Alternative, to Certify Ruling for Interlocutory Appeal*[29] is DENIED. Plaintiffs' *Motion for Status Conference*[30] to discuss the remedy phase in this matter is GRANTED. A status conference is set for 12/15/2021 at 2:00 p.m. in Courtroom 3. Counsel are advised that the use of masks and social distancing shall be required during this conference, and counsel should familiarize themselves with all COVID-19 protocols implemented by this Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>October 8, 2021</u>.

*/s/ Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[28] *Id.*, citing *Ryan v. Flowserve Corp.*, 444 F.Supp.2d 718, 724 (N.D. Tex. 2006).
[29] Rec. Doc. No. 603.
[30] Rec. Doc. No. 605.
69475