UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BURL CAIN, Warden of the Louisiana State Penitentiary, in his official capacity, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 3:15-cv-318<br><br>JUDGE SDD<br><br>MAGISTRATE RLB |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS**

Under Federal Rule of Civil Procedure 37, Plaintiffs move the Court to sanction Defendants for their failure to produce complete medical records in accordance with the Court's Order dated February 17, 2022, requiring Defendants to produce "complete medical records" necessary for Plaintiffs' experts to conduct a reliable assessment of medical care at Louisiana State Penitentiary ("LSP") during the remedy phase discovery period by February 25, 2022. Rec. Doc. 645 at 2, 11, 15. Defendants are in violation of the Order because the production will not be complete until nearly a month after the Court's deadline.

Specifically, Plaintiffs move for an order ordering Defendants to pay Plaintiffs' experts' fees for the time they will spend re-reviewing charts they had completed before being notified—over two weeks after initially asking—that the records were incomplete and would be supplemented the following week. Additionally, Plaintiffs seek leave of Court to supplement the medical expert report with their findings after reviewing the supplemental records. Plaintiffs request that they be permitted

1

to submit these supplements to the expert report fifteen days after the current deadline of April 18, 2022.[1]

**I.    Background**

This is a class action case involving the unconstitutional medical care provided at LSP as well as violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") at the prison. Prior to the trial date in 2018, this Court bifurcated the case into "separate liability and remedial phases."[2] The liability trial was held in October of 2018, and this Court issued a ruling on March 31, 2021, holding "that the Defendants, in their official capacities, are violating the Eighth Amendment rights of the Plaintiff Class and the ADA and RA rights of the Plaintiff Subclass" and "[b]ased on the overwhelming evidence presented at trial," that "judgment shall be entered in favor of Plaintiffs following the remedy phase."[3] On December 15, 2021, this Court held a status conference to discuss the remedy phase of the litigation and to set deadlines for discovery and dates for the remedy hearing.

Prior to the deadline for Written Fact Discovery, Plaintiffs served upon Defendants four sets of Requests for Production of Documents and three sets of Interrogatories. Plaintiffs propounded their First Set of Requests for Production ("RFPs") to Defendants on December 10, 2021. Rec. Doc. 640-2.[4] As they did during the Liability Phase, Plaintiffs requested documents sufficient to identify

---

[1] Fifteen days is the amount of time between Defendants' representation that there would be no further supplement, *see* Ex. C [March 8, 2022 Email from Randy Robert] ("We do not intend to provide anything beyond the voluminous documents already provided."), and the day Defendants have indicated they will produce the new records. *See* Ex. B [March 18, 2022 Email from Jeff Cody] (indicating the EMARs would be produced on March 23, 2022).
[2] Rec. Doc. 419 at 3.
[3] Rec. Doc. 594 at 122.
[4] Plaintiffs propounded this discovery request in advance of the December 15, 2021 status conference to ensure their experts would have the factual materials they needed, even though Plaintiffs' outreach to Defendants about updating the factual record had previously been met with rejection, or no response at all. *See* Rec. Doc. 640-1 [April 16, 2021 Email from Nishi Kumar, April 20, 2021 Email from Randy Robert, November 9, 2021 Email from Nishi Kumar, November 10, 2021 Email from Randy Robert, and November 30, 2021 Email from Nishi Kumar].

Class members who had died or been hospitalized, along with autopsy reports and death reviews. Defendants produced these documents on January 10, 2022. Based on those records, Plaintiffs' experts identified 67 class members whose medical records they wished to review for their Remedy Phase record review. Plaintiffs served a request for the "[c]omplete medical records" of these class members on January 18, 2022. *See* Ex. A at 6. Plaintiffs asked for a rolling production of the medical records given the tight timelines, offered "to discuss the records requests and logistics around production," and urged Defendants to "reach out sooner rather than later about the feasibility of completing production by the [February 18, 2022] discovery cutoff date." Rec. Doc. 640-3 at 1 [January 18, 2022 Email from Nishi Kumar].

Defendants filed a motion for protective order, and the Parties submitted briefing related to the number and method of selection for the 67 medical records requested by Plaintiffs. *See* Rec. Docs. 636, 640, & 643. This Court then denied Defendants' motion and ordered Defendants to fulfill Plaintiffs' discovery request by February 25, 2022. Rec. Doc. 645 at 15. However, as of the filing of the instant motion, Plaintiffs have still not received *complete* medical records that were ordered over a month ago. Defendants have indicated that they will produce the records on March 23, nearly a month after the Court's deadline. *See* Ex. B [March 18, 2022 Email from Jeff Cody].

Defendants initially produced the 37 records of deceased patients on a rolling basis between February 16 and February 28.[5] On March 2, 2022, Plaintiffs emailed Defendants at the request of Plaintiffs' medical experts to confirm that the medical records they produced included all of the medication administration records for the relevant time period. *See* Ex. B [March 2, 2022 Email from Nishi Kumar]. Defendants responded: "The medical records provided include all records in each patient's medical chart during the relevant period. We cannot confirm or deny that the medical charts

---

[5] Defendants began their production with these records as they were able to be scanned off-site. The other 37 records were drawn from the hospitalizations of patients currently at LSP, or other DOC facilities, and therefore had to remain on-site to be scanned.

3

include all medical administration records. There may be additional MARs records [sic] that would not necessarily be included in the charts provided." *See id.* [March 4, 2022 Email from John Conine]. Plaintiffs responded: "Records of medical administration are part of medical records, which we requested and you and your clients have produced for years now. We did not ask for 'medical charts,' however you are defining that; we asked for the 'complete medical records.' Please provide any MARs for these patients, or confirm that you do not intend to do so." *See id.* [March 4, 2022 Email from Nishi Kumar].

When Defendants did not respond, Plaintiffs followed up again with a number of outstanding discovery issues, including the medical records. *See* Ex. C [March 8, 2022 Email from Nishi Kumar] ("Production of any Medication Administration Records that are not included in the patient records that you have produced (we raised in an email on 3/2 and followed up on 3/4)."). Defendants replied that they "did not intend to provide anything beyond the voluminous documents already provided." *See id.* [March 8, 2022 Email from Randy Robert]. Based on this representation, Plaintiffs sought confirmation that the medical records produced were *complete* in their production of MARs records. *See* Ex. B [March 11, 2022 Email from Nishi Kumar]. After almost a week with no response, Plaintiffs followed up yet again. *See id.* [March 17, 2022 Email from Nishi Kumar]. After Plaintiffs informed Defendants of their intention to file a motion to compel the production of these potentially missing medical records, Defendants finally responded that the previously produced medical records were not complete and were missing the EMARs "as they are maintained separately." *See id.* [March 18, 2022 Email from Nishi Kumar; March 18, 2022 Email from Jeffrey Cody]. Defendants informed Plaintiffs that they should be able to provide this documentation to Plaintiffs by March 23, 2022, almost a full month after this Court ordered the production of these medical records. *See id.*

Regarding the other 30 medical records the Court ordered Defendants to produce, Plaintiffs were able to reach a compromise with Defendants, after learning that Defendants had still not ***started***

4

scanning the records on March 7, 2022, two weeks after the Court's production deadline. *See* Ex. D [March 7, 2022 Emails from Nishi Kumar]. Plaintiffs offered to reduce the number of records in exchange for stipulating that Defendants would not attack the reliability of Plaintiffs' sample based on the number of medical records reviewed, and Defendants accepted this offer. *See* Ex. E (Stipulation re Hospitalization Records). Defendants produced the on-site records on a rolling basis between March 15, 2022, and March 16, 2022. At that point, Plaintiffs were under the impression that the production was complete, until Defendants notified Plaintiffs that additional records were forthcoming, including the EMARs maintained separately from the patients' medical records. *See* Ex. B [March 18, 2022 Email from Jeffrey Cody].

Upon receipt of this information, Plaintiffs proposed the instant requested relief from Defendants, as well as a stipulation that the Electronic Medication Administration Records were not included in the medical files originally produced to Plaintiffs and are stored in a different location. *See id.* [March 21, 2022 Email from Mercedes Montagnes]. When Defendants responded that they were not agreeable to any of these proposals, Plaintiffs were left with no other option but to come to the Court on this matter. *See id.* [March 21, 2022 Email from Randy Robert].

**II.    Law**

A party who has responded to a request for production must supplement its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete, and if the additional or corrective information has not otherwise been made known to the other party during the discovery process or in writing. Fed. R. Civ. P. 26(e).

If a party fails to provide information as required by Rule 26(e), the party "is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

5

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed. R. Civ. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions."). A failure to disclose under Rule 37 includes a party's untimely production of documents and information required to be produced. *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 385 (E.D. La. 2011) (citing *In re September 11th Liability Insurance*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007)); *see also* Fed. R. Civ. P. 37(c)(1).

Rule 37's discovery sanction is mandatory unless the failure to disclose is harmless or without substantial justification. *Quanta Servs., Inc. v. Am. Admin. Grp., Inc.*, 384 F. App'x 291, 295 n.2 (5th Cir. 2008); *see also Caskey v. Man Roland, Inc.*, 1996 U.S. App. LEXIS 45287, at *15-16 (5th Cir. Mar. 18, 1996) (finding that a defendant's failure to disclose a surveillance videotape, despite discovery requests and the mandatory discovery requirements of Rule 26, was not justified or harmless). If the failure to disclose is either unjustified or causes harm, the district court must "invoke the mandatory exclusion sanction of Rule 37(c)(1), an error which affected substantial rights of the plaintiff." *Caskey*, U.S. App. LEXIS 45287, at *15-16.

**III.    Argument**

Sanctions are appropriate in this case because Defendants violated their discovery obligations in their untimely acknowledgement and disclosure of incomplete discovery responses. In violation of FRCP 26(a), Defendants failed to produce complete medical records by the February 25, 2022, deadline. Rec. Doc. 645. Then, in violation of FRCP 26(e), Defendants failed to supplement the incomplete records in a timely manner.

6

When Plaintiffs initially questioned Defendants about the potentially missing records on March 2, Defendants were made aware that their disclosure was incomplete, if they did not already know earlier. Instead of timely disclosing the remainder of the medical record, Defendants provided Plaintiffs a deliberately vague response without committing one way or another to the completeness of the medical records they disclosed. Only after Plaintiffs followed up an additional *five times* did Defendants finally agree to complete the records on March 18, 2022, estimating that they would be produced on March 23, 2022. This obfuscating of Plaintiffs' questions and requests for confirmation, as well as the delay in acknowledging the incompleteness of the medical records already produced,[6] contravenes FRCP 26(e)'s requirement that a party supplement an incomplete disclosure in a *timely* manner. Here, more than two weeks passed between Plaintiffs raising the issue and Defendants finally admitting the disclosure was incomplete, and another whole week passed before Defendants planned to produce the records. These three weeks were critical in the parties' timeline to produce expert reports as the Court set an April 18, 2022 deadline for expert reports. Chart reviews with complete medical records are both a time-consuming and significant portion of Plaintiffs' medical experts' analyses.

Defendants' delay in responding to Plaintiffs' inquiries around these records and in their ultimate production was not harmless, as they provided a basis for the findings in the liability phase opinion and in Plaintiffs' liability phase Medical Expert Report. In the liability opinion, the Court found that "physicians routinely fail to . . . monitor and manage medications." Rec. Doc. 594, at 10. This finding relied on Plaintiffs' medical expert, Dr. Puisis' trial testimony. *See id.* (citing Rec. Doc. 544 at 153:2-10). Dr. Puisis' opinion on medication management was based on a review of a *complete* medical record. In Plaintiffs' liability phase Medical Expert Report, the medical experts reviewed

---

[6] Thirty of which were produced after the Court's extension of the initial fact discovery deadline to February 25, 2022.

7

patients' complete medical records to assess medication administration, including three examples from specific patient reviews. *See* Rec. Doc. 133-2 at 52-53. Moreover, Plaintiffs' experts' chart reviews—including their review of the MARS—provided a basis for several other findings relied on by the Court.[7]

The MARs are a part of a patient's medical record, and a medical record without a complete set of MARs does not allow for Plaintiffs' medical experts to opine fully on patient care. Despite their position that MARs are not part of the medical record, Defendants' previous productions in the liability phase and ultimate agreement to produce these records suggests otherwise. Further, their delay in responding to Plaintiffs' inquiries and production of the documents is not harmless. Plaintiffs' medical experts will need to spend time re-assessing their patient chart reviews to integrate the supplemental MARs and amend any conclusions they came to as a result of the incomplete medical records they initially received.

## IV.    Conclusion

For these reasons, Plaintiffs respectfully request that this Court order Defendants to cover the costs of Plaintiffs' experts' review of the supplemental MARs, and that this Court provide leave for Plaintiffs' experts to supplement their expert report with their findings after reviewing the supplemental MARs no later than May 3, 2022.

Respectfully submitted this 22nd day of March,

/s/ *Mercedes Montagnes*
Mercedes Montagnes, La. Bar No. 33287
Jamila Johnson, La. Bar No. 37953
Nishi Kumar, La. Bar No. 37415
Rebecca Ramaswamy, La. Bar No. 39524
Elena Malik, La. Bar No. 39662
Samantha Bosalavage, La. Bar No. 39808

---

[7] For example, over half of Dr. Puisis' chart reviews noted and commented on information conveyed through the MARs. *See id.* at 91-92, 98-101, 106-108, 121-124, 126, 143-144, 150, 153, 156-159, 161, 173, 175-176, 179-181 (evaluating the MARs in the chart reviews for patients #1, #3, #4, #6, #11, #12, #13, #14 to assess patient care).

8

>The Promise of Justice Initiative
>1024 Elysian Fields Avenue
>New Orleans, LA 70117
>Telephone: (504) 529-5955
>Facsimile: (504) 595-8006
>Email: mmontagnes@defendla.org
>
>Jeffrey B. Dubner (*pro hac vice*)
>P.O. Box 34553
>Washington, DC 20043
>Telephone: (202) 656-2722
>Email: jeffrey.dubner@gmail.com
>
>Bruce Hamilton, La Bar No. 33170
>Emily B. Lubin, La bar No. 38823
>Southern Poverty Law Center
>201 Saint Charles Avenue, Suite 2000
>New Orleans, Louisiana 70170
>Telephone: (504) 352-4398
>Facsimile: (504) 486-8947
>Email: bruce.hamilton@splcenter.org
>
>Daniel A. Small (*pro hac vice*)
>Brendan R. Schneiderman (*pro hac vice*)
>Cohen Milstein Sellers & Toll PLLC
>1100 New York Avenue NW, Suite 500
>Washington, DC 20005
>Telephone: (202) 408-4600
>Facsimile: (202) 408-4699
>Email: dsmall@cohenmilstein.com
>
>Nora Ahmed (*pro hac vice*)
>ACLU Foundation of Louisiana
>P.O. Box 56157
>New Orleans, Louisiana 70156
>Telephone: (504) 522-0628
>Facsimile: (504) 613-6511
>Email: nahmed@laaclu.org
>
>Ronald K. Lospennato, La. Bar No. 32191
>Disability Rights Louisiana
>8325 Oak St.
>New Orleans, LA 700118
>Telephone: (504) 522-0628
>Facsimile: (888) 534-2996
>Email: rlospennato@advocacyla.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Samantha Bosalavage*
Samantha Bosalavage, La. Bar No. 39524