UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH LEWIS, JR. et al., on behalf of themselves and all others similarly situated | * * * | CIVIL ACTION NO. 3:15-cv-00318 |
| VERSUS | * * | JUDGE SHELLY D. DICK |
| BURL CAIN, Warden of the Louisiana State Penitentiary, in his official capacity, et al. | * * * | MAGISTRATE JUDGE RICHARD L. BOURGEOIS |

**OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF DR. DAVID M. MATHIS, IN PART**

MAY IT PLEASE THE COURT:

This memorandum is submitted on behalf of the Defendants in opposition to Plaintiffs' Motion to Exclude the Expert Testimony of Dr. David M. Mathis, in Part. Plaintiffs' attempt to limit Dr. Mathis is without merit and should be rejected in its entirety,

**Dr. Mathis Is Highly Qualified**

Dr. Mathis has been a licensed medical doctor since 1976. He has practiced as a family physician, an emergency room physician, and a correctional physician. During the 1990s, he taught at multiple medical schools. He is a Certified Correctional Health Professional-Physician and is board certified in family practice with added credentials in hospice and palliative medicine. He is currently a medical consultant with the Office of Legal Affairs for California Correctional Healthcare Services. He has served as an expert witness in correctional medicine in federal court in hundreds of cases. His credentials set forth in his CV are beyond reproach[1], and Plaintiffs do not suggest otherwise.

---
[1] Dr. Mathis' CV is attached as Exhibit 1.

**Dr. Mathis' Methodology Was Appropriate and Thorough**

Due to the condensed time frame in which the parties operated, Dr. Mathis had to prioritize and expediate his review of this matter. He initially focused on reviewing the medical charts selected by Plaintiffs' experts. In total, he reviewed 39 medical charts consisting of tens of thousands of pages.[2] While conducting the chart reviews, he also reviewed policies and information for LSP and DOC. He then attended a three-day site visit at LSP and DOC from March 14 through March 16, 2022. At the site visit, Dr. Mathis observed care in all areas of LSP, including the clinical exam rooms, sick call, the ATU, the new medicine building, NU1, NU2, and the medical dorms. He also observed LSP providers and staff as they went about their business. He used a Dictaphone and transcribed his observations into his expert report. The site visit enabled Dr. Mathis to confirm opinions that he developed upon review of the medical charts selected by Plaintiffs' experts. Finally, he reviewed depositions as they became available.

Based upon this work, Dr. Mathis prepared and issued a 221-page expert report which specifically references and links to over 3,000 pages of support. Dr. Mathis further produced copies of the charts which he bookmarked according to relevance; he explained his bookmarking of the charts at his deposition.[3] Dr. Mathis' opinions are set forth in great detail.

**Dr. Mathis' Opinions on LSP's Procedures and Organizational Structure Are Valid**

Plaintiffs contend that Dr. Mathis' opinions are based upon an invalid standard of care. Plaintiffs' arguments are without merit. Indeed, in a twist of irony, it is Plaintiffs' experts who are applying an invalid standard of care. Plaintiffs contend that anything below the standard espoused by the National Commission on Correctional Healthcare ("NCCHC") or below the community standard of care or standards set forth by national organizations (such as the

---

[2] The 60 medical charts selected by Plaintiffs' experts were too many for the condensed time frame under which the parties were operating. In fact, the 60 charts are more than the number considered in the first trial in this case.
[3] Mathis dep., attached as Exhibit 2, at pp. 216 and 230-231.

American Diabetes Association) is below the minimum standard for the prison.[4] It is through this lens that Plaintiffs claim that Dr. Mathis is applying an invalid standard.

The law is clear that not adhering to an industry standard such as those set forth by NCCHC is not the same as deliberate indifference. This Court previously noted in a related case, "[i]t is well settled that lack of adherence to industry best practice standards is not in and of itself deliberate indifference." *Gumns v. Edwards*, No. CV 20-231-SDD-RLB, 2020 WL 2510248, at *13 (M.D. La. May 15, 2020). This Court further noted that:

> the "community standard" of care is not the legal standard applicable to an Eighth Amendment claim. Rather, the Eighth Amendment "proscribes only medical care so unconscionable as to fall below society's minimum standards of decency."

*Id.*, fn. 81 at *10.

With this legal standard firmly in place, Dr. Mathis opined that LSP is above the minimum standard of care. Part of Dr. Mathis' opinion is premised upon the fact that LSP is ACA accredited. While this fact is not determinative, the Fifth Circuit acknowledges that ACA accreditation is a "relevant consideration" in determining whether minimum standards are met. *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004).

Dr. Mathis opined that LSP's Medical Leadership and Organizational Structure meets or exceeds the standard of care for correctional institutions. That opinion, based upon the work performed by Dr. Mathis as sifted and analyzed by his experience, is valid and should be considered by the Court.

Far from as suggested by the Plaintiffs, Dr. Mathis' opinion is not based solely upon the fact that LSP is ACA accredited. Dr. Mathis takes the "relevant consideration" of ACA

---

[4] LaMarre dep. p. 54, attached as Exhibit 3 ("It's not compliant with NCCHC standards, which I consider to be the minimum standards."); Goehring dep. p. 29 and 234, attached as Exhibit 4 ("Q. Do you consider the NCCHC standards should be complied with in order to meet the standard of care? A. Absolutely." See also, "Q…So you consider the NCCHC to be the minimum standard correct? A. Yes."); Puisis dep. pp. 23 & 25, attached as Exhibit 5.

accreditation into account together with his site visit, his review of materials and depositions, his discussions with LSP principals, and his review of medical charts selected by the Plaintiffs to conclude that LSP is above the minimum standard of care for correctional institutions. Indeed, it is clear that the review of the medical charts selected by Plaintiffs' experts was the most important factor considered by Dr. Mathis.[5] Further, Dr. Mathis observed that the ACA only looks into certain areas and that an institution that is accredited by the ACA could still fall below the standard of care.[6] The Court needs and should have the benefit of Dr. Mathis' opinion to analyze how to proceed in this case.

**Dr. Mathis' Opinions Regarding the Standard of Care for Orderlies, Altered Mental Status, and Mortality Review Are Not Precluded by Law of the Case**

Initially, Plaintiffs do not suggest that Dr. Mathis' opinions are invalid or without basis. Instead, this attack is based solely upon Plaintiffs' reading of the Court's March 31, 2021 Ruling.[7] Dr. Mathis' opinions are valid, not precluded by the Court's Ruling, and are necessary to a determination at this time.

Plaintiffs complain of three opinions: (1) orderlies, (2) altered mental status, and (3) mortality review. Dr. Mathis should be allowed to testify to all three areas.

As to inmate orderlies, the Court held that:

> even if the use of inmate orderlies to assist with activities of daily living conforms to the minimum standards of the Eighth Amendment, the trial evidence showed that LSP failed to follow its own training policies with respect to inmate orderlies.[8]

---

[5] Dr. Mathis testified at his deposition that:
 I'm basing my opinions primarily on the patients that you selected to be part of this matter and my chart interpretations.
Mathis dep., Ex. 2, p. 30.
[6] Mathis dep., Ex. 2, pp. 86-87.
[7] R. Doc. 594.
[8] R. Doc. 594, ¶ 73.

64419413.v2

Based upon that holding by the Court, Defendants will present evidence that LSP is following its training policies as to inmate orderlies. Dr. Mathis further explained that inmate orderlies need to operate under the direct supervision of an RN.[9] With evidence that LSP is following its training policies and that appropriate supervision is in place, Dr. Mathis (and Dr. McMunn) will opine that the inmate orderly program at LSP is an acceptable, and indeed, necessary policy. In fact, Dr. Mathis concluded that elimination of the inmate orderly program will harm patient care at LSP. Defendants should be allowed to present evidence of its current inmate orderly program supported by Dr. Mathis' testimony to show that any deficiencies in the program are now resolved.

As to the altered mental status protocols at LSP, the Court found that some of the protocols were inappropriate under national standards.[10] Initially, that was not a finding that LSP's altered mental status protocols violated the Eighth Amendment, as a practice that is not in compliance with a national standard is not necessarily a violation of the Eighth Amendment.

LSP's altered mental status protocols are not the same today as they were in 2016. For example, LSP no longer uses lavage, or stomach pumping, when presented with altered mental status. Dr. Mathis reviewed and considered LSP's current practice of responding to altered mental status. He further testified that it is within the standard of care for a provider faced with an inmate who has altered mental status to consider the possibility that the inmate had ingested narcotics.[11] Of course, a patient who has signs of a stroke such as a facial droop needs to be sent out to the emergency room.[12] Defendants should be entitled to present evidence that LSP's

---

[9] Mathis dep., Ex. 2, p. 171
[10] R. Doc. 594 ¶ 113.
[11] Mathis dep., Ex. 2, p. 110.
[12] Mathis dep., Ex. 2, p. 113.

5

current practice of responding to altered mental status complies with the minimum standards, and any deficiency, to the extent that the Court found such deficiency, has been remedied.[13]

As to mortality reviews, Dr. Mathis should be allowed to provide opinion testimony that LSP's mortality reviews now meet the minimum standard of care. Respectfully, Plaintiffs are attempting to impose a standard that is not required upon LSP. Cf., *United States v. Hinds County*, et al., No. 3:16-CV-489-CWR-RHWR, 2022 WL 1112223, at *55 (S.D. Miss. Apr. 13, 2022) (The Court struck elements of a consent decree addressed to QA/QI requirements similar to those proposed by Plaintiffs herein). The Court should consider Dr. Mathis' opinion in response to Plaintiffs' position.

## **Dr. Mathis' Opinions Should Not Be Constrained by the Opinions of Prior Experts**

This case was bifurcated, over Defendants' objections. More than three years after the liability trial, the Court set a second trial in this matter. At that time, Defendants advised the Court that the Defendants would be securing new expert witnesses, and the Plaintiffs did not object to same. Thus, Defendants' retention of new experts was disclosed and occurred with no objection.

The issues in this second trial are different than the issues presented at the first trial. Experts, by their very nature, will have different opinions. Dr. Mathis' opinion is that Plaintiffs' method of selecting charts for review is inappropriate.

Further, the Court has tacitly held that the Defendants can raise the issue with sampling. The Defendants filed a Motion for Protective Order supported by an affidavit from Dr. Mathis which argued that judgment sampling was inappropriate.[14] Plaintiffs' opposition raised the issue

---

[13] Plaintiffs complaints regarding Dr. Mathis' opinion on altered mental status is remarkable considering the degree to which Plaintiffs' experts opine on issues that the Court found were not unconstitutional. See Defendants Motion in Limine to Limit Scope of Testimony and Evidence. [R. Doc. 695]
[14] R. Doc. 636.

6
64419413.v2

that Defendants' prior experts agreed that judgment sampling was appropriate. On February 17, 2020, this Court issued a Ruling which denied the protective order but specifically reserved the right of the Defendants to challenge judgment sampling methodology at the Daubert stage of the proceedings.[15] Therefore, the Court recognized that the Defendants could raise the issue of judgment sampling.

The cases cited by the Plaintiffs are completely in apropos.

Dr. Mathis should be allowed to state his opinion that judgment sampling is inappropriate in this matter.

**Defendants Did Not Prevent Plaintiffs from Obtaining Discovery**

Plaintiffs raise three issues – none of which have merit.

One, Plaintiffs contend that Defendants intentionally hid information from Plaintiffs. That assertion is categorically rejected. Defendants' counsel told Dr. Mathis that the names of the inmates would be kept confidential, as is being done. Thus, there was no intentional or egregious act, and certainly no intent to hide information from Plaintiffs as argued.

This issue is not critical in any event. Dr. Mathis' opinion that medical care at LSP meets or exceeds the minimum standard of care is based primarily upon chart reviews. Dr. Mathis then conducted a site visit to further support his opinion. The names of inmates that he observed are not necessary. Dr. Mathis needed to and did observe the facilities and the practices to confirm what he observed in his chart reviews.

The second issue pertains to the LSP staff's morning meetings. All of the providers and department heads meet every morning Monday through Friday and discuss the status of every patient in NU1, NU2, the ATU, and in outside hospitals. This meeting involves a free exchange of ideas among the providers.

---

[15] R. Doc. 645, p. 8.

64419413.v2

Plaintiffs conducted discovery on the morning meetings. Plaintiffs' counsel asked many LSP employees about the morning meetings at their depositions. The fact of the morning meetings was well known to Plaintiffs and explored in discovery.

Plaintiffs' experts were not allowed to view the morning meeting because of the concern that Plaintiffs' experts would interfere with patient care. LSP providers indicated that they were concerned about discussing patient care in front of Plaintiffs' hypercritical expert witnesses. Limiting the discussion of patient care among LSP providers would have had the potential to adversely impact patient care. A meeting where the providers were constrained in discussions of patient care would not have been a fair representation of the meeting. Thus, the decision was made that Plaintiffs' experts would not be allowed to observe the morning meeting, based upon a potentially negative impact upon patient care. Defendants stand by their decision as patient care should be the primary consideration for decisions being made.

The third area pertains to documents provided to Dr. Mathis that were allegedly withheld from the Plaintiffs, i.e., documents pertaining to training for healthcare orderlies, and information from Eceptionist. Documents pertaining to training for healthcare orderlies were disclosed at the depositions of two of the inmate orderlies on March 30, 2022, 19 days before the expert reports were produced. As to Eceptionist documents, Defendants are unsure exactly what Plaintiffs are complaining about since there is no citation to the documents. We respectfully refer the Court to Defendants' Opposition to Plaintiffs' Motions in Limine Related to Evidentiary Issues that raised these same issues.

**Dr. Mathis Indeed Did Provide the Basis and Reasons for His Opinions Regarding Patients #14, 16, 34, 36, 54, and 57**

Dr. Mathis set forth the basis for his opinion as to every chart that he reviewed. Each of these opinions include pertinent information, a narrative, a chart review and his opinion.

64419413.v2

Nothing is missing, and nothing more is necessary. Dr. Mathis further provided the chart records with his book marks further elucidating the basis for his opinions. Plaintiffs were appropriately advised of the basis for Dr. Mathis' opinions. This argument again has no merit.

As the Court analyzes Plaintiffs' arguments, the Court should recall that the expert reports were submitted simultaneously. The job of Plaintiffs' experts was to identify alleged errors. Dr. Mathis, on the other hand, did not have the benefit of knowing the criticisms of Plaintiffs' experts in order to respond to them. He was left to review a chart from top to bottom and assess care with no specific guidance. In effect, he was left to prove a negative. When Dr. Mathis concluded after a chart review that LSP met the standard of care, what else was Dr. Mathis to do other to so state? He could not be expected to set forth his opinion as to each encounter in these voluminous records. Respectfully, Dr. Mathis' report is thorough and more than sufficient to comply with Rule 26 disclosure requirements.

We address each chart separately.

As to Patient #14, Dr. Mathis' opinion is fully disclosed and set forth in his report.[16] He sets forth a narrative, a medical summary, an autopsy report, a toxicology report, his chart review, and his opinion. Dr. Mathis set forth his opinion that Patient #14 suffered from repeated intoxications and a cardiac arrest after his last contraband ingestion. That opinion is supported by his review of prior intoxications and an analysis of the autopsy and the toxicology screen. There is no basis upon which to exclude his opinion as purportedly not set forth thoroughly enough.

As to Patient #16, Dr. Mathis' opinion is fully disclosed and set forth.[17] Dr. Mathis set forth a death review, narrative, autopsy, his review of the chart, and his opinion. Dr. Mathis'

---

[16] Dr. Mathis' review of Patient #14 excerpted from his report is attached as Exhibit 6.
[17] Dr. Mathis' review of Patient #16 excerpted from his report is attached as Exhibit 7.

64419413.v2

opinion is that Patient #16 likely ingested synthetic cannabinoids which caused his cardiac arrest. Dr. Mathis set forth the basis for the opinion based upon the patient's records. There is no basis upon which to exclude his opinion as purportedly not set forth thoroughly enough.

As to Patient #34, Dr. Mathis' opinion is fully disclosed and set forth.[18] Patient #34 suffered from hypertension, hyperlipidemia, diabetes, chronic obstructive pulmonary disease, chronic kidney disease, sleep apnea, vitamin D deficiency, congestive heart failure with an ejection fraction of 25% (an ejection fraction of 60% is considered normal), and Pickwickian syndrome related to morbid obesity. Dr. Mathis set forth a death review, narrative, autopsy, his review of the chart, and his opinion. Dr. Mathis reviewed this chart and observed that his conditions affected his activities of daily living and his willingness to attend off-site consultations which led to Fournier's gangrene and its consequences. His opinion again is thoroughly set forth.

As to Patient #36, Dr. Mathis' opinion is fully disclosed and set forth.[19] Patient #36 suffered from hypertension, chronic obstructive pulmonary disease, pre-diabetes, and cystic bullous emphysema. Dr. Mathis set forth a death review, narrative, autopsy, his review of the chart, and his opinion. The patient's condition deteriorated to the extent that the hospital employed "compassionated extubation." After reviewing the entire 1,679 page chart, Dr. Mathis concluded that there was no violation of the standard of care. His opinion again is thoroughly set forth.

Dr. Mathis set forth that LSP met the standard of care in treating Patient #54.[20] Interesting, Dr. Vassallo also reviewed Patient #54. She too set forth no criticisms of care as to

---

[18] Dr. Mathis' review of Patient #34 excerpted from his report is attached as Exhibit 8.
[19] Dr. Mathis' review of Patient #36 excerpted from his report is attached as Exhibit 9.
[20] Dr. Mathis' review of Patient #54 excerpted from his report is attached as Exhibit 10.

Patient #54.[21]  Dr. Mathis set forth sufficient information from the chart to show the basis for his opinion.  He then concludes that the care met the standard of care.  Considering the write up and his book marks, Dr. Mathis obviously reviewed the chart in detail and provided his opinion as appropriate.

As to Patient #57, Dr. Mathis reviewed the 932 page chart as part of his review.[22] Patient #57 is a type I diabetic who was insulin dependent.  Unfortunately, the patient had mental health issues and was resistant to treatment and transfers from LSP for higher levels of care.  He has many refusals at LSP as well as at UMCNO.  Upon review of the chart, including his book marks, Dr. Mathis concluded that LSP complied with the standard of care.

Dr. Mathis' opinions are thoroughly set forth, particularly considering the wealth of information and the short time frame in which to review the information.

**Conclusion**

Plaintiffs' motion is without merit.  Dr. Mathis is indisputably highly qualified.  His opinions will be helpful to the Court. He should be allowed to testify to all opinions.  Plaintiffs' complaints are minor "nits" in a complicated fast moving case or arguments that go to the weight to be given the opinions.  The motion should be denied in its entirety.

                                        Respectfully Submitted:

                                        **JEFF LANDRY,**
                                        **ATTORNEY GENERAL**

                                        BUTLER SNOW LLP
                                        445 North Boulevard, Suite 300 (70802)
                                        P. O. Box 2997
                                        Baton Rouge, Louisiana 70821-2997

---

[21] Dr. Vassallo's chart review of Patient #54 is attached as Exhibit 11.  Her review is nothing more than a simple chronology of care. At her deposition, Dr. Vassallo identified a single criticism as to care on May 1, 2021, even though her review did not identify any such problem. See Vassallo dep. at pp. 168-174, attached as Exhibit 12.  Dr. Mathis will testify that Dr. Vassallo's assessment of Patient #54, as to this single May 1, 2021 incident, is wrong.
[22] Dr. Mathis' review of Patient #57 excerpted from his report is attached as Exhibit 13.

Telephone: (225) 325-8700
Facsimile: (225) 325-8800

By: /s/ *Randal J. Robert*
    Randal J. Robert (#13800)
    Connell L. Archey (#29992)
    Keith J. Fernandez (#33124)
    Allena W. McCain (#38830)
    *Special Assistant Attorneys General*
    Email: randy.robert@butlersnow.com
           connell.archey@butlersnow.com
           keith.fernandez@butlersnow.com
           allena.mccain@butlersnow.com

**SHOWS, CALI & WALSH, L.L.P.**
Jeffrey K. Cody, La. Bar Roll No. 28536
Caroline T. Bond, La. Bar Roll No. 34120
John C. Conine, Jr., La. Bar Roll No. 36834
*Special Assistant Attorneys General*
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-1467
Email: jeffreyc@scwllp.com
       caroline@scwllp.com
       coninej@scwllp.com

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of May, 2022 I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        /s/ *Randal J. Robert*
        Randal J. Robert

12
64419413.v2