UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., ET AL. | CIVIL DOCKET |
| VERSUS | 15-318-SDD-RLB |
| BURL CAIN, ET AL. | |

**RULING**

Before the Court is Plaintiffs' *Motion in Limine to Exclude Expert Testimony of Michael McMunn*.[1] Defendants have filed an *Opposition*.[2] The Court has considered the law and the arguments of the parties, and the *Motion* is DENIED in part and GRANTED in part for the following reasons.

Michael McMunn, Ph.D., is a nurse practitioner engaged by the Defendants to provide opinion testimony on LSP's "clinical care, specialty care, infirmary/in-patient treatment, sick call, emergency care/ATU, medical leadership, organizational structure, nursing standard of care, nurse practitioner standard of care, organizational standard of care, facility design, staff credentialing, and accreditation/standards compliance."[3] His review and opinion addresses the period of time from 1-1-2019 to the present.[4]

McMunn is a board-certified Family Nurse Practitioner with certification in correctional healthcare.[5] McMunn has practiced as a registered nurse for approximately

---

[1] Rec. Doc. No. 697.
[2] Rec. Doc. No. 708.
[3] Rec. Doc. No. 708-2, p. 1.
[4] *Id*.
[5] *Id.*

25 years and as a nurse practitioner for over 20 years.[6] He is licensed as a Registered Nurse in Alabama and as a Registered Nurse and Advanced Practice Registered Nurse (APRN-NP) in Georgia. He is a Certified Correctional Health Professional - Advanced (CCHP-A) by the National Commission on Correctional Healthcare (NCCHC) and has practiced in correctional healthcare for approximately 20 years.[7] He has provided opinion testimony on the "standard of care" in numerous state and federal courts.[8]

Opinion testimony is admissible under the Federal Rules of Evidence, if: (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony is sufficiently reliable; and (3) the testimony is relevant.[9] The party offering expert testimony is not required to establish the correctness of the opinion; rather, the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable."[10] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702."[11]

The gatekeeping function is of less importance in a bench trial. In *Gibbs v. Gibbs*, the Fifth Circuit noted that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[12] The purpose of the Court's gatekeeping function required by *Daubert* is "to ensure

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at pp. 4–6.
[9] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[10] *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir. 1998), *cert. denied,* 526 U.S. 1064 (1999).
[11] *Munoz v. Orr,* 200 F.3d 291, 301 (5th Cir. 2000); *Ricks v. City of Alexandria,* 2014 WL 4274144, at *8 (W.D. La. 2014).
[12] 210 F.3d 491, 500 (5th Cir. 2000).

that only reliable and relevant expert testimony is presented to the jury."[13] However, even though the risk of juror confusion is not a concern, the integrity of the judicial process and considerations of judicial economy require that untestable opinion testimony be excluded.

Against this backdrop, the Court turns to Plaintiffs' arguments for complete or alternatively partial exclusion of McMunn's opinions.

## I.    The Standard of Care Opinions

Plaintiffs do not challenge Dr. McMunn's qualifications to opine regarding the standard of care in correctional medicine.[14] Plaintiffs challenge McMunn's standard of care opinions as unsubstantiated and unreliable. Plaintiffs argue that McMunn's opinions are unreliable because they are not supported by sufficient facts and data. Plaintiffs contend McMunn reviewed only 23 of the 60 charts in Plaintiffs' experts' sample and was only on-site at LSP for 2 days. McMunn interviewed providers and observed medical care delivery while on site. He also interviewed administrators at DOC headquarters, where he spent the third day of his site visit. Plaintiffs point out that McMunn "took no notes of any of his interviews, observations, onsite document reviews, or onsite chart reviews."[15] Plaintiffs maintain that the reliability of his opinion that "[h]ealthcare services provided met the standard of care for a correctional setting. No systemic or practitioner indifference to any serious medical need was noted,"[16] cannot be tested or adequately assessed. In

---

[13] *Rushing v. Kansas City Southern Ry. Co,,* 185 F.3d 496, 506 (5th Cir.1999) (*superseded on other grounds*) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).
[14] Plaintiffs challenge McMunn's qualifications in prison administration and argue he lacks qualifications to opine on the adequacy of the leadership and organizational structure, such as credentialing and mortality reviews, in addition to the quality improvement program. This will be addressed *infra*.
[15] Rec. Doc. 697-1, p. 6.
[16] *Id.* at p. 5.

short, Plaintiffs argue that there is no demonstrable or reliable connection between the data he reviewed and gathered and his opinions.[17]

McMunn reviewed three unidentified patient charts while on-site at LSP. Plaintiffs argue that they "have no way to verify what the records he examined actually showed and thus cannot refute, or even assess Dr. McMunn's determination that the standard of care was met in these charts."[18] They point out that "McMunn did not take any notes of the over 50 health care encounters he claimed to observe during his site visit, let alone identify them, such that Plaintiffs could review what occurred."[19] Plaintiffs understandably cry foul at their inability to test or probe the bases for his opinions since he made no notes or recordings of his on-site observations and interviews, although he did support his report with "57 pages of notes documenting his chart reviews."[20] According to Plaintiffs, McMunn's own deposition testimony reveals that "he does not know what he reviewed or who he spoke to. He cannot recall the names of the three unidentified patients whose charts he reviewed. He cannot remember names of many of the staff he met with."[21]

Defendants maintain that McMunn's site visits simply confirmed the opinions he reached from his detailed chart review of 23 patients and LSP's written policies and procedures. According to Defendants, "[t]he site visit enabled Dr. McMunn to confirm opinions that he developed upon review of the medical charts selected by Plaintiffs' experts and LSP policies and procedures."[22] Defendants maintain that "the chart reviews [are] the primary basis for his opinions" and that "Dr. McMunn's opinions are based almost

---

[17] *Id.* at p. 1–2.
[18] *Id.* at p. 10.
[19] *Id.*
[20] Rec. Doc. No. 708, p. 2.
[21] Rec. Doc. No. 697-1, p. 10 (citing to McMunn deposition excerpts at 66:3-5; 44:14-17; 46:20-22).
[22] Rec. Doc. No. 708, p. 2.

exclusively upon his review of the medical charts and LSP's policies and procedures."[23] In short, Defendants place little emphasis on the undocumented site visits. Rather, Defendants maintain that the primary basis for McMunn's opinions are the 23 charts he reviewed and the LSP policies and procedures.

A reading of McMunn's report reveals that he reviewed the areas of constitutional inadequacies found by the Court and concludes that the deficiencies have been addressed and resolved by LSP. He concludes "based on his experience" that the standard of care is met in all areas found deficient by the Court.

The lack of data and recorded observations is problematic in terms of testing his opinions for reliability. For example, McMunn concludes that "access to specialty care has been prompt, consistent, and certainly meets the standard of care."[24] He comes to that opinion having reviewed the "23 plaintiff-selected charts and the 3 [unidentified] charts [he] personally selected [and] a thorough review of the referral process, procedures and backlogs."[25] He does not drill down to the backlogs or other data to quantify the number specialty consults ordered, the time or delays for completion, the actual completion date or any evidence of follow up on specialist recommendations or orders. This lack of empirical data is troublesome. The oblique reference to having reviewed "the referral process, procedures and backlogs" is conclusory and unspecific and hardly provides a transparent verifiable basis for his conclusion.

Finally, Plaintiffs contend McMunn failed to apply an objective "standard of care" and instead determined whether the standard of care was observed based solely on his

---

[23] *Id*. at 6.
[24] Rec. Doc. No. 708-2, at p. 16.
[25] *Id.*

experience and education. Plaintiffs argue that his "personal opinions, absent any objective standards, are insufficient bases for expert opinion."[26] McMunn's opinions paint with a broad brush and are sweeping generalizations of the standard of care. However, Plaintiff's do not challenge his qualifications to opine on the standard of care in a correctional setting. The gravamen of his opinions is that LSP has made changes that address the constitutional deficiencies and inadequacies found by the Court, which changes have, in McMunn's opinion, brought the level of care up to the standards expected in correctional medicine. This testimony will be helpful to the Court as the trier of fact.

As with Dr. Thomas, Defendants' medical expert in the liability phase, McMunn's opinions are in many instances dogmatic expressions of opinion premised on unverifiable observations. However, since this matter is set for a bench trial, the Court is the trier of fact, and jury confusion is not a consideration. In the context of a bench trial, vigorous and skillful cross examination serves as an adequate safeguard against shaky opinion testimony.

In this case, the adversarial process, including cross-examination, the testimony and opinions of Plaintiffs' experts, and a site visit by the Court - if called for - provide an adequate means to test the reliability McMunn's opinions. The Court will permit Dr. McMunn to testify about the standard of care in the specific areas that the Court found to be constitutionally infirm. The Court will accord the weight that is appropriate under the circumstances.

---

[26] Rec. Doc. No. 697-1, p. 12.

##       II.        The Medical Administration Opinions

McMunn addresses "Medical Leadership and Organizational Structure" in the areas of Mortality Review, Medical Department Management, Peer Reviews, Quality Improvement Activities and Credentialing.[27] Plaintiffs argue that "Dr. McMunn is not qualified to submit an expert opinion in prison administration, and thus should not be able to opine on the adequacy of the leadership and organizational structure, such as credentialing and mortality reviews, in addition to the quality improvement program."[28] Defendants do not address McMunn's qualifications to opine in areas of medical leadership and organizational structure. Considering McMunn's report and his CV, the Court notes that McMunn states he "currently devotes a significant portion of [his] professional time to active clinical practice in eight correctional facilities (seven small to medium size county jails and one state facility). Census in these facilities ranges from 25-350 inmates," and he has "provided direct clinical services in 50 distinct correctional facilities over the course of [his] career."[29] McMunn was the "Clinic Director" at the Bridge Institute in Georgia for less than a year in 2001-2002.[30] He described his duties at all Georgia facilities that he contracts with as "[p]rimarily to fill clinical gaps when nurse practitioners and doctors would go on leave or get fired or whatever happened," and, although he provided administrative support, he "was not contracted to do administrative."[31] He testified that he gained experience formulating policies and practices at the Bridge Institute, which was opened in response to a memorandum agreement

---

[27] Rec. Doc. No. 708-2, p. 24–26.
[28] Rec. Doc. No. 697-1, p. 17.
[29] Rec. Doc. No. 708-2, p. 1–2.
[30] *Id.* at p. 56.
[31] Rec. Doc. No. 697-2, p. 23

between the Federal Government and the Georgia Department of Juvenile Justice.[32] His responsibilities included staffing and organizational design.[33] Beyond what the Court gleaned from McMunn's deposition, Defendants provided no information regarding the scope and extent of any of McMunn's administrative, management or organizational development experience. The Court finds that the majority of McMunn's experience is in the direct delivery of clinical care. The Defendants point to no education, skill, training, or experience that equips McMunn to opine in the area of Medical Leadership and Organizational Structure. Accordingly, opinion testimony from Dr. McMunn will be excluded in this area.

### III.    Quality Improvement Program

In his report, McMunn states that he "personally reviewed all Quality Improvement activity from 1-1-19 to present. The scope and complexity of the reviews is significantly improved," and he concludes that "[s]tandard of care is met."[34] Defendants submit that "[d]ocuments he relied upon were produced with his supporting materials."[35] According to McMunn's deposition, he reviewed minutes of CQI meetings maintained by Nurse Stickell and the CQI documents produced in discovery, and he "saw three examples where they implemented the learning concepts."[36] Plaintiffs argue that McMunn could not "recall a single one of his three examples of how the program utilizes and implements learned concepts, nor did he take notes of these examples."[37] Defendants counter that McMunn

---

[32] *Id.* at 36-37
[33] *Id.* at 37.
[34] Rec. Doc. No. 708-2, p. 25.
[35] Rec. Doc. No. 708, p. 8.
[36] Rec. Doc. No. 697-2, pp. 137-139
[37] Rec. Doc. No. 697-1, p. 16. This assertion is found in McMunn's deposition. Rec. Doc. No. 697-2, pp. 137-139.

is qualified by virtue of his "NCCHC certifications [which] include assessments of a quality improvement program."[38]

The Court will allow McMunn to testify to what he gleaned from his review of the CQI records and his opinions about LSP's CQI's program.

### IV.  COVID-19 Impact and Response

Plaintiffs move to exclude opinions about how LSP's medical department was impacted by and responded to the COVID-19 pandemic. The Court finds that McMunn's opinions regarding the impact and response to COVID-19 at LSP are unsubstantiated by any facts or direct data or observations and thus will be excluded. However, as a healthcare provider in correctional medicine, McMunn may give fact testimony about the impact of COVID-19 generally on healthcare delivery.

### V.  Nursing Shortage

Plaintiffs move to exclude McMunn's opinion testimony that "[t]he nursing shortage is an external factor that LSP does not control. However, it must be considered when addressing availability of nurses and staffing patterns."[39] The Court finds that as a healthcare provider in correctional medicine, McMunn can provide fact testimony about nursing shortages, generally. However, opinion testimony about the impact of nursing shortages "at rural correctional facilities and those with higher security levels"[40] is unsubstantiated by facts or data and shall be excluded.

---

[38] Rec. Doc. No. 708, p. 8.
[39] Rec. Doc. No. 697-1, p. 16.
[40] Rec. Doc. 708-2, p. 53.

## VI. Conclusion

In summary, the Court will permit Dr. McMunn to testify about the standard of care in the specific areas that the Court found to be constitutionally infirm. McMunn shall not be permitted to give opinion testimony regarding Medical Leadership or Organizational Structure. McMunn may give fact testimony about the impact of COVID-19 generally on healthcare delivery. McMunn may provide fact testimony about nursing shortages generally but may not opine as to the effect or impact on LSP particularly. McMunn may opine regarding LSP's Quality Improvement reviews.

Plaintiffs' *Motion*[41] is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 1, 2022.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[41] Rec. Doc. No. 697.