UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LEWIS, JR., ET AL. | CIVIL DOCKET |
| VERSUS | 15-318-SDD-RLB |
| BURL CAIN, ET AL. | |

**RULING**

Before the Court is Plaintiffs' Motion *in Limine* to Exclude Expert Testimony of David M. Mathis in Part.[1] Defendants have filed an Opposition.[2] The Court has considered the law and the arguments of the Parties, and the Motion is DENIED in part and GRANTED in part, for the following reasons

Dr. David M. Mathis ("Dr. Mathis" or "Mathis") is being offered by Defendants to provide opinion testimony on the correctional medicine standard of care and whether LSP currently provides medical treatment and care which comports with the applicable standard of care. Plaintiffs move to exclude some of Dr. Mathis' opinions. Specifically, Plaintiffs move to exclude all opinion testimony by Dr. Mathis with the exception of "whether care provided to 32 of the patients in the Plaintiffs' sample met the standard of care."[3]

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

---

[1] Rec. Doc. No. 698.
[2] Rec. Doc. No. 707.
[3] Rec. Doc. No. 698-1, p. 2.

1

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.[4] The party offering expert testimony is not required to establish the correctness of the opinion; rather, the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable."[5] The proffered expert testimony must be properly grounded, well-reasoned, and not speculative. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field. "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed.R.Evid. 702."[6] The Rule's requirement that an expert's opinion be "based on sufficient facts or data" does not require a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.[7]

Plaintiffs do not contend that Dr. Mathis lacks the "knowledge, skill, experience, training, or education" to opine. Plaintiffs challenge the bases and underpinnings of his opinions. Dr. Mathis' expert report addresses the current delivery of clinical care, specialty care services, infirmary and inpatient care, sick call, emergency care, the Assessment

---

[4] *Bourjaily v. United States*, 483 U.S. 171 (1987).
[5] *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir.1998), *cert. denied,* 526 U.S. 1064 (1999).
[6] *Munoz v. Orr,* 200 F.3d 291, 301 (5th Cir. 2000); *Ricks v. City of Alexandria,* 2014 WL 4274144, at *8 (W.D.La., 2014).
[7] Fed.R.Evid. 702 advisory committee's note.

and Triage Unit ("ATU") and medical leadership and organizational structure, including mortality reviews. Plaintiffs argue that Dr. Mathis concludes that standard of care is met and, thus, care is constitutionally adequate where the American Correctional Association ("ACA") accreditation standards are met. Mathis states: "It is my opinion that LSP comports with the standard of care for correctional facilities. LSP has been repeatedly accredited by the ACA, a higher standard."[8] Plaintiffs maintain that Mathis' opinion, which they contend incorporates the ACA as the standard of care, is foreclosed by Fifth Circuit precedent and therefore unhelpful to the trier of fact, rendering it inadmissible. It is true that compliance with the ACA is not dispositive of the Eighth Amendment question;[9] however, "compliance with ACA standards may be a relevant consideration."[10]

Plaintiffs attack the correctness of the opinion. The Court's gatekeeping function assesses the reliability of opinions by examination of the facts and data on which the opinions rest. Reliance on ACA accreditation standards as one of the bases for his opinion is not *ipso facto* infirm. It is one consideration, and that consideration does not render the opinion wholly unreliable and inadmissible. Likewise, if LSP determines its standard of care by reference to LSP directives and the directives of "upper level" medical managers, Mathis may opine that these comport with a reasonable standard of care. The ultimate determination of constitutionality rests with the Court. Again, Mathis need not be right, but his opinions must be soundly derived and well-grounded in an accepted body of learning or experience in the expert's field.

---

[8] Rec. Doc. No. 698-1, p. 225 (Mathis' Report at p. 219).
[9] "While compliance with ACA standards may be a relevant consideration, it is not *per se* evidence of constitutionality." *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004).
[10] *Id.*

Plaintiffs argue that Mathis' opinions on the "Standard for Care for Orderlies, Altered Mental Status, and Mortality Review are precluded by the law of the case."[11] Plaintiffs argue that in these areas, Mathis' "opinion squarely contradicts the Court's findings in the liability phase—not by saying the facts have changed, but by saying that he would apply a different standard."[12] Plaintiffs argue that "Defendants can introduce evidence that they *meet* the standards established at the liability trial".[13] However, the Court did not "establish" the standards to be adhered to following the liability trial. Rather, the Court found that the care delivered was unconstitutional. If the conditions are unchanged, the result will be the same and a remedy will be ordered.  Again, Plaintiffs challenge the correctness of Mathis' opinions. That is not the gatekeeping function.

Plaintiffs argue that Mathis will be offered to contradict Plaintiffs' liability experts in sampling methodology and NCCHC standards. Mathis is critical of the judgment sampling method used to select the sample of patient charts used for the focused inquiry into the constitutional adequacy of medical care delivered at LSP. The liability experts for both sides concurred that sampling methodology, in which they selected charts of people known to have had serious medical needs, was standard and appropriate. Mathis challenges the efficacy of the sampling method and Defendants have signaled their intention to challenge the sampling method in a prior Motion for Protective Order.[14] In ruling on the Motion for Protective Order, the Court found "that judgment sampling is an allowable methodology at the remedy phase in this matter just as it was in the liability

---

[11] Rec. Doc. No. 698-1, p. 9.
[12] *Id*. at p. 10.
[13] *Id.* (original emphasis).
[14] Rec. Doc. No. 636.

4

phase."[15] However, the Court reserved that the Defendants "may challenge this methodology at the *Daubert* stage of these proceedings."[16] Mathis' criticism of the sampling method does not mandate exclusion of his opinions under FRE 702.

Plaintiffs further argue that Mathis should be precluded from advancing consideration of NCCHC standards as indicative of the standard of care because this is in conflict with the testimony of Dr. Moore, Defendant's liability expert who opined that "that NCCHC standards represented 'just a minimal level' of care, are 'authoritative' and are not 'aspirational'."[17] This is fodder for cross-examination but not grounds for exclusion under FRE 702.

Plaintiffs move to exclude Mathis' opinions on orderly utilization and specialty care, arguing that these opinions are based on information the Defendants allegedly prevented Plaintiffs from obtaining in discovery. Specifically,

- opinions which relied in part on unrecorded observations Mathis made of unidentified patients seen in the General Medicine Clinic, ATU, and sick call during his site visit;[18]

- opinions that rely on Mathis' observations of LSP morning staff meetings which Plaintiff's counsel were not permitted to attend; and

- opinions which relied on "a document purporting to reflect procedures for LSP's healthcare orderly training program" and documents from LSP's medical utilization database Eceptionist not produced in discovery.[19]

---

[15] Rec. Doc. No. 645, p. 6.
[16] *Id.* at p. 8.
[17] Rec. Doc. 698-1, p. 3.
[18] *Id.* at p. 3 (citing to Mathis Depo. at 30:6-12, 64:6-18).
[19] *Id.* at p. 14.

5

Defendants counter that "Dr. Mathis' opinion that medical care at LSP meets or exceeds the minimum standard of care is based primarily upon chart reviews. Dr. Mathis then conducted a site visit to further support his opinion. The names of inmates that he observed are not necessary. Dr. Mathis needed to and did observe the facilities and the practices to confirm what he observed in his chart reviews."[20] On the matter of the morning meetings which Mathis observed, Defendants argue that "Plaintiffs conducted discovery on the morning meetings" but "were not allowed to view the morning meeting because of the concern that Plaintiffs' experts would interfere with patient care."[21]

The Court denies the Motion *in Limine* to exclude Mathis' opinions that rely on the foregoing information. The Court will afford the weight to the opinion testimony which it is due considering that Mathis' principal reliance is the sample chart notes that he reviewed. Mathis' recall of undocumented observations of LSP morning medical meetings and unidentified patient care will be afforded the weight which it is due. The Court finds the principal reliance on the sample charts that were available to all experts constitutes a sufficient basis for Mathis' opinions.

The Court has granted Plaintiffs' Motion for an updated deposition on the orderly training program[22] and incorporates the above ruling on the updated Eceptionist documents and denies the Motion to exclude opinions which rely in part on these documents.

Finally, Plaintiffs move to exclude Mathis' opinions regarding the care of patient nos. 14, 16, 34, 36, 54, and 57. Plaintiffs challenge Mathis' methodology, arguing that

---

[20] Rec. Doc. No. 707, p. 7.
[21] *Id.* at p. 8.
[22] Rec. Doc. No. 721.

6

"for six patients, however, he does not provide any independent chart review. For those who died, he simply copies and pastes LSP's mortality review and then says conclusorily that there were no standard of care violations."[23] Plaintiffs argue that this cursory cut and paste fails to comply with Fed. R. Civ. P. 26(a)(2)(B)(i), which requires "a complete statement of all opinions the witness will express and the basis and reasons for them."[24] Defendants point out that, because the scheduling order called for simultaneous production of expert reports, Mathis' report was not a rebuttal report, as is often the case. Hence, according to Defendants, he was "left to prove a negative."[25]

The Court disagrees that Mathis was in the posture of proving a negative, but the Court finds no fundamental flaw in the methodology of reviewing a chart and subsequently opining as to the standard of care based on unchallenged experience and expertise. Plaintiffs' experts will undoubtedly point out care deficiencies in the sample charts. A FRE Motion *in Limine* does not call upon the Court to analyze the rightness of the opinion. The Court finds the chart review methodology satisfactory. The Motion *in Limine* to exclude opinion testimony on patient nos. 14, 16, 34, 36, 54, and 57 is DENIED without prejudice to the right to urge objections to testimony beyond the four corners of Mathis' report.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 1st day of June, 2022.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[23] Rec. Doc. No. 698-1, p. 15 (citation omitted).
[24] *Id.* at p. 16.
[25] Rec. Doc. No. 707, p. 9.