# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOSEPH LEWIS, JR., ET AL.                                    CIVIL DOCKET

VERSUS                                                       15-318-SDD-RLB

BURL CAIN, ET AL.

## RULING

This matter is before the Court on Defendants' *Motion to Supplement the Record and Admit Certain Evidence of Current Conditions.*[1] The Court entered an expedited briefing schedule, and Plaintiffs filed an *Opposition*[2] to this motion.  For the following reasons, Defendants' motion is denied.

## I.    BACKGROUND

This is a class action case alleging unconstitutional medical care provided at Louisiana State Penitentiary ("LSP") as well as violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") at the prison. The Court bifurcated the case into separate liability and remedial phases. Following a trial on liability, the Court found that aspects of the medical care at LSP violated the Eighth Amendment and found violations of the ADA and RA.[3]  The Court held a remedy phase trial in this matter from June 6, 2022 through June 17, 2022.[4]

---

[1] Rec. Doc. 762.
[2] Rec. Doc. 765.
[3] Rec. Doc. 594, p. 122.
[4] *See* Rec. Docs. 733, 744.

Prior to the remedy trial, the Court set several discovery deadlines and ultimately ordered that remedial discovery was closed as of April 1, 2022.[5]  Nevertheless, Defendants moved to introduce remedial evidence beyond April 1, 2022.  Cognizant of the Court's previous order that it would credit LSP at the remedy phase with post-liability trial remedial conduct, the Court allowed Defendants to offer some evidence of prison changes occurring beyond the discovery cutoff, but that was only because such evidence was disclosed to Plaintiffs ten days prior to trial, and Plaintiffs had enough time to prepare for this evidence and an opportunity to rebut the evidence at trial.[6]  The Court did not re-open discovery, nor did it suggest that the record remained open or that remedial evidence developed after the parties rested their respective cases at the remedy trial would be considered.

## II.    ARGUMENTS

In support of their motion, Defendants argue that some of Plaintiffs' claims for relief are now moot based on the new evidence Defendants seek to offer such that there remains no case or controversy for the Court to decide.  Defendants cite to the Supreme Court's decision in *City of Los Angeles v. Lyons*, wherein the Court held that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'"[7]  This case did not involve prison conditions and injunctive relief.  Defendants also rely on the Supreme Court's decision in *Already, LLC v. Nike, Inc.*, where the Court states that an "actual controversy" must exist not only "at the time the complaint is filed," but through "all

---

[5] Rec. Docs. 629, 652.
[6] Rec. Doc. 713.
[7] 461 U.S. 95, 102 (1983)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–496 (1974)).

stages" of the litigation.[8] *Farmer v. Brennan*, a case decided by the Supreme Court that involved prison conditions and injunctive relief, instructs that in prison cases, injunctive relief should be determined considering the "current attitudes and conduct, … at the time suit is brought and persisting thereafter."[9] Defendants point to the decision in *Dockery v. Cain*, wherein the Fifth Circuit affirmed the district court's decision to allow post-trial briefing of current prison conditions beyond the date of the trial.[10] Defendants once again insist that the Fifth Circuit's decision in *Valentine v. Collier* demands that the Court consider post-trial remedial evidence of changed prison conditions up to the time of judgment.[11]

Defendants contend they are offering evidence of "a small number of specific, concrete and unassailable factual developments to the Court's attention."[12]  Defendants seek to offer evidence of: (1) LSP's re-accreditation by the American Correctional Association ("ACA"), (2) LSP's hiring additional medical providers, and (3) LSP's implementation of electronic healthcare records.  Defendants argue "[t]hese matters are significant, undisputable, and should be considered by the Court prior to ruling."[13]

Plaintiffs oppose Defendants' motion on several grounds.  First, Plaintiffs note that, in this Court's prior ruling, it found that the facts of *Valentine* were distinguished from the facts of this case.[14]  Plaintiffs point to widespread jurisprudence holding that, under Rule 26 of the Federal Rules of Civil Procedure, a district court has the authority and discretion

---

[8] 568 U.S. 85, 90 (2013)(cleaned up).
[9] 511 U.S. 825, 827 (1994)(citation omitted).
[10] 7 F. 4th 375, 377 (5th Cir. 2021).
[11] Rec. Doc. 762-7, pp. 2-3 (quoting *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021).
[12] *Id.* at p. 3.
[13] *Id.*
[14] Rec. Doc. 623, pp. 4-5.

to limit the frequency or extent of discovery.[15]   Plaintiffs also counter Defendants'
contention that Defendants are entitled to present evidence of alleged current prison
conditions at LSP after conclusion of the trial, citing to the Supreme Court's recognition
in *Brown v. Plata* that "[o]rderly trial management may require discovery deadlines," and
even in prison cases, "it is within the sound discretion of the court" to order "that evidence
of 'changed prison conditions' after [a certain] date would not be admitted."[16]   The *Brown*
Court also affirmed the lower court's implementation of a discovery cutoff a few months
before trial:  "The order stated that site inspections of prisons would be allowed until that
date, and that evidence of 'changed prison conditions' after that date would not be
admitted."[17]   The Court found this limitation to be "within the sound discretion of the three-
judge court."[18]   Plaintiffs also offer that *Farmer*, on which Defendants rely, holds that
allowing evidentiary developments that "postdate the pleadings and pretrial motions" is
within the court's discretion.[19]   Plaintiffs argue that *Valentine* and *Dockery* are
distinguishable from this case, and following Defendants' interpretation of these cases
would "upend the orderly disposition of this case, render evidentiary and briefing
deadlines meaningless, and empower Defendants to indefinitely defer resolution,
prolonging the duration for which class members are forced to suffer unconstitutional
care."[20]

---

[15] Rec. Doc. 765, p. 4 (citing *Hall v. Louisiana*, 2014 WL 2560715, at *1 (M.D. La. June 6, 2014)).
[16] 563 U.S. 493, 523 (2011).
[17] *Id.*
[18] *Id.*
[19] *Farmer*, 511 U.S. at 846.
[20] Rec. Doc. 765, pp. 6-7. Plaintiffs argue in a footnote that *Dockery* is "distinguishable from the instant
case and does not mandate continuous supplementation of an up-to-date evidentiary record. See Rec.
Doc. 702 at 6-7 (explaining that the *Dockery* record was years old by the time of trial, the court had not
bifurcated the case into separate liability and remedy phases, and the Fifth Circuit merely held that it was
not an abuse of discretion to order updated discovery)".

Alternatively, Plaintiffs urge the Court to deny Defendants' motion under the Federal Rules of Civil Procedure ("FRCP") and the Federal Rules of Evidence ("FRE").[21] Plaintiffs contend that this new evidence should be inadmissible under FRCP 37(c) because Defendants have not complied with FRCP 26(e)(1), which requires a party to supplement disclosures "in a timely manner" after "learn[ing] that in some material respect the disclosure was incomplete."  Plaintiffs contend FRCP 37(c) prohibits Defendants from using this information "unless the failure was substantially justified or harmless."[22]  Plaintiff highlight the delay between Defendants' knowledge of these updates and disclosure to the Plaintiffs in this motion:

> As the proposed Johnson Declaration shows, Defendants have known about this proposed evidence for weeks or even months. They assert that ACA accreditation was complete by August 24; that LSP began utilizing electronic healthcare records on October 3; and that the new hires started between September 17 and October 31. In other words, they waited a month and a half to inform Plaintiffs of the electronic medical records; between two weeks and two months for the new hires; and nearly three months for the ACA accreditation. Their motion is bereft of any explanation for this delay.[23]

Plaintiffs also argue that FRE 403 requires exclusion of this evidence because "its probative value is substantially outweighed by the danger of … undue delay or unfair prejudice."[24]  Plaintiffs maintain that they are "prejudiced by their inability to conduct even minimal discovery into these matters, much less engage in expert analysis and trial cross-examination."[25]

---

[21] *Id.* at p. 7.
[22] *Id.*
[23] *Id.* (quoting Rec. Doc. 762-1 at ¶¶ 3-8).
[24] *Id.* at p. 8.
[25] *Id.*

Plaintiffs also contend the probative value of the offered evidence is slight because there is no dispute that LSP is ACA accredited; the replacement of or additional providers does not establish any improvement to the quality of care or more timely access to care; and the implementation and utilization of electronic healthcare records does not establish that the program is consistently operating or that the medical records are being used appropriately such that there is a reduction in the risk of harm.

In terms of Defendants' claim that this new evidence moots some of Plaintiffs' claims, Plaintiffs point out that, in the case upon which Defendants rely, *Already, LLC v. Nike, Inc.*, the Supreme Court explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[26] Plaintiffs maintain that Defendants fail to carry this formidable burden by offering evidence that has not been tested nor shown by Defendants how it remedies the constitutional violations.

Finally, Plaintiffs contend most of Defendants' evidence should be excluded under FRE 802 as hearsay.

## III.   LAW & ANALYSIS

### A.  Trial Court Has Wide Discretion to Control Litigation under FRCP 26

As they have argued before, Defendants contend the Court is bound in this case by the principles set forth in *Valentine v. Collier*.  The Court agrees; however, as the Court previously stated:

> [T]he Court does not find that *Valentine* is particularly applicable to the facts
> of this case.  While the *Valentine* court did address a deliberate indifference

---

[26] Rec. Doc. 765, p. 9 (quoting *Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000))).

claim regarding the health care being provided by the prison, it was entirely within the context of the prison's response to ever-changing health guidelines, CDC regulations, and recommendations in response to the novel COVID-19 pandemic sweeping through the country.  Further, in *Valentine*, there was evidence before the district court that prison officials were trying to respond to the rapid changes in general and prison health guidelines for addressing the pandemic.[27]

Nevertheless, the Court acknowledges that, in considering injunctive relief in a prison setting, the Court must consider "prison authorities' current attitudes and conduct" from the time the suit is brought and "persisting thereafter" as instructed in *Farmer*.[28]  Further, as the Fifth Circuit held in *Valentine*, it is appropriate to consider evidence "from the time suit is filed to the judgment."[29]  However, the Fifth Circuit has repeatedly held that a trial court has wide discretion to control the course of litigation, including the authority to control the scope and pace of discovery.[30]

Indeed, the Supreme Court has cautioned that discovery does have "ultimate and necessary boundaries,"[31] and it is well established that the scope of discovery is within the sound discretion of the trial court.[32]  Moreover, the Supreme Court recognizes that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery."[33]  This is true even in prison cases involving injunctive relief for continuing constitutional violations. As Plaintiffs submit, the Supreme Court in *Brown v. Plata* held that "[o]rderly trial management may require discovery deadlines and

---

[27] Rec. Doc. 623, p. 4.

[28] *Farmer*, 511 U.S. at 846.

[29] *Valentine*, 993 F.3d at 282.

[30] *In re Ramu*, 903 F.2d at 318 (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

[31] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[32] *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724 (5th Cir.1990) ("the district court has wide discretion in determining the scope and effect of discovery").

[33] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir.1985).

a clean distinction between litigation of the merits and the remedy."[34]   The *Brown* Court

also affirmed the lower court's implementation of a discovery cutoff a few months before

trial:  "The order stated that site inspections of prisons would be allowed until that date,

and that evidence of 'changed prison conditions' after that date would not be admitted."[35]

The Court found this limitation to be "within the sound discretion of the three-judge

court."[36]

A case very similar to the present was filed by a class of plaintiffs at David Wade

Correctional Center, another Louisiana prison, in *Tellis v. LeBlanc*.[37]   The Court notes

that, generally, the same counsel representing the parties in this case represent the

parties in *Tellis*.  In *Tellis*, the plaintiffs sought injunctive relief, challenging the conditions

of confinement for inmates on extended lockdown at the prison and challenging the

mental health care provided to inmates on extended lockdown. The plaintiffs alleged that

the prison's policies and practices violate the Eighth Amendment, First Amendment, the

ADA, and the RA.[38]  At issue before the court were two summary judgment motions filed

by the defendants.[39]

At the outset, due to "the complicated nature of [the] case," the court bifurcated the

case into a liability phase and a remedy phase.[40]   The court advised that, during the

liability phase, the court would consider evidence of violations "as of March 2020, which

was the discovery cutoff date."[41]  The court noted that it would proceed to a remedy phase

---

[34] 563 U.S. 493, 523 (2011).
[35] *Id.*
[36] *Id.*
[37] No. 18-541, 2022 WL 67572 (W.D. La. Jan. 6, 2022).
[38] *Id.* at *1.
[39] *Id.*
[40] *Id.* at *2.
[41] *Id.*

only if it found liability for any constitutional violations; the court further advised that, "[a]t the remedy phase, the Court will allow Defendants to present evidence of the conditions at DWCC as of March 31, 2022, in order to show that they have remedied any violation and that an injunction would be moot."[42]  The *Tellis* court did not leave discovery open-ended to the date of judgment in the remedy phase, as Defendants suggest is required, but set a deadline for taking such evidence.

In their motions for summary judgment, the defendants relied on evidence the court held to be inadmissible because "much of the facts and evidence relied on by Defendants comes after March 2020."[43]  The court observed that,

> Defendants expressed their position that the Court must consider the current conditions at DWCC regardless of its prior discovery order. The Court denied this motion orally on the record … It appears Defendants filed the motion for summary judgment with an expectation that they would be successful in convincing the Court of their legal position. Defendants were mistaken, and the Court finds their vast reliance on inadmissible evidence is reason in itself to deny this motion.[44]

While the *Tellis* court was not at the remedy stage when it issued this ruling, it clearly set discovery deadlines for both the liability and remedy phases with certain dates. When the defendants attempted to submit evidence beyond the discovery deadline, the court rejected this attempt, holding fast to its discovery deadlines.

The law is well settled that the Court has the discretion to manage discovery and litigation.  The suggestion by Defendants that they may disregard the discovery orders of this Court and submit any evidence they wish "up to judgment," without regard to the

---

[42] *Id.*
[43] *Id.* at *3.
[44] *Id.*

court's wide discretion to manage discovery, does not comport with the jurisprudence discussed above.

Finally, the Court finds that the parties are "lost in the weeds." In the Court's view, this does not present a discovery issue at all. Title V of the Federal Rules of Civil Procedure addresses "Discovery and Disclosures." The thirteen Rules (Rules 26-39) which comprise Title V employ the word "pretrial" fourteen times. Rule 26 refers to "Pretrial Disclosures," the "Time for Pretrial Disclosures," and "Trial Preparation." The parties have rested. Evidence is closed and the matter is submitted. The time for discovery has long passed. If, as if Defendants suggest, the record remains open to new evidence until the ink is dry on the final judgment, then Title V of the Federal Rules of Civil Procedure is rendered meaningless. "[O]ne of the purposes of the Federal Rules of Civil Procedure is to eliminate 'trial by ambush.'"[45] The orderly administration of justice requires a time for pretrial discovery to permit the parties to prepare their claims and defense. The rules are no different in a case such as this where prospective relief is sought. If, as the Defendants herein argue, conditions have changed post-trial but pre-judgment, logic and order are not simply suspended. Rather, an orderly administration of controversies seeking prospective relief call for the Court to rule on the relief requested as of the close of the evidence. If injunctive relief is ordered and the defendant cures the deficiencies, in whole or in part, then relief from the injunction is appropriate.

### B. Timeliness, Undue Delay, Prejudice to Plaintiffs

The entire purpose of bifurcating the trial into liability and remedy phases was to determine if any constitutional deficiencies existed, and if deficiencies were found, to

---

[45] *Woods on Behalf of Woods v. International Harvester Co., Inc.,* 697 F.2d 635, 639 (5th Cir.1983)

permit the Defendants to ameliorate the deficiencies, short of which the Court would craft appropriate relief for any constitutional violations which remained at the close of remedial discovery, which was April 1, 2022.[46]  Notably the Court's liability Ruling was issued on March 31, 2021.[47] There was a 15-month delay between the liability Ruling and the remedy phase trial - 15 months' time for the Defendants to implement or begin implementing resolutions and to offer evidence of same at the remedy trial.  At the remedy trial, the Court granted the Defendants latitude to offer evidence of remedial actions which occurred after the remedy phase discovery cutoff date (4/1/22) because it was disclosed ten days prior to the remedy trial, and the Court found that Plaintiffs had time to prepare for, respond, and/or rebut the evidence during trial.[48]  The Court rejected Defendants' attempts to introduce evidence at trial of documents disclosed to Plaintiffs on April 18, 2022 and expert testimony based on a site visit conducted on the first day of trial, as untimely and thus prejudicial[49]  As Plaintiffs note, Defendants did not disclose this "new" evidence to Plaintiffs until three weeks before post-trial briefs are due, which is likewise considerably prejudicial.

As discussed above, Plaintiffs argue that Defendants were untimely in the disclosure of this "new" evidence; thus, because Defendants failed to supplement discovery disclosures in a "timely manner" as required by FRCP 26(e)(1), they are prohibited under FRCP 37(c) from using the information unless the failure is "substantially justified or is harmless."  Defendants do not address the timeliness of these disclosures or how this submission so close to briefing deadlines does not substantially prejudice

---

[46] Rec. Docs. 629, 652.
[47] Rec. Doc. 594.
[48] Rec. Doc. 713, pp. 4-5.
[49] *See* Rec. Doc. 750 at 155-158:14; Rec. Doc. 752 at 164:7-166:20.

Plaintiffs.  Defendants simply offer evidence they claim is "concrete, specific, significant and cannot be contradicted."[50]

The issue is not just whether Defendants have taken the post-trial actions they claim but whether those actions are actually remedial of the constitutional violations.[51]  At this point in the litigation, Plaintiffs do not have time to both meet their post-trial briefing deadline and investigate whether Defendants' purported changes remedy or moot certain claims.  Thus, the Court finds that this post-trial evidence is untimely and inadmissible under FRCP 37 and is more prejudicial than probative under and FRE 403.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' *Motion to Supplement the Record and Admit Certain Evidence of Current Conditions*[52] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 7th day of December, 2022.

_Shelly D. Dick_
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LO**

---

[50] Rec. Doc. 762-7, p. 4.
[51] For example, regarding electronic medical files, Plaintiffs' claims are not moot simply because Defendants have established this procedure; rather, the question is whether this change is effectively impacting the standard of care such that it ameliorates the unreasonable risk of harm both at present and in the future.
[52] Rec. Doc. 762.