## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KENTRELL PARKER, on behalf of himself and all others similarly situated, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>DARREL VANNOY, in his official capacity as Secretary of State of Louisiana, *et al.*,<br><br>*Defendants.* | Civil Action No. 3:15-cv-00318<br><br>Chief Judge Shelly D. Dick<br><br>Magistrate Judge<br>Richard L. Bourgeois |

## DEFENDANTS' THRESHOLD MERITS BRIEF

The Fifth Circuit recently vacated this Court's judgment and remanded "for further proceedings consistent [with its opinion]." *Parker v. Hooper*, 171 F.4th 736, 761 (5th Cir. 2026) (en banc). The Fifth Circuit held that the Court committed "serious legal error" by "discounting the Defendants' innovations and improvements to prison medical care and disability care that were made during the remedial phase and post-trial" that "gave rise to a strong legal likelihood that the Defendants were not guilty of continued deliberate indifference or disability discrimination." *Id.*

On remand, Defendants asked the Court to allow threshold merits briefing to determine the scope of the remand and identify any issues remaining to be resolved before entering a scheduling order. ECF 861 at 1. The Court agreed. ECF 862. Accordingly, Defendants submit this brief to explain that no issues remain within the scope of the remand and that they are entitled to judgment in their favor. To be doubly sure, Defendants submit the attached declarations to show that they maintain or

1

have improved the status quo that "gave rise to a strong legal likelihood that the Defendants were not guilty of continued deliberate indifference or disability discrimination." *Parker*, 171 F.4th at 761. This Court thus should render judgment for Defendants.

ARGUMENT[1]

## I. DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON THE CONSTITUTIONAL CLAIMS.

### A. The Fifth Circuit Resolved the Constitutional Claims in Defendants' Favor.

In reviewing this Court's Eighth Amendment analysis, the Fifth Circuit held that the Court "used the wrong legal standard in gauging the status of LSP's [Louisiana State Penitentiary] medical care following watershed improvements." *Id.* at 754. The "Remedial Opinion described the improvements as 'robust' or partially corrective of problems described in the Liability Opinion" yet erroneously rejected those improvements as "'not enough' to cleanse the Defendants of deliberate indifference or remove the threat of future unconstitutional denial of adequate medical care." *Id.* at 754–55. The Court also "erroneously refused to update its remedial analysis with evidence of critical reforms that LSP achieved in the seventeen months between the remedial trial and the Remedial Opinion" and "applied the wrong standard when addressing the prison's compliance with [the Americans with Disabilities Act and the Rehabilitation Act]"—(together, the "ADA/RA"). *Id.* at 755. Because those "errors reflect a fundamental misunderstanding

---

[1] The Court and the Fifth Circuit have explained the facts and procedural history of this case. *See* ECF 778 at 4–9; *Parker*, 171 F.4th at 741–42. Given this Court's long-standing familiarity with this case, Defendants omit the background section to streamline briefing for the Court's convenience.

2

of the purpose of injunctive relief in institutional-reform litigation," the Fifth Circuit vacated the Remedial Order and "remanded for a thorough reconsideration in light of the correct standards." *Id.*

Specifically, the Fifth Circuit remanded for the Court to reconsider six "areas of prison medical care" in which the Court "acknowledged but then [improperly] discounted improvements." *Id.* at 758. Those six areas are:

"1. Clinical care" in which the Court "found that LSP had remedied three out of five deficiencies noted in the Liability Order," any "problem" with the "medical records" "was solved after the remedial hearing by electronic health records" and the Court's contrary "findings ignore[d] the very high bar required to establish ongoing deliberate indifference of the Defendants." *Id.*

"2. Sick call" in which the Court's "analysis [was] unmoored to the rigorous Eighth Amendment standard, particularly because it disregarded that substantial improvements should have eliminated any finding of ongoing deliberate indifference." *Id.* at 758–59.

"3. Specialty care" in which "the important advances that were made by Defendants … negated a legitimate finding of ongoing deliberate indifference." *Id.* at 759.

"4. Emergency care" in which "LSP's response may be less than transformative but sufficient to dispel the notion of deliberate indifference" and "disagreements over medical judgment or isolated negligence … do not rise to the level of quasi-criminal deliberate indifference." *Id.*

"5. Inpatient/Infirmary care" in which the Court "found the integration of additional trained nurses inadequate due to [only] occasional lapses" and "found the call buttons inadequate to satisfy its erroneous view of constitutional standards." *Id.*

"6. Medical Leadership/Organizational Structure" in which the Court's Liability Opinion adopted the "dubious proposition that a federal court may hold that a state institution's governing organizational structure—as opposed to actions of identified leaders in the structure—is unconstitutional." *Id.* The Fifth Circuit also rejected as "[n]onsense" the Court's reasons for "discount[ing]" the improvements Defendants made in response to the Liability Opinion. *Id.* at 760.

Those six areas are the only constitutional issues within the scope of the Fifth Circuit's remand. The Fifth Circuit, however, left no room for this Court to reconsider those issues. For the Fifth Circuit itself resolved those issues in Defendants' favor: "None" of the "Remedial Opinion complaints, coupled with the affirmative changes made by Defendants, rises to the level of showing ongoing deliberate indifference by the Defendants." *Id.* "That is especially true, given that the American Correctional Association ("ACA") reaccredited LSP in August 2024 after the prison satisfied 100% of 64 mandatory standards and 98.98% of the nonmandatory standards set forth by the ACA." *Id.* The Fifth Circuit thus resolved the constitutional claims in Defendants' favor.

**B. The Court Should Render Judgment in Defendants' Favor on the Constitutional Claims.**

Accordingly, the only thing left for this Court to do on remand is to acknowledge the Fifth Circuit's holding and render judgment for Defendants on the

4

constitutional claims. Because LSP officials "have attempted to care for [prisoners'] medical needs, even if the care falls short, they have not exhibited subjective deliberate indifference." *Id.* at 756. The Fifth Circuit held that Defendants' changes "gave rise to a strong legal likelihood that [they] were not guilty of continued deliberate indifference" and so Plaintiffs have no hope of showing the opposite—that those same "efforts to fix unconstitutional conditions [were] so lacking that they … reflect[ed] prison officials' deliberate indifference." *Id.* at 754, 761. Defendants' evidence thus already defeated Plaintiffs' constitutional claims per the Fifth Circuit, and Defendants are entitled to judgment in their favor on these claims.

Lest there be any doubt, the same facts that "gave rise to a strong legal likelihood that the Defendants were not guilty of continued deliberate indifference" are the same or better today. *Id.* at 761. That was "especially true" when the ACA "reaccredited LSP in August 2024." *Id.* at 760. And it remains just as true today—the ACA reaccredited LSP again in February 2026. *See* Ex. A-10 (2026 ACA Reaccreditation). More, the attached declaration from Chad M. Hinton, Medical Department Director at LSP, establishes that Defendants have maintained or improved that status quo. *See* Ex. A. Plaintiffs thus cannot meet their burden to show that Defendants either "failed to act" or did so "with subjective deliberate indifference." *Parker*, 171 F.4th at 755 (citation modified). Defendants are entitled to judgment in their favor on the constitutional claims.

5

## II.   DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON THE ADA/RA CLAIMS.

### A. The Fifth Circuit Drastically Narrowed the ADA/RA Claims.

The Fifth Circuit concluded that this Court "made the same kind of mistakes in regard to LSP's alleged violations of the ADA/RA" as it did "with the Eighth Amendment." *Parker*, 171 F.4th at 760. Specifically, the "Remedial Opinion continually discounted improvements that it knew had been made for the benefit of disabled prisoners" and "substituted its view of prison management for the statutory standard"—which amounted to applying "its own preferred standard of medical care for the prison" instead of the governing legal standard. *Id.*

So what is that standard? Not the ADA—"the 'ADA does *not* set out a standard of care for medical treatment" or "impose[] a 'standard of care' on States." *Id.* (citations omitted) (collecting cases). "The ADA is a *discrimination* statute," so logically Plaintiffs needed to show Defendants discriminated against them because of their disabilities. *Id.* (citation omitted). "The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Id.* (citation omitted). Nor does it "require[] States to provide a certain level of benefits to individuals with disabilities." *Id.* at 761 (citation omitted). The Remedial Opinion's "ADA/RA remedies" thus "went too far" in their "micromanagement of the prison's facilities, personnel, procedures, and standards of care," and that micromanagement "require[s] reconsideration." *Id.* In other words, pulling back the ADA/RA remedies' "micromanagement of the prison's facilities, personnel, procedures, and standards of care" is the only ADA/RA issue before the Court on remand. *Id.*

6

**B. The Court Should Render Judgment in Defendants' Favor on the ADA/RA Claims.**

The evidence Defendants already admitted or proffered "gave rise to a strong legal likelihood that the Defendants were not guilty of continued deliberate indifference or disability discrimination." *Id.* That is why the Fifth Circuit "vacated" this Court's "judgment"—it should have been in Defendants' favor to begin with. *Id.* (capitalization modified). That remains even more true today. The attached declarations establish that Defendants maintain or have improved upon the status quo that the Fifth Circuit held extinguished any liability. Defendants thus are entitled to judgment in their favor.

This Court identified seven discrete deficiencies in Defendants' disability care that it viewed as violations of the ADA/RA: (1) architectural barriers, (2) use of inmate orderlies, (3) segregation of disabled prisoners, (4) ADA coordinators, (5) staff training, (6) accommodation requests and disability-related grievances, and (7) assignment of "no duty" status. ECF 778 at 6. But the Fifth Circuit disagreed: Defendants' evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination." *Id.* at 761. The attached declarations confirm the Fifth Circuit's assessment because Defendants have maintained or improved upon that status quo. *See* Ex. B (Declaration of Odis Ratcliff, Facility Maintenance Manager at LSP), Ex. C (Declaration of Sharita Spears, Deputy Assistant Secretary and ADA Director for the Department of Corrections), Ex. D (Declaration of Jennifer Stickells, Registered Nurse Program Coordinator at LSP).

**1. Architectural Barriers**: The Liability Opinion found that architectural barriers impeded access to programs, services, and activities in the Ash dorms. ECF 594 at 49. Defendants' evidence established that they made Ash dorms accessible to disabled prisoners. ECF 770 at 60 (citing T. Falgout 30(b)(6) deposition, JX72-a at 19–20)); Ex. E (2022 30(b)(6) deposition of Tracey Falgout). Of the 191 architectural barriers identified by Plaintiffs' expert at the liability trial, 141 were remedied or were no longer relevant for prisoners to access programs. *See* ECF 770 at 59–60 (citing ECF 748 at 65:13–66:4 (M. Mazz testimony)). The Remedial Opinion found the conversion of Ash dorms to accessible dorms was a "welcome improvement allowing greater program access" because it placed disabled inmates closer to the treatment center, pill call, cafeteria, law library, education building, and chapels. ECF 778 at 72. And Defendants' evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination." *Parker*, 171 F.4th at 761.

Today, the facts are the same or better. The attached declarations establish:

- Main Prison (Ash 1–4) and every camp[2]  have accessible dorms and cells. Ex. B; Ex. D.

- The nursing units replaced drinking fountains with a water station. Ex. B.

- Defendants addressed 39 issues identified by Plaintiffs' 2022 expert report. *Id.*

- Sixteen of that report's identified issues are no longer relevant because disabled inmates no longer use those areas. *Id.*

---

[2] Except Camp F because it is the trustee camp and does not have any cells. *See* Ex. D.

- The U.S. Department of Justice determined that 2 of that report's identified issues are not ADA violations, and these access points continue to be continuously manned by security staff. *Id.*

- Defendants intend to address another 78 of that report's identified issues by the end of Fiscal Year 2026–27. *Id.*

- The remaining 13 issues require major renovations to LSP's facilities and require approval and funding from Facility Planning. *Id.*

- Accessology evaluated LSP in 2024 and prepared an individual compliance plan that identified areas of high, medium, and low priority—which will cost more than $6 million dollars. Ex. C.

- LSP maintenance has been instructed to address as many of those items as possible with the existing budget. *Id.*

- The Department of Corrections has submitted a budget request to Capital Outlay for funding to address the remaining items. *Id.*

- Implementing Accessology's plan should address the remaining items identified in Plaintiffs' 2022 expert report. Ex. B.

**2. Inmate Orderlies**: The Liability Opinion found the inmate-orderly program was inadequate to overcome the above structural barriers to access. ECF 594 at 100. Defendants submitted evidence establishing that there was no pervasive pattern of abuse or neglect by orderlies. ECF 752 at 30:7–23 (C. Park Testimony); ECF 757 at 29:13–19 (J. Stickells testimony). The Remedial Opinion found "no pervasive pattern of orderly abuse and/or neglect of disabled patients." ECF 778 at 77. Even so, the Remedial Opinion found an insufficient number of orderlies assigned to disabled inmates and that they were inadequately trained and supervised. *Id.* at 75–80. Yet the Fifth Circuit concluded that Defendants' evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination." *Parker*, 171 F.4th at 761.

Again, today, the facts are the same or better. The attached declaration from Jennifer Stickells shows that orderly training has improved since the remedy trial:

- Orderly training consists of a Certified Nursing Assistant (CNA) skills video, hands-on training, a practicum, demonstrations, Q&A session, fire safety and evacuations, and CPR training. Ex. D.

- A new class of orderlies is trained approximately every three months, and all current orderlies active in the program receive annual training. *Id.*

- Orderlies are still screened by Classification, Security, and Mental Health before they are accepted into the program, and orderlies are removed from the program for disciplinary issues (*e.g.*, positive drug screen), abuse, neglect, etc. *Id.*

- Orderlies are assigned to assist disabled inmates in the accessible dorms, assisted living dorms, the Nursing Units, the ATU, and Physical Therapy. *Id.*

**3. Segregation of Disabled Prisoners**: The Liability Opinion found that segregating disabled prisoners was unjustified. ECF 594 at 55. Defendants' evidence at the remedy trial established that the Ash dorms, where disabled inmates are housed, are centrally located near the Treatment Center, pill call, the cafeteria, the law library, and the education building and provide the easiest means of access to two of LSP's chapels. ECF 770 at 60–61 (citing T. Falgout individual deposition, JX73-a at 99–101); Ex. F (2022 Deposition of Tracy Falgout). The Remedial Opinion considered this claim abandoned because Plaintiffs "raise[d] no claims of unjust segregation under the ADA." ECF 778 at 6 n.18. Again, the Remedial Opinion found the conversion of Ash dorms to accessible dorms (thus integrating disabled prisoners) a "welcome improvement allowing great program access." ECF 778 at 72. Defendants'

evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination." *Parker*, 171 F.4th at 761.

Today, the facts are the same. The attached declaration from Jennifer Stickells shows that Defendants continue to maintain that status quo. *See* Ex. D.

**4. ADA Coordinators:** The Liability Opinion held that LSP's ADA Coordinators lacked sufficient education, training, and qualifications to carry out the obligations of an ADA Coordinator. ECF 594 at 56. Defendants' evidence at the remedy trial showed that all ADA Coordinators had to complete ADA training to become certified ADA Coordinators by May 2023. ECF 757 at 97 (S. Spears testimony). At the time of the remedy trial, Deputy Warden Oliveaux recently had been named the ADA Coordinator, had completed 35 hours of ADA training, and intended to complete the remaining 5 hours of training to become a certified ADA Coordinator. ECF 757 at 54, 71–75 (A. Oliveaux testimony).

In January 2022, the Department of Corrections created a new ADA Director position for the entire Department, and Deputy Assistant Secretary Sharita Spears was assigned to that role. *Id.* at 87–88 (S. Spears testimony). Spears completed 50 hours of training through the ADA national symposium and passed an exam to become a certified ADA Coordinator. *Id.* at 95–97. As ADA Director, Spears supervises all ADA Coordinators at all Department facilities, reviews institutional policies and directives related to the ADA, maintains the ADA database, creates and coordinates ADA training, and answers second-level grievances related to the ADA. *Id.* at 88–91, 105.

11

The Remedial Opinion found that this issue remained and that Warden Oliveaux was "perhaps less qualified than her predecessor" to serve as LSP's ADA Coordinator. ECF 778 at 81. The Remedial Opinion concluded that Warden Oliveaux's 35 hours of ADA training (which her predecessor had not received) was insufficient because it "pertained primarily to physical barriers, an area over which she has little involvement" and that the hiring of a new ADA Director "d[id] not affect the Court's finding." *Id.* at 82, 83.

According to the Fifth Circuit, the "Remedial Opinion continually discounted improvements that it knew had been made for the benefit of disabled prisoners." *Parker*, 171 F.4th at 761. Defendants' evidence, which "strong[ly]" indicated they "were not guilty of continued ... disability discrimination," should not have been ignored. *Parker*, 171 F.4th at 761.

Once again, the facts are the same or better today. The attached declaration from Sharita Spears shows that the number of and training for ADA Coordinators has increased:

- LSP has three ADA Coordinators: Ashli Oliveaux (LPN), Tonya Faust (RN), and Jennifer Stickells (RN). Ex. C.

- Oliveaux oversees employee and inmate ADA concerns, Stickells handles inmate ADA requests, and Faust responds to ADA-related ARPs. *Id.*

- Oliveaux and Faust are certified ADA Coordinators, and Stickells is in the process of receiving her certification. *Id.*

- To become certified, an ADA Coordinator must complete 42 hours of study and pass a comprehensive examination. *Id.*

- All Department ADA Coordinators receive ADA training on an individual basis as necessary based on the institution's needs on top

12

of their annual ADA training at employee in-service and triennial ADA Coordinator training as required by La. R.S. 46:2595. *Id.*

**5. Staff Training**: The Liability Opinion found that LSP staff are inadequately trained to assist with disabled inmates. ECF 594 at 59. According to the Court, the one-hour of annual training received by medical and security staff placed more emphasis on security concerns than on accommodations and care of disabled inmates, and there was no other formal ADA training for staff. *Id.* Department ADA Director Sharita Spears testified at the remedy trial that she overhauled the ADA staff training program at headquarters and local facilities, including LSP, and that the annual in-service training offered to all correctional staff at facilities would be enhanced and updated to include additional ADA topics. ECF 757 at 90–91, 94–95.

The Remedial Opinion found that this issue remained and that LSP had removed the requirement from Directive 01.016 that all employees receive "comprehensive annual training … relevant to access to programs[] and activities available to individuals with disabilities." ECF 778 at 84. But again, the Fifth Circuit found that Defendants' evidence "strong[ly]" indicated they "were not guilty of continued … disability discrimination" and should not have been ignored. *Parker*, 171 F.4th at 761.

Once again, the facts are the same or better today. The attached declaration from Sharita Spears shows that all Department staff receive ADA instructor-led training during New Employee Orientation, as well as ADA training as part of their annual in-service training, and that Department Supervisors are required by

13

Louisiana Revised Statute 46:2595 to complete ADA Supervisor training every three years. Ex. C.

**6. Accommodation Requests & Disability-Related Grievances**: The Liability Opinion found that LSP failed to properly handle accommodation requests—nearly all of which were initiated through the grievance process—and that staff "routinely fail to recognize when medical issues trigger the ADA." ECF 594 at 61–64. According to the Court, "all disciplinary decisions [were] left to the sole discretion of security personnel, without oversight by medical staff as to the appropriateness of discipline for disabled inmates." ECF 594 at 73.

At the remedy trial, Defendants presented evidence showing that LSP received approximately two accommodation requests per month from inmates. ECF 757 at 78:6–10 (A. Oliveaux testimony). Each accommodation request, including the name of the requestor, the date of the request, the type of accommodation requested, and the decision, was entered into the ADA Database maintained by the Department ADA Director. *Id.* at 100:19–102:11 (S. Spears testimony). Department ADA Director Spears reviewed the database two to three times per week and reviewed all new entries since her last review. *Id.* at 100:22–23; 103:21–104:5. Spears investigated denials of any accommodation request by reviewing the submitted documentation, discussing with the facility ADA Coordinator, and making a site visit as necessary. *Id.* at 102:12–103:20.

Defendants' evidence also showed that (a) a disciplinary writeup would not change the level of accommodation provided to a disabled inmate, (b) security staff

14

was trained to contact the ADA Coordinator when an inmate was disciplined for behavior potentially relating to a disability, (c) the Disciplinary Board may defer to the ADA Coordinator and/or Medical Department as to whether an inmate's disability played a role in the infraction, and (d) the ADA Coordinator participated in the disciplinary appeal process when requested. ECF 770 at 68–69 (citing JX72-a at 44, 47–49, T. Falgout 30(b)(6) deposition); Ex. E.

The Remedial Opinion concluded the issue remained. ECF 778 at 85–89. But Defendants' evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination" that should not have been ignored. *Parker*, 171 F.4th at 761.

Today, the facts are the same. The attached declaration from Jennifer Stickells shows that Defendants maintain that status quo. *See* Ex. D.

**7. Assignment of "No Duty" Status**: The Liability Opinion found that "LSP providers give thoughtful consideration to the inmate's medical conditions and/or impairments in determining the safety of participation in hobby craft." ECF 594 at 77. The Court, however, determined that Defendants failed to refute Plaintiffs' evidence that LSP issued blanket denials of duty status to disabled individuals, which prevented them from earning incentive wages and excluded them from participating in work release programs. ECF 594 at 77.

At the remedy trial, Warden Falgout testified that "the practice [of issuing duty status] ha[d] changed to afford more specificity for all staff to be able to understand and be able to provide the offender with abilities to do things based on limitations."

15

ECF 778 at 90 (citing JX72-a, T. Falgout 30(b)(6) Deposition at 55:3–7); Ex. E. Defendants also presented evidence that work assignments were made based on the inmate's limitations and abilities. ECF 778 at 91 (citing JX73-a, Falgout individual deposition at 97–99); Ex. F.

The Remedial Opinion held that Plaintiffs failed to carry their burden of proof "that LSP continues to violate the ADA/RA by uniformly excluding disabled inmates from certain duty statuses, work assignments, or hobby craft." ECF 778 at 89. And the Fifth Circuit agreed, holding that Defendants' evidence "gave rise to a strong legal likelihood that [they] were not guilty of continued … disability discrimination." *Parker*, 171 F.4th at 761.

Today, the facts are the same. The attached declaration from Jennifer Stickells shows that Defendants maintain that status quo. *See* Ex. D.

\*     \*     \*

At bottom, even if Plaintiffs had established that Defendants "fail[ed] to attend to the medical needs of [their] disabled prisoners," that was not enough to grant judgment in their favor. *Parker*, 171 F.4th at 760 (citation omitted). Plaintiffs had to establish Defendants' "continued … disability discrimination." *Id.* at 761. They did not (and so were not entitled to judgment in their favor) because Defendants' changes "gave rise to a strong legal likelihood that [they] were *not* guilty of continued … disability discrimination." *Id.* (emphasis added). Defendants' evidence thus already defeated Plaintiffs' ADA/RA claims per the Fifth Circuit, and

16

Defendants are entitled to judgment in their favor on these claims. This is even more true now that Defendants have improved the status quo.

## III.    DISCOVERY IS BEYOND THE SCOPE OF REMAND.

Plaintiffs believe they need discovery of "three categories of facts—"current conditions, any remedial measures since May 2022, and any planned improvements"—"to evaluate whether Defendants are still violating Class members' constitutional and statutory rights." ECF 855 at 1. Those issues, however, can only be new claims raised in a new lawsuit (should Plaintiffs choose to file one). As explained above, Defendants' evidence of "ongoing improvements and innovations" defeated Plaintiffs' claims, and the Fifth Circuit vacated the judgment in Plaintiffs' favor. *Parker*, 171 F.4th at 761. As the Fifth Circuit put it, this Court "fatally erred by finding ongoing subjective deliberate indifference in support of its broad injunction" and "made the same kind of mistakes in regard to LSP's alleged violations of the ADA/RA." *Id.* at 758, 760. Plaintiffs' claims thus failed at that point, so there is no "constitutional violation," much less one "that is likely to continue over time," that could justify reopening discovery. *Id.* at 756 (citation omitted).

To be doubly sure, Defendants have now bolstered their "strong legal likelihood that [they] were not guilty of continued deliberate indifference or disability discrimination" with additional evidence of continuing improvements. *Id.* at 761. They thus are doubly entitled to judgment in their favor on *this* Complaint. If Plaintiffs believe *new* instances of subjective deliberate indifference or disability discrimination have arisen, that is a matter for a *new* lawsuit. *See In re Westcott*, 135 F.4th 243, 246 (5th Cir. 2025) ("[T]he proper way to challenge [a new protocol] is to

17

bring a new suit[.]"); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (rejecting amendment that "would have established an entirely new factual basis for the plaintiffs' claims and, consequently, would have required that the parties reopen discovery and alter their trial strategies"). Per the Fifth Circuit, however, Defendants have won this one.

## CONCLUSION

For these reasons, the Court should grant this motion and render judgment for Defendants.

Dated: July 21, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Randal J. Robert*
Randal J. Robert (#21840)
Connell L. Archey (#20086)
Keith J. Fernandez (#33124)
Evan D. Young (#41462)
*Special Assistant Attorneys General*
BUTLER SNOW LLP
445 North Boulevard, Ste. 300 (70802)
Box 2997
Baton Rouge, LA 70821
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
Randy.Robert@butlersnow.com
Connell.Archey@butlersnow.com
Keith.Fernandez@butlersnow.com
Evan.Young@butlersnow.com

Jeffrey K. Cody (#28536)
Caroline T. Bond (#34120)
*Special Assistant Attorneys General*
SHOWS, CALI & WALSH, L.L.P.
628 St. Louis Street
P. O. Drawer 4425
Baton Rouge, LA 70821

18

Telephone: (225) 346-1461
Facsimile: (225) 346-1467
jeffreyc@scwllp.com
caroline@scwllp.com

*Counsel for Defendants*

19