# EXHIBIT F

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CIVIL ACTION NO. 3:15-cv-318

JUDGE SFF               MAGISTRATE RLB


JOSEPH LEWIS, JR., ET AL, on behalf of
themselves and all others similarly situated,

Plaintiffs

v.

BURL CAIN, Warden of the Louisiana State
Penitentiary in his official capacity, et al,

Defendants


Deposition of TRACY JOHN FALGOUT,
given the above-entitled cause, pursuant to
the following stipulation, before Lori L.
Marino, Certified Shorthand Reporter, in and
for the State of Louisiana, via Zoom
videoconference on Tuesday, March 8, 2022,
commencing at 2:22 p.m.


REPORTED BY:

Lori L. Marino
Certified Court Reporter

2

APPEARANCES:

(ALL PARTICIPANTS PRESENT VIA ZOOM
VIDEOCONFERENCE:)


PROMISE OF JUSTICE
1024 ELYSIAN FIELDS AVENUE
NEW ORLEANS, LOUISIANA  70117
TELEPHONE:  (504) 529-5955

BY: REBECCA R. RAMASWAMY, ESQ.
rramaswamy@defendla.org
REPRESENTING THE PLAINTIFFS


SOUTHERN POVERTY LAW CENTER
201 ST. CHARLES AVENUE, SUITE 2000
NEW ORLEANS, LOUISIANA  70170
TELEPHONE:  (504) 352-4398

BY:  EMILY B. LUBIN, ESQ.
emily.lubin@splccenter.org
REPRESENTING THE PLAINTIFFS


SHOWS, CALI & WALSH, LLP
628 ST. LOUIS STREET
BATON ROUGE, LOUISIANA  70802
TELEPHONE:  (225) 342-1461

BY:  JEFFREY K. CODY, ESQ.
jeffreyc@scwllp.com
REPRESENTING THE DEFENDANTS

3

       E X A M I N A T I O N          I N D E X


   TRACY JOHN FALGOUT
   17544 TUNICA TRACE
   ANGOLA, LOUISIANA  70712


   TITLE                                    1

   APPEARANCES                              2

   WITNESS INDEX                            3

   AGREEMENT OF COUNSEL                     4

   EXAMINATION BY MS. RAMASWAMY             5

   WITNESS'S CERTIFICATE                    136

   REPORTER'S CERTIFICATE                   137




   E X H I B I T              I N D E X

   EXHIBIT 1                                9

   EXHIBIT 2                                19

   EXHIBIT 3                                20

   EXHIBIT 4                                120

4

S T I P U L A T I O N

It is stipulated and agreed by and between Counsel for the parties hereto that the deposition of TRACY JOHN FALGOUT is hereby being taken pursuant to the Federal Rules of Civil Procedure for all purposes in accordance with law;

That the formalities of certification and filing are specifically waived;

That the formalities of reading and signing are specifically not waived.

That all objections, save those as to the form of the question and/or responsiveness of the answer, are hereby reserved until such time as this deposition or any part thereof is used or sought to be used in evidence.

*   *   *   *   *   *   *   *

LORI L. MARINO, Certified Court Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.

want to do anymore.  I'm an old man, and then, you may have a 70-year-old who gets up every morning and runs three miles, four miles and works out and has a job working with our range herd, getting on a horse everyday, because that's what he wants to do.  So yes, but it's going to be up to that individual and his -- I guess, it still comes into physical limitations.  If a 70-year-old is a 70-year-old that's not moving around and can't move around, for whatever underlying, then, that would be an ADA request, so.  Strictly on age, no.

Q    So in the instance of a person who says, I'm an old man.  I don't want to do anything anymore, you would still need some other condition to justify an ADA accommodation?

A    We would have to have something physical there.  At the same time, when we have these offenders that are up in age, we do look at them, you know -- years ago, we had what we called an old-man duty status, and it was just those guys who had been in the penitentiary, and they, basically, retired.

They retired, so.

Q    You don't have that anymore?

A    No.  We've evolved from the old-man duty status.  It's a little more specific now, but they do do job limitations or duty status limitations based on an elderly offender who has trouble getting around.  We might do a sit-to-work if they want to do.  If a guy is that 70-year-old, and he says, I just really don't want to work anymore, and I'm tired; and so more than not, they'll give him a no-duty duty status so he can retire.

Q    What kind of work assignment would a person with diminished mental capacity typically have at LSP?

A    Again, that would be dependent on housing.  If they're medium custody, then, we could put them in a job as long as it would not -- again, bottom line is safety of the offender, safety of the staff.  So if someone with diminished mental capacity can work as a labor working on the yard as a groundskeeper, then, we can do that.  If they're maximum security, if they're in a cell because of that diminished mental capacity and they're in one

99

of our program tiers on our transitional unit, and mental health is following them closely and they have an SMI, they may not have -- you know, they would not have a job.  So I guess it's kind of fluid.

Q    What kind of work assignment would a person with chronic pain typically have at LSP?

A    Again it would be something that would potentially be sit to work, breaks, and again, that's specific to the health care practitioner.  They would specify that.

Q    As of October 2020, the only medical dorms at LSP are Ash 1 and Ash 2.  Right?

A    Correct.

Q    Why were Cypress 2 and Hickory 4 removed as medical dorms?

A    Because it was beneficial.  We had Ash 2, Cypress 2 and Hickory 4.  Well, we consolidated and put them on Ash 1 and Ash 2. Both of them are fully handicap accessible. Dormitories, they are the closest unit to the hospital or the treatment center.  They're the closest to pill call.  They're the closest to the cafeteria.  They're the closest to the law

library.  So we gave them that centralized space.

Q    When you say they're the closest to the treatment center, how far is that?

A    I'm trying to think.  Eighth of a mile.

Q    And how far are Ash 1 and Ash 2 from pill call.

A    Couple of hundred yards.

Q    How far are Ash 1 and Ash 2 from the cafeteria?

A    Probably three or 400 yards.

Q    How far are Ash 1 and Ash 2 from the law library?

A    Probably two to 300 yards.

Q    Are there any other sort of important locations that those dorms are centrally located to?

A    The education building is housed in the same for main prison as the law library. So a couple of hundred yards.  Those two dormitories are closest to the hub of the main prison.  That gives them the ability to have easier access to all of these areas.

Q    Are there any other areas that are

important to daily life or to emergency situations that are not centrally located in that area?

A    No, not really.  I mean, because the East Yard and the West Yard both converge on that main prison office area, where education is.  There's a chapel there.  So they have access to the chapel -- two chapels, actually.  So that's the easiest means for them.  Now, keep in mind that Ash 1 and Ash 2 have pill call go to them.  So if the offender wants to get up and go to pill call, he makes that decision.  Food is served to them in Ash 1 and Ash 2.  So if they want to go to the cafeteria to eat, they can go to the cafeteria and eat.  We give them that opportunity to get out or stay in the dorm as much as they want to, so.  Now, with that being said, at this point in time, within the next -- it's been something that's been in the works, because as our population is aging and we have more of a need for handicap-accessible housing, Ash 3 and Ash 4 are in the process, very close to being completed.  They're completed on the interior of those two dormitories.  They're working

136

WITNESS CERTIFICATE

I, TRACY JOHN FALGOUT, do hereby certify that the foregoing testimony was given by me, and that the transcription of said testimony, with corrections and/or changes, if any, is true and correct as given by me on the aforementioned date.

DATE SIGNED                TRACY JOHN FALGOUT

Signed with corrections as noted.

Signed with no corrections noted.

137

C E R T I F I C A T E

I, LORI L. MARINO, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that TRACY JOHN FALGOUT, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 136 pages; that this testimony was reported by me in the stenotype reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Dated this 20th day of March, 2022.

LORI L. MARINO, CCR
CCR #87069
STATE OF LOUISIANA